UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IVAN RAMOS,

                              Plaintiff,

                                                      6:16-CV-01312

v.
                                                      (FJS/TWD)

SERGEANT CARL J. RUST,

                              Defendant.
_____

APPEARANCES:

IVAN RAMOS
12-B-2475
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## ORDER AND REPORT-RECOMMENDATION

## I.     INTRODUCTION

On November 3, 2016, Plaintiff Ivan Ramos submitted to the Clerk a civil rights

complaint against Defendant Sergeant Carl J. Rust ("Rust"), brought under 42 U.S.C. § 1983,

along with an application for leave to proceed *in forma pauperis* ("IFP application").  (Dkt. Nos.

1 and 2.)  Plaintiff's initial IFP application was denied as incomplete and the case was

administratively closed.  (Dkt. No. 4.)  Plaintiff thereafter submitted a complete IFP application,

along with the requisite inmate authorization form, and the case was reopened.  (Dkt. Nos. 5-7.)

The Clerk has now sent to the Court for review the complaint and Plaintiff's second IFP

application.  (Dkt. Nos. 1 and 5.)

## II.     IFP APPLICATION

As to Plaintiff's second IFP application (Dkt. No. 5), the Court finds that Plaintiff has demonstrated economic need and has filed the inmate authorization form required in the Northern District to proceed with this matter *in forma pauperis*.  (Dkt. No. 6.)  Therefore, Plaintiff's second IFP application is granted.

## III.     INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."  28 U.S.C. § 1915A.

---

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged    but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to

dismissal.  *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."  *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted).  An opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it."  *Cuoco*, 222 F.3d at 112 (citation omitted).

## IV.     PLAINTIFF'S COMPLAINT

Plaintiff is an inmate presently housed at Greenhaven Correctional Facility.  (Dkt. No. 1 at 2[2].)  Defendant Rust is a sergeant in the Amsterdam Police Department in Amsterdam, New York.  *Id*.  Plaintiff alleges that on March 12, 2012, Rust reported to a crime scene at 359 Locust Avenue and discovered two dead bodies.  *Id*. at 3.  Rust took four photographs of the crime scene on his department issued cell phone before backing out.  *Id*. at 3-4.  Plaintiff has attempted to obtain copies of the photographs, as well as a copy of Rust's memo book, without success.  *Id*. at 4.

Plaintiff alleges that Rust's actions deny Plaintiff's right of access to court under the First Amendment to the Constitution.  *Id*. at 4.  Plaintiff seeks declaratory and injunctive relief in the form of an order of the District Court directing Rust to turn over copies of the photographs and his memo book.  *Id*. at 5.

---

[2] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

## V.    ANALYSIS

The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment to the Constitution. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To state a claim for violation of the constitutional right of access to court, a plaintiff must allege facts plausibly suggesting: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002); *see also Whitfield v. Inperatrice*, No. 08 CV 3395 (CBA)(LB), 2010 WL 6032636 at *5 (E.D.N.Y. Sept. 17, 2010)[3] (plaintiff's complaint "must identify a separate, 'ancillary' legal claim that has been thwarted or prejudiced by the alleged denial, and that is 'non-frivolous' and arguable in nature."), *adopted as modified on other grounds*, 2011 WL 864703 (March 9, 2011), *aff'd* 477 F. App'x 806 (2d Cir. 2012). A plaintiff must set forth sufficient facts in the complaint to suggest that success on the underlying claim is founded on more than mere "hope." *Christopher*, 536 U.S. at 415. In addition, a plaintiff must point to deliberate and malicious acts by the defendant that frustrated his efforts to commence or prosecute that claim. *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citing *Lewis*, 518 U.S. at 353.)

Plaintiff's complaint includes no allegations whatsoever regarding any underlying claim that has been frustrated by Defendant's actions, let alone one that is nonfrivolous and arguable in

---

[3] The Court will provide Plaintiff with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

nature.  Furthermore, Plaintiff has alleged no facts plausibly showing that Defendant Rust acted deliberately and maliciously in frustrating Plaintiff's efforts to commence or prosecute an underlying claim.  In fact, Plaintiff's complaint alleges only that "[p]laintiff sought to obtain copies of these photos as well as copies of defendant's memo book, but thus far, plaintiff has [been] unsuccessful."  Plaintiff has alleged no facts showing Defendant's personal involvement, if any, in Plaintiff's lack of success.

In light of the foregoing, the Court recommends that Plaintiff's complaint be dismissed on initial review under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A for failure to state a claim. The Court further recommends that given Plaintiff's pro se status, the dismissal be without prejudice, and that Plaintiff be granted leave to amend.

**ACCORDINGLY**, it is hereby

**ORDERED**, that Plaintiff's second IFP application (Dkt. No. 5) is **GRANTED**; and it is further

**RECOMMENDED**, that Plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** upon initial review under 28 U.S.C. § 1915(e)(2)(B)(ii) and 1915A for failure to state a claim; and it is

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished report and recommendation in *Whitfield v. Inperatrice*, No. 08 CV 3395 (CBA)(LB), 2010 WL 6032636 (E.D.N.Y. Sept. 17, 2010) and memorandum and order in *Whitfield v. Inperatrice*, No. 08 CV 3395 (CBA)(LB), 2011 WL 864703 (E.D.N.Y. March 9, 2011) in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[4]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   December 8, 2016
            Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

---

[4]  If you are proceeding *pro se* and are served with this report and recommendation/order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation/order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

KeyCite Yellow Flag - Negative Treatment
Declined to Follow by Cardell Financial Corp. v. Suchodolksi
Associates, Inc., S.D.N.Y., September 28, 2012
2011 WL 864703
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
E.D. New York.

John WHITFIELD, Plaintiff,
v.
Chief Clerk James F. IMPERATRICE,
Chief Clerk Edward J. Volpe, Ellen Neri,
Barbara Zahler–Gringer, Sherrill Spatz,
Donna Johnson, James Russo, Jonathan
David, John / Jane Does, Defendants.

No. 08–CV–3395 (CBA)(LB).
|
March 9, 2011.

Attorneys and Law Firms

John Whitfield, Woodbourne, NY, pro se.

Roberta Lynne Martin, New York State Office of the
Attorney General, Jeffrey S. Dantowitz, The City of New
York Law Department, New York, NY, for Defendants.

## MEMORANDUM & ORDER

AMON, District Judge.

**\*1** Before the Court in this pro se section 1983
lawsuit are objections to Magistrate Judge Lois Bloom's
September 17, 2010 report and recommendation and
order. The report and recommendation recommended
that the Court grant the State Defendants' motion for
summary judgment and the City Defendants' motion to
dismiss for failure to state a claim. It also recommended
that the Court deny the plaintiff's motions for summary
judgment; to amend his complaint for a second time; and
to reopen discovery. In the order, the magistrate judge
denied non-dispositive motions of the plaintiff to hold the
Kings County District Attorney's Office in contempt and
to compel production of certain grand jury minutes from
the Kings County District Attorney's Office.

For the reasons that follow, the Court adopts the
conclusions and, except where noted, the analysis of the
report and recommendation and denies the challenge to
the rulings on the motions relating to the Kings County
District Attorney's Office.

## BACKGROUND

A full account of the facts in this litigation is contained
in the report and recommendation and will not be
repeated in its entirety here. Briefly, John Whitfield,
who is currently incarcerated pursuant to a 1989 murder
conviction in New York state court, has sued several
employees of the New York state courts (the State
Defendants) and two employees of the New York City
Police Department (N.Y.PD) (the City Defendants) for
their actions in connection with his 2008 requests for
the case file, sentencing minutes, and criminal records
of Richard Doyle, who was convicted of assault and
criminal use of a firearm in 1983. Doyle testified against
Whitfield at his murder trial, and Whitfield believes that
Doyle committed the murder for which Whitfield stands
convicted.

Whitfield wanted to use the materials that he requested
from the defendants to prove that Doyle perjured
himself at Whitfield's trial when he denied that anyone
was shot during the assault that led to Doyle's 1983
conviction. Whitfield wanted to prove that Doyle lied to
support Whitfield's state collateral attack of his murder
conviction, N.Y. C.P.L. § 440. 10, which he both initiated
and lost after he requested the information from the
defendants but before he received the documents that he
was seeking. Whitfield now has the documents that he
requested, except for the sentencing minutes, which the
State Defendants say they cannot find.

## STANDARD OF REVIEW

Review of those portions of a report and recommendation
to which a party has objected is de novo and the reviewing
court "may accept, reject, or modify, in whole or in part,
the findings or recommendations." 28 U.S.C. § 636(b)(1).

Review of a magistrate judge's rulings on non-dispositive
motions is deferential and a ruling will be set aside only
if it is clearly erroneous or contrary to law. *Catskill Dev.*,

*L.L.C. v. Park Place Entm't Corp.,* 206 F.R.D. 78, 86 (S.D.N.Y.2002).

## DISCUSSION

### I. Access to the Courts

**\*2** Magistrate Judge Bloom recommended that the Court grant judgment in favor of the defendants on the access claims. With respect to the State Defendants' summary judgment motion, Magistrate Judge Bloom concluded that Whitfield "cannot show that his 440 motion [the underlying lawsuit that the defendants supposedly thwarted] would have been successful had he received the records he requested from the State defendants." (R & R at 20.) This, she explained, is because the state court denied Whitfield's section 440.10 motion on procedural grounds (holding that the arguments should have been raised on direct appeal) and on the merits (holding that "this Court is not convinced that the purported new evidence would have had any impact in favor of the defendant with respect to the jury's verdict"), and neither ruling had anything to do with the fact that Whitfield did not have the documents that he had requested. (*Id.* at 16–18, 19–20.) Magistrate Judge Bloom rejected the argument that the merits of the state court decision had any bearing on the merits of Whitfield's access claim. (*Id.* at 17–18.)

With respect to the City Defendants' motion to dismiss, she concluded that the amended complaint, in pleading the access claim, did not describe the underlying lawsuit that the City Defendants supposedly thwarted by refusing to provide Whitfield with the documents he had requested. Instead, it treated the denial of the document requests and the return of the Article 78 petition as themselves denials of access to the courts. Although other parts of the complaint made clear that the section 440.10 motion was the frustrated lawsuit, the failure to plead that fact in the access section of the complaint, she concluded, was fatal to the claim. (*Id.* at 9–12.)

### A. Summary Judgment

The Court adopts Magistrate Judge Bloom's analysis of the summary judgment motion. As Magistrate Judge Bloom observed, the state court denied Whitfield's section 440.10 motion on procedural grounds and also on the

merits. The procedural holding obviously was not the result of the State Defendants' conduct.

The same is true of the merits holding, which was based on documents that Whitfield himself had submitted with his section 440.10 motion. Whitfield had told the state court in his motion that those documents (which had convinced him that Doyle had lied at trial and that he should seek more information from the defendants) were "more than adequate to determine the underlying facts involving Doyle's New York county petit larceny incarceration and his 10/27/1989 Nassau County arrest." (Pl. S.J. Aff. Ex. 6 ¶ 31.)

Moreover, Whitfield specifically argued to the state court that the sentencing minutes that he was seeking from the State Defendants were not significant because the documents Whitfield had included with his motion "provide more than ample official proof that on 1/11/1983 Doyle admitted to shooting someone with a firearm." (*Id.* ¶ 20.)

**\*3** In view of the procedural holding and the merits holding, the Court agrees that the State Defendants are entitled to summary judgment. *See, e.g., Crawford v. Goord,* No. 99 Civ. 967, 2001 U.S. Dist. Lexis 7453, at \* 14 (S.D.N.Y. June 5, 2001) ("The failure to identify the actual defendants was not fatal to Mr. Crawford's previous lawsuit .... Therefore, any conduct that allegedly hindered the plaintiff's ability to specify any defendant by name did not cause actual injury and did not deny the plaintiff access to the courts.").

### B. Motion to Dismiss

With respect to the City Defendants' motion to dismiss, the Court does not agree that Whitfield's pro se complaint was inadequately pleaded because he did not more clearly tie the access claim to the section 440.10 motion in the section of his amended complaint alleging denial of access to the courts. Liberally construed, the amended complaint—although certainly confused at points—alleged that the defendants denied Whitfield access by interfering with his section 440.10 motion, not simply by denying his document requests and rejecting his Article 78 petition (according to Whitfield, that petition was part of his efforts to win his section 440.10 motion).

Nevertheless, Whitfield's complaint fails to state a claim because Whitfield does not, and cannot, plead and prove

that the defendants actually caused him to lose his section 440.10 motion. Such actual harm, tied to the defendants' conduct, is critical to any access claim and Whitfield's inability to plead and prove it is fatal. *See Deleon v. Doe,* 361 F.3d 93, 94 (2d Cir.2004) ("In fact, as he clearly knew, the case he claimed had been hindered by the alleged mail delay was dismissed on the merits after a bench trial—not for untimeliness of court submissions."); *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003); *Benjamin v. Fraser,* 264 F.3d 175, 185 (2d Cir.2001); *Monsky v. Moraghan,* 127 F.3d 243, 247 (2d Cir.1997). Magistrate Judge Bloom recognized this point in the part of her report and recommendation in which she denied Whitfield leave to replead or to amend his complaint. (R & R at 15–18.)

## II. Conspiracy

Magistrate Judge Bloom rejected the access conspiracy claim, explaining that, even if Whitfield had adequately alleged and offered proof of an agreement to deprive him of access to the courts, Whitfield had not alleged, and could not prove, that the defendants committed "an overt act done in furtherance of that goal [i.e. denying access to the courts] *causing damages." Hernandez v. Goord,* 312 F.Supp.2d 537, 545–46 (S.D.N.Y.2004) (emphasis added) (citing *Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002)). This is because, as she had explained, the defendants' conduct had nothing to do with the denial of the section 440.10 motion. (R & R at 13–15, 19–20.)

The Court agrees with that analysis and adopts it. *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000) ("Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights."); *see also Crawford,* 2001 U.S. Dist. Lexis 7453, at *27 ("Mr. Crawford cannot demonstrate that these defendants acted in furtherance of a conspiracy resulting in the deprivation of his federal rights or privileges because, as discussed previously, Mr. Crawford has not shown that they violated any of his constitutional rights in the first place.").

## III. Retaliation

**\*4** Magistrate Judge Bloom rejected each aspect of the retaliation claim, which she construed as asserted only against the State Defendants, a construction that Whitfield has not challenged. First, with respect to the claim that State Defendant Donna Johnson retaliated by "refusing to send plaintiff copies of the

91 court documents plaintiff purchased ... on August 18" (Am.Compl.¶¶ 50–54), she concluded that "there is no evidence that this delay was intentional, malicious, or prompted by plaintiff filing a complaint." (R & R at 22.) Indeed, "Ms. Johnson's letter to plaintiff suggests that she acted to fulfill his record request as a result of his complaint ..., not that she failed to process the request in retaliation for the complaint." (*Id.*)

Second, with respect to the claim that Edward Volpe and the John and Jane Doe employees in the Clerk's Office retaliated by returning Whitfield's June 3 order to show cause and Article 78 petition on August 5, she concluded that there was no evidence that "the defendants with knowledge of [Whitfield's] complaints ... had any personal involvement in handling his Article 78 petition, or that those who were personally involved in returning his Article 78 petition were aware of plaintiff's complaints." (*Id.* at 23.)

### A. Delay in Providing Copies

With respect to the first aspect of the retaliation claim, the Court agrees with Magistrate Judge Bloom's analysis and conclusion that no rational juror could find that Johnson retaliated against Whitfield. On about August 14, Johnson wrote Whitfield and informed him that she knew of his record request and his complaint to Sherrill Spatz, Inspector General of the Office of Court Administration. (Pl.S.J.Aff.Ex. 15.) Johnson asked him to send a check for $22.75 to pay for the copies that he wanted. Whitfield sent that check on August 18 (*id.* Ex. 16) and Johnson sent Whitfield the copies on October 17.

As Magistrate Judge Bloom observed, nothing in the record suggests that Johnson delayed because of Whitfield's complaint. Whitfield appears to concede that document requests of this sort are not, as a general matter, handled quickly. Indeed, according to the section 440.10 motion, that is one reason why, on June 6, he filed his motion before he had received the documents he wanted from the defendants. (*Id.* Ex. 6 ¶ 15.) So even if Johnson took an unreasonably long time to respond to his requests, there is no evidence that she took an unreasonably long time because of Whitfield's complaints to "high ranking" court officials.

Whitfield contends that Magistrate Judge Bloom, in rejecting his arguments, did not consider the fact that Johnson disclosed the records only after she was served

with this section 1983 lawsuit. But even if the production and the section 1983 suit are related, that relationship is not evidence from which a rational juror could infer retaliation for the earlier complaint. It simply suggests that Johnson reprioritized Whitfield's requests once she realized they were the subject of a federal lawsuit.

### B. Article 78 Petition

 **\*5** With respect to the return of the Article 78 petition, the Court adopts Magistrate Judge Bloom's analysis to the extent that that analysis rejects the claim because Whitfield has not, after conducting sufficient discovery, offered evidence of the identity of the State Defendants who can be liable for participating in the return of his Article 78 petition.

Whitfield has no evidence of the identity of the employee or employees who physically returned his papers. The letter that accompanied Whitfield's returned papers is typed and not signed by any individual employee, which renders it useless in Whitfield's quest to identify the employees who returned his petition. Moreover, in their responses to Whitfield's interrogatories, the State Defendants reported that they were unable, after reasonable inquiry, to determine which employee or employees returned Whitfield's petition. (State Def. Resp.2d Req. Add. at 6.)

As the State Defendants explained in motion practice over Whitfield's discovery requests, the Clerk's Office "handles hundreds of thousands of documents a year." (State Def. Resp. to Pl. Objs. to M.J. Bloom's Discovery Order ¶ 13.) The State Defendants explained, "Therefore to assert that somehow without a signature on the letter, there would be a way to ascertain who in the clerk's office handled one piece of correspondence is not a reasonable assumption." (*Id.*)

Whitfield also has no evidence of the employee or employees who might have decided to return his papers and then directed others to effectuate that return. The only evidence that Whitfield was able to secure is evidence that Imperatrice, according to an interrogatory response, forwarded Whitfield's July 15 complaint about his Judiciary Law requests and his Article 78 petition to the "appropriate employees" (whoever they might be) because that was his "general practice." (State Def. Resp.2d Req. Add. at 2.) Whitfield claims to have evidence that Imperatrice failed to remedy retaliation by

his subordinates, but he has not directed the Court to that evidence and the Court cannot find it.

The evidence, viewed in the light most favorable to Whitfield, cannot support the imposition of liability on any of the State Defendants, named or unnamed. Imperatrice cannot be liable for forwarding Whitfield's complaint to "appropriate persons" even if those "appropriate persons" later retaliated against Whitfield. *See Sosa v. Lantz,* No. 09–CV–869, 2010 WL 3925268, at \*5 (D.Conn. Sept. 30, 2010).

Moreover, Whitfield's unsupported allegation that Imperatrice failed to remedy retaliation by his subordinates would not, even if true, support liability. *Jackson v. Burke,* 256 F.3d 93, 96 (2d Cir.2001) ("[A] 'failure to remedy' theory of liability is not available with respect to discrete and completed violations such as the destruction of documents here alleged.").

Because there is no evidence linking the other named State Defendants, including Volpe and Johnson, to the return of the petition, they too are entitled to summary judgment. Whitfield has had ample opportunity to identify the individuals responsible for violating his rights and has been unable to do so. That fact distinguishes this case from *Jackson,* 256 F.3d 93, and *Davis v. Kelly,* 160 F.3d 917 (2d Cir.1998), cases in which summary judgment in favor of the named defendants was ruled improper for lack of an opportunity to develop evidence of the identities of the alleged wrongdoers.

 **\*6** With respect to the Doe defendants, Whitfield has not been able to identify them, even after having a reasonable opportunity for discovery, and nothing suggests that further discovery could produce the names of the employees who participated in the return of Whitfield's papers; no employee has any memory of Whitfield's file and no documents that might remedy this failure of memory were ever created. Consequently, Whitfield's claims against the Doe defendants should be dismissed. *See Coward v. Town & Village of Harrison,* 665 F.Supp.2d 281, 300–02 (S.D.N.Y.2009); *Keesh v. Artuz,* No. 97 Civ. 8417, 2008 WL 3166654, \*2 (S.D.N.Y. Aug.6, 2008); *Blake v. Race,* 487 F.Supp.2d 187, 192 n. 1 (E.D.N.Y.2007).

### IV. Other Issues

### A. Motion to Amend and Leave to Replead

Whitfield moved to amend the amended complaint, offering a proposed second amended complaint that would add two new theories in support of his access claims and the related conspiracy claims. It would also add the Kings County Supreme Court Chief Court Reporter Pat Verdon as a defendant on the theory that Verdon denied Whitfield access to the courts when she allegedly destroyed the sentencing minutes from Doyle's assault case. Whitfield subsequently asked for leave to replead to add allegations respecting the NYPD's handling of his Freedom of Information Law Requests and to name as a defendant an NYPD investigator who handled aspects of his requests. (ECF 79 ¶ 35.)

The Court denies Whitfield's motion to amend the complaint and denies him leave to replead. As Magistrate Judge Bloom recognized, no amount of amplification or clarification of Whitfield's access claims and related conspiracy claims can alter the fact that he cannot win an access claim or a conspiracy claim that relies on that access claim. This is because, as the Court has said, Whitfield cannot prove that the defendants caused him to lose his section 440.10 motion.

Moreover, Whitfield cannot benefit from adding Verdon as a defendant because even if he could plead and prove that Verdon destroyed sentencing minutes, he could not change the fact that his access claims are doomed to fail. He cannot benefit from naming another NYPD employee for the same reason.

The substantive problems with Whitfield's claims are irremediable. Leave to replead or amend the complaint is denied. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it."); *see also Lucente v. Int'l Bus. Machs. Corp.,* 310 F.3d 243, 258 (2d Cir.2002).

### B. Motion to Reopen Discovery

Whitfield requests to reopen discovery because, he contends, he cannot oppose the State Defendants' motion for summary judgment with the information that he currently has. He explains that he would use additional discovery to learn the identity and employment history of the Doe defendants who allegedly violated his constitutional rights; evidence that the defendants knew that they were violating office policy when they refused to process his requests for information; and the damages

that flow from the loss of his section 440.10 motion. (Pl. R. 56(f) Aff. ¶ 24.)

**\*7** The Court agrees with Magistrate Judge Bloom that Whitfield is not entitled to reopen discovery because he has not sufficiently explained how permitting additional discovery would help him to oppose the State Defendants' motion for summary judgment. Whitfield's motion is not as clear as it might be, but, so far as the Court can tell, all of the discovery sought relates to Whitfield's access and access-related claims. (*Id.* ¶¶ 1–23.) The Court has already explained that those claims are doomed. No discovery can help them succeed.

To the extent that some of the discovery might aid Whitfield's retaliation claims, Whitfield has not adequately explained how the discovery will cure the defects that Magistrate Judge Bloom and the Court have identified. Significantly, he has offered no reason to think that he will be able to identify the employees who handled his Article 78 petition; the State Defendants have satisfied the Court that information that might identify the employees does not exist. Whitfield has had ample opportunity for discovery and to litigate his claims, and his request for yet more discovery is denied. *See Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.,* 769 F.2d 919, 926 (2d Cir.1985) (among other things, party must explain "how those facts [sought in additional discovery] are reasonably expected to create a genuine issue of material fact").

### C. Motions Regarding the District Attorney's Office

Whitfield has sought to hold the District Attorney's Office in contempt for failing to comply with an order to disclose information relating to Doyle's prior convictions. His motion requested a finding of contempt and an order demanding compliance. The District Attorney's Office contends that it fully complied with the order. Whitfield also asks the Court to order the District Attorney's Office to disclose the grand jury testimony related to Doyle's assault conviction. Magistrate Judge Bloom denied these non-dispositive motions as moot.

That denial was not an abuse of discretion. The motion to compel was properly denied because it was aimed at securing information for the access claims, which are without merit and cannot be salvaged. Whitfield says, in his objections, that his contempt motion is not moot

because he is entitled to damages. But he has not identified what those damages would be.

### V. State Law Claims

Consistent with Magistrate Judge Bloom's recommendation, the Court declines to exercise jurisdiction of Whitfield's state law claims because it has disposed of each of Whitfield's federal claims. *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003).

### CONCLUSION

The Court adopts the report and recommendation to the extent that it is consistent with the foregoing discussion, and it affirms the order on the non-dispositive motions.

Accordingly, the State Defendants' motion for summary judgment is granted; the City Defendants' motion to dismiss is granted; Whitfield's motions for summary judgment, to amend his complaint for a second time, to hold the Kings County District Attorney's Office in contempt, to reopen discovery, and to compel production of certain grand jury minutes from the Kings County District Attorney's Office are all denied.

**\*8** The Clerk of Court is directed to enter judgment accordingly and to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 864703

© 2016 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by Whitfield v.
Imperatrice, E.D.N.Y., March 9, 2011

2010 WL 6032636
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John WHITFIELD, Plaintiff,
v.
Chief Clerk James F. IMPERATRICE,
Chief Clerk Edward J. Volpe, Ellen Neri,
Barbara Zahler–Gringer, Sherrill Spatz,
Donna Johnson, James Russo, Jonathan
David, John/Jane Does, Defendants. [1]

No. 08 CV 3395(CBA)(LB).
|
Sept. 17, 2010.

**Attorneys and Law Firms**

John Whitfield, Woodbourne, NY, pro se.

Roberta Lynne Martin, New York State Office of the
Attorney General, Jeffrey S. Dantowitz, the City of New
York Law Department, New York, NY, for Defendants.

**REPORT & RECOMMENDATION**

BLOOM, United States Magistrate Judge.

**\*1** Plaintiff brings this *pro se* action pursuant to
42 U.S.C. § 1983. The allegations in the amended
complaint [2] arise from requests that plaintiff made to
defendants in April and August of 2008 for the case
file, sentencing minutes and criminal records of Richard
Doyle, who was convicted for assault and criminal
use of a firearm in 1982. (*See* Amended Complaint
("Am.Compl.") document 8.) Plaintiff alleges that his
requests were "completely ignored" by defendants, and as
a result, he was unconstitutionally denied access to the
courts. Plaintiff further claims that defendants retaliated
against him in violation of his rights under the First and
Fourteenth Amendments, conspired to deny him access
to the courts, and violated State Judiciary Law §§ 255,
301 by failing to process his requests. Defendants James

Imperatrice, Edward Volpe, Ellen Neri, Barbara Zahler–
Gringer, Sherrill Spate, Donna Johnson, and John/Jane
Does (collectively "State defendants") move for summary
judgment [3] (document 68); defendants James Russo and
Jonathon David (collectively "City defendants") move
to dismiss (document 76); and plaintiff cross moves for
summary judgment (document 61). Plaintiff also moves:
to amend the complaint for a second time (document 43);
for contempt (document 87); and to compel discovery
(document 94). The motions have been referred to me
for Report and Recommendation in accordance with
28 U.S.C. § 636(b). It is respectfully recommended that
defendants' motions should be granted and that plaintiff's
motions should be denied for the following reasons.

**BACKGROUND**

Unless otherwise stated, the facts are taken from plaintiff's
amended complaint. (Document 8.)

**Plaintiff's Requests to the State Defendants**
In April and May of 2008, plaintiff filed a request
with Kings County Supreme Court for the criminal case
file of Richard Doyle, who was convicted in 1982 for
assault and criminal use of a firearm, as well as for a
certificate of disposition for that case. (Am.Compl.¶¶ 19,
22). Plaintiff also requested a transcript of Mr. Doyle's
sentencing hearing from 1983 from the court reporter's
office. (*Id.* ¶23.) Plaintiff sought these materials to support
his New York Criminal Procedure Law ("NYCPL") §
440.10 motion, filed on June 6, 2008 in Kings County
Supreme Court, to vacate his 1989 conviction for murder.
(Plaintiff's Memorandum of Law in Support of his
Opposition to City Defendants' Motion to Dismiss ("P's
City Opp.").)

Plaintiff waited approximately one month for a response
to each of his requests. After no response was received,
plaintiff submitted the following: (1) a complaint to Chief
Administrative Judge Pfau dated May 6, 2008 regarding
his request to the court reporter's office; (2) a May 19,
2008 letter to the court's "Criminal Term Correspondence
Unit"; (3) a June 3, 2008 Article 78 petition seeking to
compel the court's principal court reporter, Ellen Neri,
to produce the sentencing minutes; (4) letters dated June
22, 2008 to the Chief Clerks of King's County Supreme
Court's Criminal and Civil Terms; and (5) a complaint

to Sherrill Spatz, Inspector General of the Office of Court Administration, dated July 15, 2008 requesting an investigation into the matter. (Am.Compl.¶¶ 20–26.)

**\*2** On June 19, 2008, defendant Barbara Zahler–Gringer, Counsel for Administration and Operations for the New York State Office of Court Administration, responded to plaintiff's requests stating, "Kings County Supreme Court received your request, and is still reviewing their records to determine how it has been processed." (*Id.* ¶ 20.) On August 5, 2008, the clerk's office sent plaintiff's Article 78 petition back to him with the following notation: "we are returning your papers. As a defendant in a criminal case, Mr. Richard Doyle will have to request and pay for his own stenographic minutes." (*Id.* ¶ 28.) Ms. Spatz's office informed plaintiff on August 10, 2008 that they had received his grievance letter and that they were forwarding the matter to the Kings County Supreme Court Chief Clerk, James Imperatrice, for review. (*Id.* ¶ 26.) That same day, defendant Senior Court Clerk, Donna Johnson, sent plaintiff a letter, which he excerpts as follows: "[The court has received] your letter addressed to Sherrill Spatz [ ] as well as [other letters addressed to the court] ... the cost for photocopying of all documents relating to Richard Doyle, indictment number 1883–1982 is $22.75." (*Id.* ¶ 30.) Plaintiff sent the court a check for that amount on August 18, 2008. [4] (*Id.*) Plaintiff alleges that at the time he filed his amended complaint herein, his requests, the follow-up inquiries regarding those requests, and his Article 78 petition remained "unresolved." (*Id.* ¶ 33.)

### Plaintiff's Requests to the City Defendants

On August 5, 2008, plaintiff filed a Freedom of Information Law ("FOIL") request with defendant James Russo, a record access officer with the New York City Police Department's FOIL Unit, seeking "to purchase all records involving Richard Doyle's arrest and conviction...." (*Id.* ¶¶ 9, 29.) On August 25, 2008, plaintiff filed an appeal of what he describes as an "apparent constructive denial" of his FOIL request to defendant Jonathon David, the Record Access Appeal Officer of NYPD's FOIL Unit. (*Id.* ¶ 32.) According to plaintiff, the City defendants had not responded to either of these submissions by the time he filed his amended complaint. (*Id.*)

### Plaintiff's Claims for Relief

Plaintiff claims that by failing to comply with his requests for records and transcripts pertaining to Mr. Doyle's criminal case, and by failing to file his Article 78 petition, defendants denied him meaningful access to the courts in violation of the First and Fourteenth Amendments.

Plaintiff further claims that defendants retaliated against him in violation of the First and Fourteenth Amendments, conspired to deny him access to the courts, and violated State Judiciary Law §§ 255, 301 by failing to process his requests. Plaintiff seeks injunctive relief in the form of an order compelling defendants to (1) produce the requested documents, (2) process his Article 78 petition, (3) "create and enforce a policy that will prevent court clerk employees from returning litigants' moving papers in retaliation for filing complaints with high ranking court officials of the Office of Court Administration," and (4) "institute a policy that safeguards litigants from conspiratorial efforts of court clerk and court reporter employees seeking to deny citizens access to court documents [ ]." Plaintiff further seeks an injunction compelling the United States Attorney's Office [5] to investigate the Kings County Supreme Court, the NYPD FOIL Unit, and the Kings County District Attorney's Office for denying plaintiff his "constitutional right not to be retaliated against for filing grievances to high-ranking judicial officials...." Plaintiff seeks $1,336,000 in compensatory damages and $3,340,000 in punitive damages. [6]

### Procedural History

**\*3** The Court held an initial telephonic conference in this action on January 14, 2009. [7] The Court set the deadline for the parties to complete all discovery, granted the state defendants' request for permission to move for summary judgment, and scheduled the motion. (Document 28.) Following the initial conference, the Court directed the United States Marshals to serve the City defendants, who were not named as defendants until the amended complaint. (*See* document 27.)

On March 24, 2009, plaintiff moved to amend his complaint for a second time. (Document 43.) All defendants requested that the Court stay any decision on plaintiff's motion to amend pending their motions to dismiss and for summary judgment. (Documents 50–51.) The Court granted the requests, but directed the City defendants to address both the amended complaint

and plaintiff's motion for leave to file a second amended complaint in their motion to dismiss. (Document 53.) The Court ordered the State defendants to oppose the motion to amend in a separate filing. (*Id.*)

State defendants now move for summary judgment (document 68); City defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (document 76); and plaintiff cross moves for partial summary judgment (document 61). The parties have opposed each other's motions, and filed replies.

### DISCUSSION

### I. CITY DEFENDANTS' MOTION TO DISMISS

*a.* **Standards of Review**

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003). On a motion to dismiss under 12(b)(1), however, the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id.* A court, reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)); *Koppel v. 4987 Corp.,* 167 F.3d 125, 130 (2d Cir.1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," *Iqbal,* 129 S.Ct. at 1949, or "speculative," *Twombl y,* 550 U.S. at 555, he must allege facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556)). If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 569. Nonetheless, "[a] document filed pro se is 'to be liberally

construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.' " ' *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.' ") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (other citations omitted).

**\*4** Furthermore, "[a] court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first," *Amidax Trading Group v. S.W.I.F.T. SCRL,* 607 F .Supp.2d 500, 503 (S.D.N.Y.2009) (citing *Adamu v. Pfizer. Inc.,* 399 F.Supp.2d 495, 500 (S.D.N.Y.2005) (internal quotation omitted), "because dismissal under Rule 12(b)(6), i.e., for failure to state a claim, is an adjudication on the merits with preclusive effect," *id.* (citing *Alliance for Envtl. Renewal. Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n. 6 (2d Cir.2006)); *see also Wynn v. AC Rochester.* 273 F.3d 153, 157 (2d Cir.2001) (the Court must first decide that it has subject matter jurisdiction before adjudicating any matter in the case). In considering a motion to dismiss, the Court may consider documents attached to the pleadings or documents incorporated by reference therein. *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001).

*b.* **Plaintiff's Claims Against the City Defendants**

Plaintiff alleges that on August 5, 2008, he filed a request pursuant to New York's Freedom of Information Law [8] with defendant James Russo, a Records Access Officer with the NYPD, seeking "all records involving Richard Doyle's arrest and conviction under indictment # 01883–82." (Am.Compl.¶ 29.) Twenty days later, when plaintiff had not received the 26–year–old records that he had requested, he filed an appeal to defendant Jonathon David, Record Access Appeal Officer with the NYPD's FOIL Unit, challenging what plaintiff characterizes as "the apparent constructive denial of his August 5, 2008 FOIL request." (*Id.* ¶ 32.) Plaintiff claims that at the time he filed his Amended Complaint, he had not received an answer to this appeal. Plaintiff alleges that by failing to timely act, the City defendants denied him access to the courts in violation of the First and Fourteenth Amendments, and conspired with members of the Kings

County District Attorney's Office to deny him this access. (*Id.* ¶¶ 44, 65, 74.)

Plaintiff further alleges that on June 6, 2008, he filed a motion to vacate his 1989 murder conviction, pursuant to New York Criminal Procedure Law § 440.10 ("440 Motion"). (*Id.* ¶ 24.) Respondents opposed that motion on August 5, 2010, the same day that plaintiff filed his FOIL request with defendant Russo. (*Id.* ¶ 29.) Plaintiff opposes the City's motion and argues that the documents he sought in his FOIL request, the criminal records involving Doyle, were exculpatory and would have allowed him to prevail on his 440 motion.[9] Plaintiff alleges that Doyle, not plaintiff, shot and killed the victim. (P's City Opp. at 6.) Plaintiff called Doyle at his 1989 murder trial to testify regarding, among other things, Doyle's involvement in an earlier shooting in 1982 in which the murder victim allegedly identified Doyle as one of the four individuals who shot him. (*Id.*) Plaintiff argues the criminal records will show that Doyle lied on the stand when he stated that he did not shoot anyone during the 1982 incident, and that the prosecution knew he lied, but did not correct his false testimony. (Affidavit in Support of Plaintiff's Opposition to City Defendants' Motion to Dismiss ("P's City Aff.") ¶ 21.) Therefore, plaintiff argues, by denying him "prompt access" (*id.* ¶ 22) to Doyle's records, the City defendants "thwarted vindication of plaintiff's prosecutorial misconduct claims" and denied him meaningful access to the courts. (P's City Opp. at 7.)

### c. Access to the Courts

**\*5** The Constitution guarantees individuals meaningful access to the courts, a right that extends to state prisoners under the First and Fourteenth Amendments. *Lewis v. Casey,* 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (recognizing a particular application to those prisoners who are defending themselves against criminal charges, attacking their convictions or sentences, or alleging civil rights violations pertaining to the conditions of their confinement); *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

In *Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court identified two categories of claims regarding access to the courts. The first category applies to claims where "systematic official action" prevents an individual from preparing or filing suit at that time, but does not necessarily preclude future access to litigate the claim. *Id.* at 413. The most common example of this first category is where a prisoner is denied access to a law library. The remedy for systematic action is to improve the condition which has frustrated the litigant's access. *Id.* The second category applies to claims, such as plaintiff's claim here, where individual cases can no longer be heard because the official action or condition caused the "loss or inadequate settlement of a meritorious case ... or the loss of an opportunity to seek some particular order of relief." *Id.* at 414. The typical remedy in this latter "backward-looking" claim is to award relief for the denial of access where the underlying claim has otherwise been foreclosed. *Id.*

To bring a denial-of-access claim, a plaintiff must allege that he suffered actual injury by being blocked from the courts. *Id.* at 415. Therefore, plaintiff's complaint must identify a separate, "ancillary" legal claim that has been thwarted or prejudiced by the alleged denial, and that is "non-frivolous" and "arguable" in nature. *Id.* The plaintiff must set forth ample facts in the pleadings to suggest that success in the underlying claim is founded on more than mere "hope," *id.,* and point to deliberate and malicious acts by the defendants that frustrated his efforts to commence or prosecute that case. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Moreover, the Court will not recognize an access claim where the same remedy sought in the underlying claim could otherwise be obtained in another suit. *Christopher,* 536 U.S. at 415 ("There is, after all no point in spending the time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.").

The City defendants move pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss plaintiff's denial-of-access claim for lack of subject-matter jurisdiction. They argue that plaintiff is simply "federalizing" a "garden-variety claim that the City Defendants wrongfully denied his FOIL request" and that the Court lacks jurisdiction to hear what is essentially a purely state law claim. (City Defendants' Memorandum of Law in Support of Motion to Dismiss ("City Motion") at 5.) The City defendants assert that plaintiff fails to state how their conduct prevented him from "appearing in criminal court and seeking appropriate relief there" and that a failure to comply with FOIL procedures alone does not give rise to a First Amendment claim. (*Id.* at 6.)

**\*6** Although plaintiff's memorandum in opposition to the City's motion fully explains the theory behind his denial-of-access claim (see discussion of the underlying 440 motion *supra* ), the allegations in his amended complaint are relatively sparse. The amended complaint alleges that plaintiff filed the 440 motion on August 5, 2008, but makes no further mention of this motion until section VII where he alleges that the City defendants "conspired with the Kings County District Attorney's Office to prevent plaintiff from getting access to court documents and criminal records that would bolster the egregious prosecutorial misconduct claim raised in plaintiff's post conviction motion, thereby obstructing and wholly preventing plaintiff's unlawful conviction from being vacated ... and injuring plaintiff in the exercise of his right to access the court and to petition the government for the redress of grievances...." (Am.Compl.¶ 59.) In contrast, section VI, where plaintiff alleges he was denied access to the courts, makes no mention of the 440 motion, and bases the denial-of-access claim solely on defendants' failure to produce the requested records. In fact, paragraph 38 enumerates the specific "underlying" causes of action that plaintiff claims have been thwarted, but fails to cite the 440 motion at all. (*See* Am. Compl. ¶ 38 ("[P]laintiff has lost several remedies (i.e. access to Doyle's criminal conviction records and the right to compel the defendants [ ] to disclose these court records and stenographic sentencing minutes pursuant to CPLR Article 78.)").) [10]

Even after affording the complaint the liberal construction it is due because of plaintiff's *pro se* status, it fails to state a claim for denial of access. Plaintiff must allege actual injury separate and apart from the claim that he was refused access to court records. *See Christopher,* 536 U.S. at 414–15 ("[T]he very point of recognizing any access claims is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong ... our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."); *see also Rodriguez v. Diaz,* No. 05 Civ. 1831, 2010 U.S. Dist. LEXIS 45044 (S.D.N.Y. May 5, 2010) (denying plaintiff's motion to supplement the complaint, as the new allegations "refer not to the filing or maintaining of a lawsuit, but rather to the plaintiff's efforts to obtain certain documents"). Plaintiff's allegations incorrectly claim that the City defendants' failure to comply with his FOIL request, in and of itself, denied him access to

the courts. Plaintiff's amended complaint fails to allege that denial of the FOIL material prejudiced his 440 motion; he first alleges this in his opposition brief. The City defendants' motion to dismiss plaintiff's access-to-the-courts claim should therefore be granted as plaintiff's complaint fails to state a claim. [11]

### *d.* Retaliation Claim

**\*7** Plaintiff's second cause of action alleges that defendants retaliated against him in violation of the First and Fourteenth Amendments. (Compl.§ VII.) Plaintiff claims that defendants failed to process his Article 78 petition (*id.* ¶ 50), and refused to send plaintiff "copies of the 91 court documents plaintiff purchased for $22.75," (*id.* ¶ 53), in retaliation for his "filing complaints with the Office of Court Administration ..." (*id.* ¶ 50). However, this retaliation claim identifies acts which allegedly occurred in State court, and which could only have been committed by the State defendants. Further, although plaintiff alleges that the "above named defendants" committed unlawful retaliatory acts, plaintiff's allegations specifically name defendants Volpe, Johnson, and the John/Jane Does of the Kings County Supreme Court Civil Term Unit—all of which are State, not City, defendants. (*Id.* ¶¶ 50–55.) Therefore, the Court construes plaintiff's retaliation claim against only the State defendants, not the City defendants. Accordingly, plaintiff's retaliation claim against the City defendants should be dismissed.

### *e.* Conspiracy Claim

Plaintiff alleges that the defendants and the Kings County District Attorney's Office ("DA") conspired to deny him access to court documents and criminal records in order to prevent him from prevailing in his 440 motion, and to cover up the "wrongdoings" of the District Attorney's Office. (*Id.* ¶ 59.) Plaintiff claims that the City defendants agreed with the DA to "suppress" the records of Mr. Doyle's 1982 criminal conviction, as sought by plaintiff in his August 5, 2008 FOIL request, but disclosed the criminal records of Mr. Doyle's 1989 criminal matter, which was the subject of a separate FOIL request filed on May 20, 2008. (*Id.* ¶ 65.) The first of these FOIL requests was processed within two months time; while the second was not.

Plaintiff maintains that the timing and treatment of the two requests, one submitted before and one submitted

after his 440 motion was filed, create an inference of conspiracy.

In order for plaintiff's § 1983 conspiracy claim to survive a motion to dismiss, "a plaintiff must allege (1) an agreement between two or more state actors [or between a state actor and a private entity] [12] (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Hernandez v. Goord,* 312 F.Supp.2d 537, 545–46 (S.D.N.Y.2004) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002)). However, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted).

**\*8** Plaintiff's conspiracy claim is highly speculative, particularly his allegation that defendants acted or failed to act on his two FOIL requests because he filed his 440 motion. However, "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn,* 200 F.3d at 72 (citing *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994)). Even if plaintiff's complaint sufficiently alleges a conspiracy, which it does not, plaintiff's conspiracy claim should be dismissed because it fails to state a claim that he was denied access to the courts. The actual violation of one's constitutional right is a "natural prerequisite to a claim of conspiracy to violate such right." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Id.* As plaintiff's complaint fails to state a claim that he was denied access to the courts, plaintiff's conspiracy claim regarding denial of access should be dismissed.

*f.* **Motion to Amend and Leave to Replead**
On March 24, 2009, plaintiff moved to amend his complaint for a second time. (Document 43.) However, in his affidavit in opposition to City defendants' motion (document 77), plaintiff states: "I respectfully request to withdraw my pending proposed second amended

complaint (see Docket Entry # 43), and be permitted to replace it with an amended complaint that includes the above noted overt acts demonstrating that the city defendants violated my constitutional rights." Plaintiff's request to withdraw his proposed second amended complaint is granted, and the motion to amend should be terminated as withdrawn. (Document 43.)

Generally, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). However, the Court may deny leave to amend where the amendment would be futile. *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir.2002) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.") (quoting *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam)). Furthermore, the Court need not grant a motion to amend the complaint where the claim would "immediately be subject to dismissal on a motion for summary judgment." *Stoner v. N.Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 U.S. Dist. LEXIS 5921 (S.D.N.Y. Apr. 8, 2002). As discussed below, any attempt to replead plaintiff's complaint to include the "overt acts" plaintiff alludes to in his affidavit (see P's City Aff. ¶ 35) would be futile, and therefore the Court should deny leave to amend.

**\*9** An action for denial of access to the courts requires the plaintiff to show that a defendant's conduct "materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Ahlers v. Grygo,* No. 02–CV–3256, 2009 U.S. Dist. LEXIS 20317 (E.D.N.Y. Mar. 13, 2009) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003)). It is evident from material submitted by both plaintiff and the City defendants that any alleged failure by the City defendants to "promptly" respond to plaintiff's FOIL request did not materially prejudice his 440 motion, it merely caused delay.

According to plaintiff, he received an initial response to his FOIL request on October 6, 2008, stating that due to the large volume of FOIL requests, a determination of his

request would not be made until December 8, 2008. (Letter from defendant James Russo, dated 10/6/08, attached to P's City Opp. as Exhibit 26.) Plaintiff further states that the material sought in his FOIL request was eventually made available on February 19, 2009. (P's Aff. ¶ 14.) Although plaintiff clearly sought a prompter response to his FOIL request, he was eventually provided the materials that he sought. Plaintiff claims that his FOIL request "was not [timely] answered in compliance with Public Officers Law § 89." However, even if this is true, this does not establish a constitutional violation.

Moreover, the trial court ultimately denied plaintiff's 440 motion not because plaintiff failed to produce the "new evidence" sought from defendants herein, but because the issues raised in the motion should have been decided on direct appeal. (Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("P's 56.1 Response") ¶ 43.) The Honorable Deborah A. Dowling, Kings County Supreme Court, denied the motion and stated:

> "While the defendant raises numerous issues concerning the trial tactics employed by the prosecution, there exists nothing in the moving papers to suggest any unethical conduct occurred .... the issues proffered by the defendant as new evidence relate to the credibility of a trial witness. However, the trial transcripts reveal that the witness' credibility was the subject of significant scrutiny during the trial and *this Court is not convinced that the purported new evidence would have had any impact in favor of the defendant* with respect to the jury's verdict."

*People of the State of New York v. John Whitfield,* Ind. No. 2132/89 (Kings Cry. Sup.Ct. Oct. 21, 2008) ("440 Decision") (emphasis added) (attached to Plaintiff's Cross Motion for Partial Summary Judgment, document 61, as Exhibit 20). [13]

Plaintiff argues that Justice Dowling's decision is of no consequence because, "the determination was contrary to, and involved an unreasonable application of, clearly established Federal law ..." (Plaintiff's Memorandum of Law in Support of his Opposition to Defendants' Motion for Summary Judgment at 12, n. 2.) However, plaintiff's recitation of the standard of review for habeas corpus relief under 28 U.S.C. 2254(d)(1) is inapposite here. Plaintiff argues that the City defendants prejudiced his 440 motion by not promptly producing the records sought in his FOIL request. However, the 440 decision makes clear that even if he had submitted all of the requested FOIL documents with his 440 motion, the motion would have likely been denied. Plaintiff's denial-of-access claim would therefore fail, even if he was afforded leave to amend, because he cannot demonstrate that the underlying claim is "arguable" in nature. *See Christopher,* 536 U.S. at 415. Accordingly, the City defendants' motion to dismiss should be granted, plaintiff's motion to amend should be terminated as withdrawn, and plaintiff should be denied leave to replead his complaint.

## II. THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

### *a.* **Standard of Review**

**\*10** Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (quoting *Anderson,* 477 U.S. at 248); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000); *see also Baker v. The Home Depot,* 445 F.3d 541, 543 (2d Cir.2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson,* 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagra Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagra,* 315 F.3d at 175 (quoting *Anderson,* 477 U.S. at 252). Here, because plaintiff is proceeding pro se, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006) (quoting *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal quotations omitted)).

### b. Denial–of–Access and Conspiracy Claims

Plaintiff's denial-of-access and conspiracy claims against the State defendants should be dismissed largely for the same reasons plaintiff's claims against the City defendants should be dismissed. As plaintiff admits, he has received all of the materials that he requested from the State defendants, except for the stenographic minutes from Mr. Doyle's sentencing.[14] (*See* Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 (document 62) at ¶ 1 (no-fee certificate of disposition), ¶¶ 40, 41 (a copy of Mr. Doyle's court file).) Furthermore, as discussed above, plaintiff cannot show that his 440 motion would have been successful had he received the records he requested from State defendants. (*See* 440 Decision at 2–3.) Therefore, plaintiff fails to demonstrate that the underlying claim—the claim presented in his 440 motion—is "arguable" in nature. *See Christopher,* 536 U.S. at 415.

**\*11** Plaintiff alleges that a number of other causes of action, besides the 440 motion, were thwarted by defendants' failure to provide the requested documents in a timely manner. Specifically, he claims that he was unable to "compel the defendants[ ] to disclose these court records and stenographic sentencing minutes pursuant to CPLR Article 78." (Am.Compl. § 38.) However, these causes of action are simply potential appeals from any denial of his requests for court records. Plaintiff must show that there is a "separate and distinct right to seek judicial relief for some wrong," *Christopher,* 536 U.S. at 415. These claims by plaintiff are derivative of his underlying requests, not "separate and distinct." The State defendants' motion for summary judgment on plaintiff's denial-of-access claim should therefore be granted.

Finally, as with plaintiff's conspiracy claims against the City defendants, plaintiff's conspiracy claims against the State defendants should also be dismissed because plaintiff fails to demonstrate any agreement, or that defendants violated his constitutional right of access to the courts. See discussion *supra* at page 13–14 (citing *Romer,* 119 F.Supp.2d at 363).

### c. Retaliation Claims[15]

Plaintiff claims that the State defendants retaliated against him by failing to process his Article 78 petition (Am.Compl.¶ 50), and by refusing to send plaintiff "copies of the 91 court documents plaintiff purchased for $22.75," (*id.* ¶ 53). On June 3, 2008, plaintiff filed an Article 78 petition with the Kings County Supreme Court seeking to compel Principal Court Reporter Ellen Neri to produce the sentencing minutes related to Mr. Doyle's 1983 conviction. (*Id.* ¶ 23.) The petition was returned to plaintiff on August 5, 2008 with a memo stating, "we are returning your papers. As a defendant in a criminal case, Mr. Richard Doyle will have to request and pay for his own stenographic minutes." (*Id.* ¶ 28.) Plaintiff alleges that defendants refused to send him the documents he paid for and returned his Article 78 petition in retaliation for his filing complaints with the Office of Court Administration on May 6 and July 15, 2008.[16] Plaintiff adds that defendants returned his Article 78 petition to him "immediately after high ranking judicial officials intervened on or about June 19, 2008 and July 22, 2008...."[17] (*Id.* ¶ 50.)

In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate that (1) the conduct was protected by the First Amendment, and (2) "such conduct prompted or substantially caused defendant's action." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002). Here, plaintiff's complaints to the Office of Court Administration were clearly protected. However, plaintiff fails to establish that

the State defendants' failure to provide the requested court records was "prompted or substantially caused" by his complaints to the Office of Court Administration. There is nothing in the record, other than plaintiff's bare conclusions, that the State defendants acted, or failed to act, in retaliation.

**\*12** Plaintiff produces a letter written by Donna Johnson to plaintiff which states that she had received a copy of his letter to Ms. Spatz complaining about Ms. Johnson's failure to send him the 91 documents he had paid for. (Letter from defendant Johnson, dated August 14, 2008, attached to Plaintiff's Notice of Cross Motion for Partial Summary Judgment at Exhibit 15.) However, far from acting in a retaliatory manner, Ms. Johnson's letter reflects that she took action to fulfill plaintiff's record request. The August 14, 2008 letter states that the records had been located and instructs plaintiff to provide the court with $22.75 to cover the cost of copying and producing the records. (*Id.*) Plaintiff mailed the money to the court on August 18, 2008 (*see* Exhibit 16), which the court processed on October 17, 2008. Although this is admittedly a long period of time to process plaintiff's request, there is no evidence that this delay was intentional, malicious, or prompted by plaintiff filing a complaint with Ms. Spatz. In fact, Ms. Johnson's letter to plaintiff suggests that she acted to fulfill his record request *as a result* of his complaint to Ms. Spatz, not that she failed to process the request in retaliation for the complaint.

As to plaintiff's claim that defendants retaliated against him by failing to process his Article 78 petition, plaintiff argues that "[t]he short time frame between [his] grievance and the unlawful rejection of my CPLR Article 78 petition ..., creates a substantial inference ... [of a] retaliatory motive." (Affidavit in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment ("P's State Aff.") ¶ 53.) However, plaintiff must do more than allege a series of events from which a retaliation claim can be "gleaned," (*see id.*) to overcome defendants' motion for summary judgment. Plaintiff fails to "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

Plaintiff fails to demonstrate that the defendants with knowledge of his complaints to the Office of Court Administration had any personal involvement in handling

his Article 78 petition, or that those who were personally involved in returning his Article 78 petition were aware of plaintiff's complaints. [18] Specifically, plaintiff alleges the personal involvement of two (sets of) defendants: Edward Volpe and unidentified John/Jane Does of the Kings County Supreme Court Civil Term Unit. (Am.Compl.¶¶ 51–52.) However, plaintiff provides no evidence that these individuals were aware of his complaints to the Office of Court Administration. Without such knowledge, they could not possibly have been "prompted" or motivated to act in retaliation for plaintiff's complaints. According to the record, the only individuals with any knowledge of his grievances were defendants Donna Johnson (see above) and Chief Clerk James Imperatrice. Mr. Imperatrice was forwarded a copy of plaintiff's July 15, 2008 complaint to Sherrill Spate on July 22, 2008. (P's State Aff. Exhibit 12.) However, plaintiff fails to demonstrate that these two defendants were personally involved in returning his Article 78 petition.

**\*13** To the extent that plaintiff claims that Ms. Johnson and Mr. Imperatrice were personally involved by virtue of their supervisory roles as Senior Court Clerk and Chief Court Clerk respectively, this too fails as "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). In this Circuit, a supervisor may be "personally involved" for purposes of § 1983 if that supervisor: (1) participated directly in the alleged constitutional violation, (2) failed to remedy the wrong after being informed of the violation through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed it to continue, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Plaintiff fails to demonstrate that Ms. Johnson or Mr. Imperatrice were personally involved in the violations he alleges. Plaintiff argues that Mr. Imperatrice was involved "by the fact that my numerous letters were personally addressed to him." (P's State Aff. ¶ 13 (citing Exhibits 1 and 5).) However, these letters relate solely to plaintiff's initial requests for the records and sentencing minutes, not to the Article 78 petition. The State defendants' motion for summary judgment on plaintiff's retaliation claim should therefore be granted.

#### d. Plaintiff's Request Pursuant to Rule 56(f)

By affidavit dated May 19, 2009, plaintiff requests that the Court deny the State defendants' motion for summary judgment and reopen discovery, pursuant to Fed. R. Civ. P 56(f). (Document 63.) Under Rule 56(f), "[i]f a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. Fed.R.Civ.P. 56(f).

Plaintiff argues that he is unable to oppose defendants' motion because he has been denied adequate discovery. (Affidavit in Support of Request to Complete Discovery in Aid of Opposition to Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56(f) ("P's 56(f) Aff.") ¶ 4.) Plaintiff alleges he was thwarted in his efforts to obtain the necessary evidence during discovery because the defendants "suppress[ed] and conceal[ed] this evidence" (*id.* ¶ 27), and because he filed motions to compel discovery which the Court failed to answer (*id.* ¶ 4). Specifically, plaintiff claims that the Court ignored his motions under docket entries 37, 38, 39, and 57. (*Id.* ¶¶ 5, 7.) This is simply untrue. The Court's May 22, 2009 Order addressed plaintiff's motions under docket entries 37 through 39. (Document 58.) Plaintiff appealed these rulings to Judge Amon on June 1, 2009 (document 60), who upheld my rulings on March 26, 2010 (document 98). Plaintiff's motion under docket number 57 was denied on May 26, 2009. (Document 59.)

**\*14** Nevertheless, plaintiff argues that if he was permitted to continue with discovery he would seek to obtain the following evidence: (1) the identity and employment history of the John Doe defendants who allegedly "mishandled" his Article 78 petition, (2) defendants' "office operating procedures," (3) information confirming that the defendants took "tests and exams" prior to starting their positions with the court, (4) records of complaints to the court regarding the processing of Article 78 petitions to demonstrate that such complaints are rare, and that he was singled out by defendants, and (5) unspecified "facts" that that will show that the DA's Office communicated with court personnel regarding his request for Mr. Doyle's court file. (P's 56(f) Aff. ¶ 9.)

Plaintiff's 56(f) request is denied as without basis. Plaintiff fails to demonstrate that further discovery would have justify his opposition to the State defendants' motion. *See Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 926 (2d Cir.1985) (The movant "must explain [the] inability to obtain facts and demonstrate how postponement will correct problem [and] cannot rely on vague assertions regarding nature of facts to be discovered.") (citation omitted).

#### e. Plaintiff's Cross Motion for Summary Judgment

Plaintiff's opposition to the State defendants' motion for summary judgment includes his own cross motion for summary judgment. (Document 61.) Plaintiff's cross motion largely restates his arguments in opposition to defendants' motion. The Court has fully reviewed plaintiff's cross motion for summary judgment and recommends that it should be denied.

### III. OUTSTANDING MOTIONS

Plaintiff has filed two additional motions, which have not been addressed by the Court: (1) a motion for contempt (document 87) against the DA's Office for failing to fully comply with the Court's April 17, 2009 Order (document 48) which granted in part and denied in part the DA's motion to quash plaintiff's subpoena; and (2) a motion to compel the DA's Office to produce grand jury minutes (document 94). Plaintiff's motions (documents 87 and 94) are hereby denied as moot.

### IV. STATE LAW CLAIMS

As the Court recommends that the defendants' motions to dismiss and for summary judgment as to all federal claims should be granted, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against defendants. *See Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (citing 28 U.S.C. § 1367(c) (3)).

### CONCLUSION

Accordingly, it is respectfully recommended that the City's motion to dismiss and the State's motion for summary judgment should be granted. Plaintiff's motion for partial summary judgment should be denied. Plaintiff's federal

claims should be dismissed, and the Court should decline to exercise jurisdiction over plaintiff's state law claims.

**FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

**\*15** Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital Dist. Physician's Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 6032636

Footnotes

1    The docket sheet reflects "Civil Correspondence Unit" and "Criminal Correspondence Unit" as defendants in this action. However, section II of the amended complaint, clarifies that these "units" are not named as defendants, rather the John/Jane Doe defendants work in these units.

2    Plaintiff filed an amended complaint as a matter of right on October 9, 2008, before defendants filed an answer. Plaintiff later moved to amend for a

3    Defendants have served plaintiff with the requisite notice to *pro se* litigants opposing a motion for summary judgment, pursuant to Local Civil Rule 56.2. (Document 72.)

4    Plaintiff also mailed the court a separate check for $10 for the cost of the requested certificate of disposition.

5    The United States Attorney's Office is not a party to this action.

6    Defendants argue that plaintiff's claims are barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). The State is immune from suit under the Eleventh Amendment absent a clear waiver of immunity, or Congressional abrogation of its immunity by a valid exercise of its power. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The State has neither consented to suit in federal court nor waived its immunity. Congress has not abrogated the State's immunity from suits pursuant to § 1983. *See Quern v. Jordan,* 440 U.S. 332, 342–43, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). However, the state is not shielded by the Eleventh Amendment suits against state officers in their individual capacities for money damages, *see, e.g., Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), or where plaintiff sues state officers in their official capacity for prospective injunctive relief, *Deposit Ins. Agency v. Superintendent of Banks,* 482 F.3d 612, 617 (2d Cir.2007) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). The injunctive exception to state sovereign immunity is permitted where plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Dairy Mart Convenience Stores. Inc. v. Nickel,* 411 F.3d 367, 372 (2d Cir.2005). Here, plaintiff's claim for money damages against defendants in their individual capacities, as well as his claim for prospective injunctive relief against defendants in their official capacities are not barred by the Eleventh Amendment.

7    The City defendants had not yet been served in the action and thus did not appear at the initial conference.

8    City defendants cite the relevant statue as New York Public Officers Law §§ 89, *et seq.* (Declaration in Support of City Defendant's Motion to Dismiss, ¶ 2.)

9    Plaintiff argues throughout his submissions that the Doyle information he requested is *"Brady* material." (*See, e.g.,* Plaintiff's Cross Motion for Partial Summary Judgment ¶ 26.) *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is inapposite here. As correctly stated by the City defendants, "[t]he obligation not to withhold exculpatory evidence is one which attaches to the prosecution prior to trial, not to anyone to whom a request for such information is subsequently made." (City Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss, at 7); *see also United States v. Douglas,* 525 F.3d 225, 244 (2d Cir.2008) ("[T]he suppression by the *prosecution* of evidence

favorable to an accused ... violates due process where the evidence is material to the accused's guilt or punishment.") (quoting *Brady,* 373 U.S. at 91) (emphasis added).

10    These causes of action relate to the documents plaintiff requested from the State defendants, not the City defendants, and therefore will be addressed below.

11    Although the City defendants move to dismiss plaintiff's access claim under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, the Court should grant the City defendants' motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Plaintiff clearly identifies this cause of action as a denial of his constitutional right of access to the courts. Because the Court reviews this motion under Fed.R.Civ.P. 12(b)(6), it does not consider the affidavit attached to the City defendants' motion to dismiss.

12    City defendants incorrectly argue that plaintiff must allege that a public entity conspired with a private entity, and that plaintiff's conspiracy claim should be dismissed for failing to do so. (*See* City Motion at 8.) A conspiracy claim under § 1983 must plead an agreement between a state and private actor only where the plaintiff brings a conspiracy claim against a *private* defendant. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (Plaintiff must show "an agreement between two or more state actors or between a state actor and a private entity.") (emphasis added).

13    Moreover, by Order dated July 17, 2009, Justice Dowling stated: "This case is marked by a tortured history of motion practice. The defendant's motions all center on his contention that there exist[s] proof that Richard Doyle [who testified and was cross examined at plaintiff's trial] somehow committed the crime for which he stands convicted by a jury of his peers." *People of the State of New York v. John Whitfield,* Ind. No. 2132/89 (Kings Cty. Sup.Ct. Jul. 21, 2008) (attached to Plaintiff's Motion to Compel Disclosure of Grand Jury Minutes, document 94, as Exhibit A).

14    Defendant Ellen Neri, Principal Court Reporter for the Kings County Supreme Court, states in her affidavit that a search for the stenographer's notes from the January 11, 1983 sentencing hearing was conducted at the archive facility in Rochester, New York, but the notes could not be found. (Affidavit of Ellen Neri ("Neri Aff."), dated October 30, 2008, attached to State defendants' motion for summary judgment.) Plaintiff makes much of this affidavit by alleging that the State has admitted that Pat Verdon, the court reporter at Doyle's sentencing, destroyed the stenographic minutes. (P's State Aff. ¶ 44.) However, all that Neri's affidavit establishes is that Verdon is the court reporter who took the notes and that the notes could not be located at the storage facility. (Neri Aff. ¶ 4.)

15    Regrettably, the State defendants did not to brief this issue in their memorandum of law, and only address the claim in a cursory manner in their reply. (*See* State Defendants' Reply at 9–10.)

16    On May 6, 2008, plaintiff filed a complaint with Chief Administrative Judge Ann Pfau regarding the "tardiness" of the Kings County Court Reporter's Office in responding to his April 14 letter. (Am.Compl.¶ 20.) Plaintiff filed a separate complaint with the Office of Court Administration's Inspector General, Sherrill Spatz, on July 15, 2008, requesting an investigation "to determine why he is apparently being denied access to the Kings County Courts." (*Id.* ¶ 26.)

17    Although unclear, "high ranking judicial officials" apparently refers to defendant Barbara Zahler–Gringer, Counsel for Administration and Operations at the Office of Court Administration, and Sherri Spatz. (*See* Am. Compl. ¶¶ 20, 26, 50.)

18    Plaintiff must demonstrate each defendant's personal involvement in a constitutional violation. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). second time. (Document 43.) Plaintiff's motion to amend is addressed herein.

---

**End of Document**                                      © 2016 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2016 Thomson Reuters. No claim to original U.S. Government Works.    12