UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

IVAN RAMOS,

                                    Plaintiff,

                                                                6:16-CV-01312
v.
                                                                (FJS/TWD)
GREGORY J. CULICK, Chief of Amsterdam
Police Department, SERGEANT CARL J. RUST,
Amsterdam Police Department,

                                    Defendants.
_____

APPEARANCES:

IVAN RAMOS
12-B-2475
Plaintiff, pro se
Green Haven Correctional Facility
P.O. Box 4000
Stormville, NY 12582

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

<u>**ORDER AND REPORT-RECOMMENDATION**</u>

**I.    INTRODUCTION**

        Pro se Plaintiff Ivan Ramos' initial complaint (Dkt. No. 1) in this civil rights action

against Defendant Carl J. Rust ("Rust"), brought under 42 U.S.C. § 1983, was dismissed for

failure to state a claim on initial review pursuant to 28 U.S.C. §§ 1915(e).  (Dkt. No. 12.)  The

dismissal was without prejudice, and the Hon. Frederick J. Scullin, Senior District Judge, has

referred Plaintiff's amended complaint (Dkt. No. 11) to the Court for initial review.  Plaintiff has

added Gregory J. Culick ("Culick") as a Defendant in his amended complaint.  *Id*.

## II.    INITIAL SCREENING

Having found that Plaintiff meets the financial criteria for commencing this case *in forma pauperis*, and because Plaintiff seeks relief from an officer or employee of a governmental entity, the Court must consider the sufficiency of the allegations set forth in the Complaint in light of 28 U.S.C. §§ 1915(e) and 1915A.  Section 1915(e) directs that when a plaintiff proceeds *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B)(i)-(iii).[1]

Similarly, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief can be granted; or . . . seeks monetary relief against a person who is immune from such relief."  28 U.S.C. § 1915A.

In reviewing a *pro se* complaint, the Court has the duty to show liberality towards *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990), and should exercise "extreme caution . . . in ordering *sua sponte* dismissal of a *pro se* complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).  Therefore, a

---

[1] To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or fact."  *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

court should not dismiss a complaint if the Plaintiff has stated "enough facts to state a claim that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court should construe the factual allegations in the light most favorable to Plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged  but it has not "show[n] that the pleader is entitled to relief." *Id*. at 679 (quoting Federal Rule of Civil Procedure 8(a)(2)). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, . . . it demands more than an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id*. (internal quotations marks and alterations omitted). Allegations that "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009).

Where a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation and internal quotation marks omitted). An opportunity to amend is not

required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Id*. (citation omitted).

## III.   PLAINTIFF'S AMENDED COMPLAINT

Plaintiff is presently imprisoned after being convicted by a jury of a double homicide. (Dkt. No. 11 at ¶ 4.[2]) Defendant Rust is a Sergeant in the Amsterdam Police Department in Amsterdam, New York. *Id*. at ¶ 3. On March 2, 2012, at approximately 5:50am, Rust arrived at the crime scene of the double homicide at 359 Locust Avenue, and upon entering the apartment saw one male victim and one female victim in close proximity. *Id*. at 5.[3] Rust took four photographs on his department phone and backed out of the crime scene. *Id*.

Plaintiff, who was sentenced to life in prison without parole, has denied committing the crimes, and since his conviction has begun his own investigation and allegedly learned from a reliable source that the actual perpetrator of the double homicide had left his orange and blue parka at the crime scene and had been unsuccessful in retrieving it. *Id*. at ¶¶ 7-9. The Plaintiff has identified the alleged perpetrator and the alleged source of the information in his amended complaint. *Id.* at ¶ 10.

Plaintiff contends he needs the four pictures in order to demonstrate that someone other than he committed the double homicide. *Id*. at ¶ 16. According to Plaintiff, if he had the pictures, he could show them to his source to ascertain if the orange and blue parka belonged to the person Plaintiff believes to have been the actual perpetrator of the crimes. *Id.* at ¶ 17.

---

[2] Paragraph references are used where the referenced document contains consecutively numbered paragraphs.

[3] Page references to documents identified by docket number are to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office.

Plaintiff alleges that the discovery will lead to DNA testing, and that without the four photos, his access to the courts will be curbed. *Id*. at ¶ at 18.

On April 12, 2016, Plaintiff submitted a Freedom of Information Law ("FOIL") request under N.Y. Pub. Off. Law §§ 87-89, requesting:

> 1.) A complete list of all Departmental Equipment/Gear issued to <u>Sgt. Carl Rust, Badge # 207</u>, for the dates of 2/28/2012 - 3/3/2012.
>
> 2.) The listing of the documents required which should include all of the Departmental Equipments/Gear's "Item I.D. number, Item Description, Issue date, e.t.c., which would correspond to each item issued to Sgt. Carl J. Rust, Badge # 207, during the requested dates above.

(Dkt. No. 11 at 9.) On April 13, 2016, Defendant Culick denied the request on the grounds that it would require the creation of a document, something not required under FOIL. *Id*. at 10. On July 20, 2016, Plaintiff wrote to Culick in response to his April 13, 2016, denial letter. (Dkt. 11 at 7.) Plaintiff enclosed a copy of Rust's March 2, 2012, statement disclosing that he had taken the four pictures at the crime scene, *id*. at 5, and described it as indicating "in no uncertain terms of the photographs requested under the FOIL back in April 12th, along with the time and date the photographs were taken." *Id*. at 7. Although Culick could likely have inferred from Plaintiff's July 20, 2016, follow up letter that Plaintiff wanted copies of the photographs, no specific request for the photographs was made in the April 12, 2016, FOIL request. *Id*. at 7, 9.

Plaintiff followed up on his July 20, 2016, letter to Culick with an August 19, 2016, letter enclosing another copy of Rust's statement and again mentioning the four photographs. *Id*. at 6. On September 1, 2016, Culick again responded that Plaintiff's request would require creation of a document, and the request was denied because no such document existed. *Id*. at 11.

Presumably, the document referenced by Culick was the list initially requested by Plaintiff.

Plaintiff has alleged that the refusal to give him the four pictures constitutes a violation of his rights under the First and Fourth Amendments to the Constitution. *Id*. at ¶ 19. He seeks relief directing Defendants to produce the cell phone used by Rust in taking the photographs and the photographs. *Id*.

## IV.    ANALYSIS

### A.    Defendant Rust

Personal involvement of an official sued in his official capacity is not necessary where a plaintiff is seeking only injunctive or declaratory relief under § 1983. *See Davidson v. Scully*, 148 F.Supp. 2d 249, 254 (S.D.N.Y. 2001). "Actions involving claims for prospective declaratory or injunctive relief are permissible provided the official against whom the action is brought has a direct connection to, or responsibility for, the alleged illegal action." *Marshall v. Switzer*, 900 F.Supp. 604, 615 (N.D.N.Y. 1995); *see also Schallop v. New York State Dept. of Law*, 20 F.Supp. 2d 384, 391 (N.D.N.Y. 1998) (claim for injunctive relief proper "where the state official has the authority required to perform the act.")

The only allegations in Plaintiff's amended complaint regarding Rust are that he is employed as a Sergeant by the Amsterdam Police Department, was the first to arrive on the scene of the double homicide, and took four pictures with his department issued cell phone. (Dkt. No. 11 at ¶¶ 3-4.) The amended complaint is devoid of factual allegations plausibly showing involvement on the part of Defendant Rust in Plaintiff's lack of success in obtaining the four photographs, or that Rust, as a Sergeant in the Amsterdam Police Department, has the authority

in his official capacity to release the photographs to Plaintiff.[4]  (*See generally* Dkt. No. 11.)

Plaintiff's April 12, 2016, FOIL request was sent to the "Records Access Officer" and the request

was handled by Police Chief Culick with no mention of Rust.  *Id.* at 6-11.

In light of the absence of any allegations in Plaintiff's amended complaint plausibly

showing that Rust had any direct connection to, or responsibility for, Plaintiff's attempt to obtain

copies of the four photographs, the Court recommends that the action be dismissed as against

Rust.  *See Marshall,* 900 F.Supp. at 615.  Plaintiff has failed to allege any facts showing that

Rust was in any way involved in the denial of Plaintiff's FOIL request, despite having had two

opportunities to do so.  There is nothing in Plaintiff's amended complaint suggesting that if

given a third opportunity, Plaintiff would be able to state a claim for relief against Rust.  *See*

*Cuoco*, 222 F.3d at 112.  Therefore, the Court recommends that dismissal of the action against

Rust be dismissed with prejudice.

### B.  Defendant Culick

#### 1.  Plaintiff's Fourteenth Amendment Right to Due Process

Plaintiff has alleged that denial of the photographs violated his rights under the First and

Fourth Amendments.  (Dkt. No. 11 at ¶ 19.)  The Fourth Amendment to the Constitution

protects people from unreasonable searches and seizures, U.S. Const. amend. IV, and has no

relevance to Plaintiff's claim.  Surmising that Plaintiff may have intended to allege a claim for

denial of due process under the Fourteenth Amendment, rather than a Fourth Amendment claim,

the Court has treated it as such.

---

[4]  Plaintiff has not alleged whether he is suing Rust in his official or individual capacity, or both.  Since Plaintiff is seeking solely injunctive relief, the Court has assumed that Rust is being sued in his official capacity.  (See Dkt. No. 11.)

In *District Attorneys Office for the Third Judicial Dist. v. Osborne*, 557 U.S. 52, 68-69

(2009), the Supreme Court found that a valid conviction constitutionally deprives a criminal

defendant of his liberty.  Thus, a post-conviction "right to due process is not parallel to a trial

right, and rather must be analyzed in light of the fact that [the convicted party] has already been

found guilty at a fair trial, and has only a limited interest in postconviction relief." *Id*. at 69.

States are given more flexibility in deciding the procedures needed in the context of post-

conviction relief.  *Id*.  "'[W]hen a State chooses to offer help to those seeking relief from

convictions,' due process does not dictat[e] the exact form such assistance must assume.'" *Id*.

(quoting *Pennsylvania v. Finley*, 481 U.S. 551, 559 (1987)).  Although there is no requirement to

exhaust state-law remedies, *see Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 500-01 (1982),

a plaintiff bears the burden of showing the inadequacy of the state law procedures available to

him in seeking state post-conviction relief.  *Osborne*, 557 U.S. at 71.  "Federal courts may upset

a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate

the substantive rights provided." *Id*.  at 69.

  In New York State, FOIL "provides the only state-created right to documentary evidence

for a New York prisoner."[5]  *McLean v. Brown*, 08-CV-5200 (JG), 2010 WL 2609341, at * 7

(E.D.N.Y. June 25, 2010);[6] *see also Mallet v. Johnson*, No. 09 Civ. 8430 (JGK), 2011 WL

2652570, at * 4 (S.D.N.Y.  July 7, 2011) (FOIL provides a mechanism by which an inmate may

obtain evidence related to a prior conviction); N.Y. Pub. Off Law § 89.  A violation of New York

---

[5] Photographs are included in the definition of "records" covered by FOIL.  N.Y. Pub.
Off. Law § 86(4).

[6] Copies of all unpublished decisions cited herein will be provided to Plaintiff in accordance
with *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

8

FOIL does not give rise to a claim under § 1983. *Sonds v. Cuomo*, No. 9:11-CV-0895 (NAM/ATB), 2012 WL 952540, at * 3 (N.D.N.Y. Feb. 3, 2012) ("Plaintiff's state FOIL request cannot be the basis of a federal action."). "The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information Law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies." *Schuloff v. Fields*, 950 F.Supp. 66, 67-68 (E.D.N.Y. 1997); *Posr v. City of N.Y.*, No. 10-CV-2551 (RPP), 2013 WL 2419142, at * 14 (S.D.N.Y. June 4, 2013) ("Under New York state law, if an agency or governmental official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y.C.P.L.R. Article 78." (citing N.Y. Pub. Off. Law § 89)).

"The sufficiency of Article 78 proceedings to satisfy due process requirements is well established." *Mallett*, 2011 WL 2652570, at * 4; *see also Hellenic Am. Neighborhood Action Comm.*, 101 F.3d 877, 880-81 (2d Cir. 1996) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit"); *Davis v. Guarino*, 52 F. App'x 568, 569 (2d Cir. 2002) (denial of plaintiff's FOIL request did not violate due process because "an Article 78 proceeding is a perfectly adequate post-deprivation remedy"); *Blount v. Brown*, No. 10-CV-01548 (ARR), 2010 WL 1945858, at * 2 (E.D.N.Y. May 11, 2010) ("[W]ith respect to the question of constitutional due process and FOIL requests, adequate process is clearly available through an Article 78 proceeding to remedy an improper denial of disclosure.") (citation and internal quotation marks omitted); *Papay v. Haselhuhn*, No. 07 Civ. 3858 (LAP) (JG), 2010 WL 4140430, at * 9-10 (S.D.N.Y. Oct. 21, 2010) (availability of Article 78 proceeding defeats claim that denial of FOIL

request violates due process).

In sum, the New York FOIL procedures are sufficient to protect any property interest Plaintiff may have in the receipt of FOIL documents. Accordingly, the Court finds that Plaintiff has failed to state a claim under the Fourteenth Amendment for violation of his right to due process with regard to his FOIL request for the four crime scene photographs. Therefore, the Court recommends that Plaintiff's Fourteenth Amendment due process claim with regard to his FOIL application be dismissed without prejudice, but without leave to replead in this action in light of its futility. *Cuoco*, 222 F.3d at 99.

    2.    Plaintiff's First Amendment Claim for Denial of Access to the Courts

Plaintiff has also alleged a First Amendment claim for denial of access to the courts. The Supreme Court has long held that inmates are guaranteed a right of access to the courts under the First Amendment to the Constitution. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To state a claim for violation of the constitutional right of access to court, a plaintiff must allege facts plausibly suggesting: "(1) a 'nonfrivolous, arguable underlying claim' that has been frustrated by the defendants' actions, and (2) a continued inability to obtain the relief sought by the underlying claim." *Arar v. Ashcroft*, 585 F.3d 559, 592 (2d Cir. 2009) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)); *see also Whitfield v. Inperatrice*, No. 08 CV 3395 (CBA)(LB), 2010 WL 6032636 at *5 (E.D.N.Y. Sept. 17, 2010) (plaintiff's complaint "must identify a separate, 'ancillary' legal claim that has been thwarted or prejudiced by the alleged denial, and that is 'non-frivolous' and arguable in nature."), *adopted as modified on other grounds*, 2011 WL 864703 (March 9, 2011), *aff'd* 477 F. App'x 806 (2d Cir. 2012). A plaintiff must set forth sufficient facts in the complaint to suggest that

success on the underlying claim is founded on more than mere "hope." *Christopher*, 536 U.S. at

415. In addition, a plaintiff must point to deliberate and malicious acts by the defendant that

frustrated his efforts to commence or prosecute that claim. *Davis v. Goord*, 320 F.3d 346, 351

(2d Cir. 2003) (citing *Lewis*, 518 U.S. at 353.)

In order to state a claim for denial of access, Plaintiff is required to "allege actual injury

separate and apart from the claim that he was refused access to court records." *Whitfield,* 2010

WL 6032636, at * 6 (citing *Christopher*, 536 U.S. at 414-15, "[T]he very point of recognizing

any access claims is to provide some effective vindication for a separate and distinct right to seek

judicial relief for some wrong . . . our cases rest on the recognition that the right is ancillary to

the underlying claim, without which a plaintiff cannot have suffered an injury by being shut out

of court.")

Plaintiff does not allege in his amended complaint that the denial of his FOIL request

prejudiced or interfered with an existing judicial proceeding, such as a post-conviction motion to

vacate judgment pursuant N.Y. Criminal Procedure Law § 440.10(g).[7] Moreover, Plaintiff has

failed to set forth facts in his amended complaint suggesting that if he were to challenge his

conviction relying on the four photographs, his success would be based on more than mere

"hope." *Christopher*, 536 U.S. at 415. Plaintiff's amended complaint gives no indication that he

has a reasonable basis, or any basis, for believing that the four photographs show the orange and

blue parka he alleges belonged to the person whom he believes to be the actual killer. (Dkt. No.

11 at ¶ 17.) Even if they did, the amended complaint is devoid of factual allegations suggesting

---

[7] As noted above, Plaintiff's April 12, 2016, FOIL request does not, by its terms, include
a request for the four photographs Plaintiff is seeking in this action, despite what appears to have
been Plaintiff's intent in making the request. (Dkt. No. 11 at 6.)

that the parka still exists, or could be located, or that it would provide any DNA evidence that would help establish Plaintiff's innocence or indeed be connected to the double homicide in any manner. *Id*. at ¶ 19.  In short, the allegations in Plaintiff's amended complaint do not even provide an adequate basis for hope.  In addition, Plaintiff has alleged no facts plausibly showing that Culick acted deliberately and maliciously in frustrating Plaintiff's efforts to commence or prosecute an underlying claim as is required for an access to the courts claim. *Davis,* 320 F.3d at 351.

Based upon the foregoing, the Court finds that Plaintiff's amended complaint fails to state a First Amendment access to courts claim against Culick.  Therefore, the Court recommends that Plaintiff's access to the courts claim be dismissed, but that the dismissal be without prejudice, and Plaintiff be granted one more opportunity to submit an amended complaint setting forth a claim for denial of access to court.

**ACCORDINGLY**, it is hereby

**RECOMMENDED**, that Plaintiff's amended complaint (Dkt. No. 11) be **DISMISSED WITH PREJUDICE** as against Defendant Rust upon initial review for failure to state a claim; and it is further

**RECOMMENDED** that the Plaintiff's amended complaint be **DISMISSED** as against Defendant Culick, and that the dismissal be **WITHOUT PREJUDICE, BUT WITHOUT LEAVE TO AMEND IN THIS ACTION** as to his Fourteenth Amendment due process claim, and **WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** as to his First Amendment access to courts claim.

**ORDERED**, that the Clerk provide Plaintiff with a copy of this Order and Report-

Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[8]  Such objections shall be filed with the Clerk of the Court.  **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:   February 9, 2017
　　　　Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge

---

[8] If you are proceeding *pro se* and are served with this report and recommendation/order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the report and recommendation/order was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

2010 WL 1945858
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

NOT FOR PRINT OR ELECTRONIC PUBLICATION
United States District Court,
E.D. New York.

Eris BLOUNT, Plaintiff,

v.

Richard A. BROWN, individually, and as
Supervisor of the Queens County District
Attorney's Office; Josette Simmons, individually,
and a Assistant District Attorney Records
Access Officer, Queens County; Gary S. Fidel,
individually, and as Executive Assistant District
Attorney and Supervising Officer of the F.O.I.L.
Appeals Unit, Queens County, Defendants.

No. 10–CV–01548 (ARR).
|
May 11, 2010.

**Attorneys and Law Firms**

Eris Blount, Stormville, NY, pro se.

*MEMORANDUM AND ORDER*

ROSS, District Judge.

**\*1** Plaintiff, currently incarcerated at Green Haven
Correctional Facility pursuant to a 1983 state court
conviction, proceeding *pro se,* files this complaint
pursuant to 42 U.S.C. § 1983 against various officials
within the Queens County District Attorney's Office
alleging that their refusal to grant his request under
New York's Freedom of Information Law ("FOIL") for
"access to forensic test results of hair samples" violated
his constitutional rights. Plaintiff seeks the release of the
requested tests and documents. Compl. at 11. Plaintiff's
request to proceed *in forma pauperis* is granted pursuant
to 28 U.S.C. § 1915 solely for the purpose of this Order.
Plaintiff's complaint is dismissed for the reasons stated
below.

**I. Background**

In 1983, plaintiff was convicted of one count of rape, two
counts of first degree burglary and four counts of robbery
in Queens County. He is currently serving two consecutive
terms of twelve and one-half to twenty-five years.

Plaintiff has pursued numerous state court appeals
and post-conviction motions and has filed at least six
habeas petitions in this Court. *See, Blount v. Sullivan,*
NO. 87–CV–2998, 1989 WL 57429, at * 1 (E.D.N.Y.
May 23, 1989); *Blount v. Keane,* 89–CV–2449 (CPS);
*Blount v. Keane,* No. 90–CV–3050, 1991 WL 81930,
at *1 (E.D.N.Y. May 6, 1991); *Blount v. Keane,* 91–
CV–115 (CPS); *Blount v. Artuz,* 94–CV–5389 (CPS);
*Blount v. Artuz,* 97–CV–544 (CPS). Throughout these
proceedings, he has maintained his innocence. Among his
efforts are 1994 and 1995 FOIL requests of the police
department and medical examiner's office for investigative
and laboratory reports concerning plaintiff's blood, saliva
and pubic hair samples taken in 1992. Compl. at 5–6, Exs.
B–E. These requests were denied.

Later, in 2007, when he learned via a private investigator
that in 1982 there had been an Affidavit filed by the
District Attorney's Office and a Court Order directing
the collection of pubic hair samples, Compl., Ex. A,
he again filed a FOIL request, directed this time at
the Queens County District Attorney's Office. It is the
denial of that request by the District Attorney's Office
on January 29, 2008, and the denial of his appeal by
defendant Fidel, Executive Assistant District Attorney,
FOIL Appeals Officer on February 25, 2008 that plaintiff
seeks to challenge herein. Compl. 7–8, Exs. H–L. Plaintiff
does not allege that he pursued any further review of the
denial of his FOIL request.

**II. Standard of Review**

Under 28 U.S.C. § 1915A, a district court "shall review,
before docketing, if feasible or, in any event, as soon as
practicable after docketing, a complaint in a civil action
in which a prisoner seeks redress from a governmental
entity or officer or employee of a governmental entity."
28 U.S.C. § 1915A. Upon review, a district court shall
dismiss a prisoner's complaint *sua sponte* if the complaint
is "frivolous, malicious, or fails to state a claim upon
which relief may be granted; or seeks monetary relief
from a defendant who is immune from such relief." *Id.;
Abbas v. Dixon,* 480 F.3d 636, 639–40 (2d Cir.2007). In

reviewing plaintiff's complaint, the Court is mindful that the submissions of a *pro se* litigant must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006). The Court construes plaintiff's pleadings particularly because they allege civil rights violations. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).

### III. Discussion

#### A. *Section 1983*

**\*2** Plaintiff brings this action alleging violations by defendants pursuant to 42 U.S.C. § 1983. Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ... 42 U.S.C. § 1983.

#### B. *FOIL Request & Due Process*

In essence, Blount alleges that pursuant to the New York State's Freedom of Information Law ("FOIL"), *see* N.Y. Pub. Off. Law §§ 84–90, he requested copies of all "laboratory analysis reports of pubic hair samples from the crime scene and from him," the medical examiner's report, the "laboratory case number" and the names of those involved in the testing, Compl. at 7, and that defendants denied his requests and thereby deprived him of Due Process.

With respect to any due process claim, "[t]he threshold issue is always whether the plaintiff has a property or liberty interest protected by the Constitution." *Narumanchi v. Bd. of Trustees of Conn. State Univ.,* 850 F.2d 70, 72 (2d Cir.1988). "*If* a protected interest

is identified, a court must then consider whether the government deprived the plaintiff of that interest without due process." *Id.* (emphasis original).

#### C. *Property Interest in Obtaining FOIL Documents*

"As several courts in th[is] Circuit have held, 'a plaintiff has no property interest in obtaining FOIL documents.' " *Lawrence v. Baxter,* No. 03–CV–228S, 2004 WL 1941347, at \*3 (W.D.N.Y. Aug.31, 2004), *aff'd,* 139 Fed. Appx. 365 (2d Cir.2005) (quoting *O'Bradovich v. Village of Tuckahoe,* 325 F.Supp.2d 413, 432 (S.D.N.Y.2004)); *Simpson v. Town of South Hampton,* no. 06–CV–6743, 2007 WL 1755749, at \*4 (E.D.N.Y.2007); *Webb v. Ashburn,* No. 96 Civ. 325, 1997 WL 118355, at \*6 (S.D.N.Y.Mar.17, 1997); *Billups v. Millet,* No. 91 Civ. 6326, 1996 WL 99399, at \*4 (S.D.N.Y. Mar.6, 1996). "Specifically, because FOIL documents need only be produced after a request and investigation by the state entity, *see* N.Y. Pub. Off. Law §§ 84–89, individuals making such request do not have anything beyond a mere expectation in such documents, and, thus, do not have an entitlement to requested documents that is protected by the Fourteenth Amendment." *Simpson,* 2007 WL 1755749 at \*4. Thus, without the property interest in the documents required for due process claims, the defendants' failure to provide the requested documents does not amount to a constitutional violation. *Id.* (quoting *O'Bradovich,* 325 F.Supp.2d at 432–433).

#### D. *Deprivation*

In this case, even assuming *arguendo* that plaintiff had a protected property interest in the FOIL documents, his due process claim would still fail as a matter of law because he has not shown that the state post-deprivation process is inadequate. New York law provides a remedy for the improper denial of a FOIL request. A person denied access to requested documents may appeal the denial to the "head, chief executive or governing body" of the entity or agency in possession of the documents. N.Y. Pub. Off. Law § 89(4)(a). The person must then challenge the denial of the FOIL request on appeal by commencing a proceeding under Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. Law. § 89(4)(b). *See Schuloff v. Fields,* 950 F.Supp. 66, 67–68 (E.D.N.Y.1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78

upon exhaustion of administrative remedies.") (citing *Greenberg v. Bd. of Educ. Of the City of N.Y.,* 125 F.R.D. 361, 362 (E.D.N.Y.1989). Thus, with respect to the question of constitutional due process and FOIL requests, "adequate process is clearly available through an Article 78 proceeding to remedy an improper denial of disclosure." *Ferrara v. Superintendent, N.Y.S. Police Dep't.,* 26 F.Supp.2d 410, 414 n. 3 (N.D.N.Y.1998); *Davis v. Guarino.* 52 Fed. Appx. 568 (2d Cir.2002) (The denial of plaintiff s FOIL request did not violate due process because "an Article 78 proceeding is a perfectly adequate post-deprivation remedy") (citing *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880–881 (2d Cir.1996); *see also Simpson,* 2007 WL 1755749 at *4 ("With the regard to a denial of a FOIL request, adequate post-deprivation proces is clearly available through an Article 78 proceeding in New York State court to remedy an imporper denial of plaintiff's FOIL requests."). In other words, the procedures set forth under New York law are sufficient to protect any property interest that a person might have in the receipt of FOIL documents. Accordingly, plaintiff has failed to state a claim under § 1983 and the complaint is dismissed. 28 U.S.C. § 1915A.

### E. Distinct from Cases Seeking Physical Evidence for DNA Testing

**\*3** To the extent plaintiff seeks to bring his case under the umbrella of cases in which Due Process grants a convicted offender access to physical evidence for the purpose of DNA testing, Compl. at ¶ 3, his effort is misplaced. This action is fundamentally different. In those cases, a post-conviction defendant seeks physical or biological evidence for DNA testing that was either not conducted for trial or not available. Here, plaintiff seeks not physical evidence, but the results of DNA testing already conducted on physical evidence in the course of the investigaton, but not introduced at his trial. That is, not only was the DNA testing done prior to his trial and is therefore not "new" evidence, the evidence he seeks was not used to secure his conviction.

Plaintiff relies on *McKithen v. Brown,* 565 F.Supp.2d 440 (E.D.N.Y.2008) to claim a due process right to the documents he seeks. Not only does *McKithen* concern different evidence—physical evidence for the purpose of DNA testing rather than documentary evidence-and different state procedures—N.Y. Crim Pro. C.L. § 440.30(1–a)(a) versus FOIL—its holding has been altered

by the Supreme Court's decision in *District Attorney's Office for the Thrid Judicial Dist. v. Osborne,* —— U.S. ——, 129 S.Ct. 2308, 174 L.Ed.2d 38 (2009).

In *Osborne,* the Supreme Court recently addressed a plaintiff's constitutional right to obtain post-conviction access to evidence for DNA testing. "Osborne brought a section 1983 action to compel the release of biological evidence so that it could be subject to DNA testing. Osborne claimed both a substantive and procedural due process right to the evidence under the Federal Constitution and a procedural due process right stemming from an Alaskan state statute that provided for postconviction access to evidence. The Supreme Court expressly rejected Osborne's argument that postconviction defendants have a substantive or procedural due process right to postconviction DNA evidence. However, the Court found that when a state enacts a statute providing postconviciton defendants access to evidence and a procedure for accessing such evidence, the state has created a liberty interest that is entitled to due process protection"

*Newton v. City of New York,* No. 07–CV–6211, 2010 WL 323050, at *8 (S.D.N.Y. Jan 27, 2010). The Supreme Court held in *Osborne* that a federal court "may upset a State's post-conviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osoborne,* 129 S.Ct at 2320. A post-conviction relief procedure is deemed inadequate if it "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental, or transgresses any recognized principle of fundamental fairness in operation." *Id.* (citation omitted). It is the plaintiff's "burden to demonstrate the inadequacy of the state-law procedures available to him in state postconviction relief." *Id.* at 2321.

**\*4** Plaintiff has not shown that the New York state procedures to obtain the evidence he seeks are inadequate. *See e.g., Figuerora v. Morgenthau,* No. 09–CV–4188, 2009 WL 3852467 at *2 (S.D.N.Y. Nov.18, 2009) (New York state's postconviction relief procedure for access to evidence for DNA testing, N.Y.Crim. Proc. L. § 440.30(1–a)(a), is more permissive than the Alaskan procedures that the Supreme Court found constitutional in *Osborne* ). Nor has plaintiff availed himself of the procedures which he seeks to upset; he has not pursued a New York C.P.L.R. Article 78 proceeding to challenge the denial of his appeal. Moreover, plaintiff has not identified any way

in which the state procedures were applied in violation of his constitutional rights.

Finally, plaintiff's reliance on *Leka v. Portuondo,* 257 F.3d 89, 100 (2d Cir.2001) for the proposition that "*Brady [v. Maryland,* 371 U.S. 812, 83 S.Ct. 56, 9 L.Ed.2d 54 (1962) ] requires disclosure of information that the prosecution acquires during trial itself, or even afterwards" is erroneous. In *Osborne,* the Supreme Court rejected such an expansive view of the state's obligation to reveal potentially exculpatory evidence to post-conviction defendants.

> Given a valid conviction, a criminal defendant has been constitutionally deprived of his liberty. The State accordingly has more flexibility in deciding what procedures are needed in the context of postconviction relief. "[W]hen a State chooses to offer help to those seeking relief from convictions," due process does not "dictat[e] the exact form such assistance must assume." *Pennsylvania v. Finlev.* 481 U.S. 551, 559, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). Osborne's right to due process is not parallel to a trial right, but rather must be analyzed in light of the fact that he has already been

found guilty at a fair trial, and has only a limited interest in postconviction relief. *Brady* is the wrong framework.

*Osborne.* 129 S.Ct. at 2320.

## CONCLUSION

Accordingly, plaintiff's complaint is dismissed because it fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A. The Court has considered giving plaintiff leave to amend his complaint but declines to do so in light of its futility. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000); *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States.* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 1945858

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 2652570
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Antonio MALLET, Plaintiff,
v.
Robert T. JOHNSON, Bronx County
District Attorney, Defendant.

No. 09 Civ. 8430(JGK).
|
July 7, 2011.

*MEMORANDUM OPINION AND ORDER*

JOHN G. KOELTL, District Judge.

**\*1** The plaintiff, Antonio Mallet, a prisoner incarcerated at Eastern Correctional Facility, brought this action *pro se* against Bronx County District Attorney Robert T. Johnson under 42 U.S.C. § 1983. The plaintiff seeks the release of fingerprint and ballistic evidence collected in connection with his 1999 criminal trial. The plaintiff also requests the release of records and reports prepared during the investigation, along with the personnel records for the investigation's lead detective. The defendant moves to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff also requests a copy of the transcript of another proceeding, as well as the appointment of counsel.

**I.**

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the Complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570

(2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." *Id.*

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (brackets and internal quotation marks omitted). "Even in a pro se case, however, ... threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (internal quotation marks omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." *Id.; see also Benavides v. Grier,* No. 09 Civ. 8600, 2011 WL 43521, at \*1 (S.D.N.Y. Jan. 6, 2011).

**II.**

The following allegations are assumed to be true for the purposes of this motion.

On September 23, 1999, following a jury trial, the plaintiff was convicted in the New York State Supreme Court, Bronx County, of murder in the second degree. He was sentenced to a term of twenty years to life imprisonment. On December 12, 2000, the Appellate Division, First Department, affirmed the plaintiff's conviction on appeal. *People v. Mallet,* 717 N.Y.S.2d 530 (App.Div.2000). Leave to appeal to the New York Court of Appeals was denied. *People v. Mallet,* 750 N.E.2d 82 (N.Y.2001). By motion to the Supreme Court, Bronx County, the plaintiff moved to vacate the judgment pursuant to New York Criminal Procedure Law § 440.10 based on the grounds of ineffective assistance of counsel. The court denied this motion, and leave to appeal to the Appellate Division denied.

**\*2** The plaintiff sought relief in federal court by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Judge Marrero denied the plaintiff's petition

and rejected all of his claims. The plaintiff moved for reconsideration, and Judge Marrero denied that motion. The plaintiff moved a second time for reconsideration, this time on the basis on "newly obtained" evidence. Judge Marrero rejected this motion as repetitive of his previous motions, and the Second Circuit denied the plaintiff's subsequent motion for a certificate of appealability and dismissed his appeal. *Mallet v. Miller,* 432 F.Supp.2d 366 (S.D.N.Y.2006), *recons. denied,* 438 F.Supp.2d 276 (S.D.N.Y.2006), *recons. denied,* 442 F.Supp.2d 156 (S.D.N.Y.2006), *appeal dismissed,* No. 06–3255–pr (2d Cir. Dec. 26, 2006).

On August 17, 2006, the plaintiff returned to state court and submitted a second § 440.10 motion to vacate the judgment of conviction, this time on the basis of, among other things, allegedly newly-discovered evidence. (Aroubas Decl., Ex. B ("Second § 440.10 Order") at 3.) The plaintiff alleged that the ballistics detective who testified at trial was capable of performing microscopic analysis, and if the jury were given more information about the detective's ability to perform such analysis, it would have been evidence for the plaintiff. As relevant to this case, the Supreme Court denied the plaintiff's request on two grounds. First, it determined that the evidence of the detective's capabilities was available to the plaintiff before and during trial, which precluded a motion under § 440.10. *Id.* at 4. Second, it found plaintiff's argument that the evidence would have affected the outcome of the trial to be speculative at best. *Id.* at 4–5.

On March 5, 2008, the plaintiff returned to federal court and moved for an order vacating the denial of his habeas petition on the basis of newly-discovered evidence. *Mallet v. Miller,* 553 F.Supp.2d 336 (S.D.N.Y.2008). The plaintiff presented an article published in the New York Law Journal on September 15, 2005 that described a detective who used microscopic analysis to examine a bullet. *Id.* at 336. Judge Marrero rejected this motion on the grounds that the evidence was not "new," because it was published before the court's denial of the plaintiff's petition, and moreover, because the evidence "would not be sufficient to establish by clear and convincing evidence that no reasonable jury would have found [the plaintiff] guilty of the offense, given the substantial record otherwise supporting his conviction." *Id.* at 336–37.

On June 10, 2008, the plaintiff returned to state court and filed a third motion to vacate his judgment pursuant to

CPL § 440.10, and a motion to release the fingerprints and ballistic evidence used in his case pursuant to CPL § 440.30(1–a). (Aroubas Decl., Ex. C ("Third § 440.10 Order") at 1.) The court denied the plaintiff's motion to vacate on all grounds. *Id.* at 7. The court also denied the plaintiff's request for access to evidence on the ground that the plaintiff had articulated this request in previous applications and had repeatedly failed to provide an exception for reviving the claim. *Id.* at 6–7.

**\*3** Meanwhile, the plaintiff filed several Freedom of Information Law ("FOIL") requests to obtain evidence from his criminal investigation. On October 5, 2006, the plaintiff filed a FOIL request for the fingerprints and ballistic evidence collected at the crime scene. (Compl., Ex. D, ("FOIL Order") at 2.) On October 19, 2006, the plaintiff filed a FOIL request for the police reports and paperwork from the investigation. After receiving an insufficient response, the plaintiff appealed to the Records Access Appeals Officer ("RAAO"), who denied his appeal on May 11, 2007. After the appeal was denied, the plaintiff commenced an Article 78 proceeding. *Id.* at 3. On April 2, 2008, the Supreme Court denied a motion to dismiss the Article 78 petition. *Id.* at 9–10. On May 16, 2008, the Records Access Officer ("RAO") provided the plaintiff with photostatic copies of the fingerprint evidence. (Compl., Ex. H at 3.) The plaintiff was unable to retest these copies. (Compl. at 4.) The RAO also certified that "police reports, photographs and audiotapes of all wiretaps and surveillance," which the plaintiff had requested, could not be located. (Compl., Ex. H at 3.)

On February 5, 2008, the plaintiff filed a FOIL request to obtain the personnel records of Detective Nieves, the lead detective in his criminal investigation. (Compl., Ex. K.) The request was denied pursuant to Public Officers Law §§ 87(2)(e) and (a), which exempts police officer personnel records from disclosure. (Compl., Ex. L.) The plaintiff appealed the decision, (Compl., Ex. M), and on April 25, 2008, the RAAO denied this appeal. (Compl., Ex. N.) The RAAO informed the plaintiff that he could seek judicial review of the decision by commencing an Article 78 proceeding within four months of the decision. *Id.* The plaintiff did not commence an Article 78 proceeding.

On October 5, 2009, the plaintiff filed this action pursuant to § 1983 alleging that he was wrongfully denied post-trial access to evidence. The plaintiff requests the following evidence: (1) the latent fingerprint lifts; (2) the seven

Polaroid photos of the fingerprint lifts; (3) the fingerprint tape; (4) the white actual fingerprint cards; (5) the results from the fingerprints report; (6) the deformed lead bullet and fragments; (7) the crime scene color photographs of the ballistic evidence; (8) all ballistic work sheets; (9) audio and surveillance tapes, along with paperwork from the criminal investigation; and (10) personnel records for Detective Nieves. (Compl. at 2, 6.)

### III.

Section 1983 provides a cause of action to those who challenge a state's "deprivation of any rights ... secured by the Constitution." 42 U.S.C. § 1983. The plaintiff claims that the defendant, in denying him access to post-conviction evidence, has deprived him of protections guaranteed by the Due Process Clause and Equal Protection Clause. The plaintiff also alleges that this denial has deprived him of his right to access the courts.

### A.

**\*4** In two recent decisions, the Supreme Court has instructed how to proceed when a defendant brings a post-conviction due process claim under 42 U.S.C. § 1983 and seeks access to potentially exculpatory evidence. *See Skinner v. Switzer,* 131 S.Ct. 1289 (2011); *Dist. Attorney's Office for Third Judicial Dist. v. Osborne,* 129 S.Ct. 2308 (2009). Both *Skinner* and *Osborne* involved requests for evidence for the purposes of DNA testing. Although the plaintiff in this case seeks fingerprint and ballistic evidence, these recent decisions are instructive.

In *Skinner,* the Supreme Court held that a post-conviction claim for access to evidence is properly brought under § 1983. *Skinner,* 131 S.Ct. at 1293. The Court reasoned that § 1983 was the proper vehicle for such a claim rather than a petition for habeas corpus because success in obtaining DNA testing would not "necessarily imply" the invalidity of the conviction. *Id.* at 1298. While the outcome of the testing might prove exculpatory, that outcome "is hardly inevitable." *Id.* However, the Court noted that its earlier decision in *Osborne* severely limited this right. *Id.* at 1293. In *Osborne,* the Court held that a convicted defendant has no freestanding substantive due process right to obtain DNA testing. *Osborne,* 129 S.Ct. at 2322. Instead, the issue is whether the state's

procedures afforded to post-conviction defendants for access to information to vindicate the state right to post-conviction relief are adequate. *Osborne,* 129 S.Ct. at 2320; *McLean v. Brown,* No. 08 Civ. 5200, 2010 WL 2609341, at \*7 (E.D.N.Y. June 25, 2010.) Federal courts "may upset a State's postconviction relief procedures only if they are fundamentally inadequate to vindicate the substantive rights provided." *Osborne,* 129 S.Ct. at 2320; *see also McKithen v. Brown,* 626 F.3d 143, 151–55 (2d Cir.2010) (applying Osborne and finding that the procedures under New York law for DNA testing are constitutionally adequate).

In New York State, FOIL provides a mechanism by which a prisoner may obtain evidence related to a prior conviction. *See* N.Y. Pub. Off. Law. § 84. Under FOIL, government records are presumptively open to the public, and post-conviction defendants qualify as members of the public when seeking information about their cases. *Gould v. N.Y.C. Police Dep't,* 675 N.E.2d 808, 811 (N.Y.1996).

The plaintiff has failed to allege that FOIL procedures are fundamentally inadequate. In a thoughtful opinion, Judge Gibson recently held that FOIL proceedings provide an "adequate means of protecting the prisoner's interests, including access to judicial review in state Supreme Court." *McLean,* 2010 WL 2609341, at \*7; *see also Blount v. Brown* No. 10 Civ. 01548, 2010 WL 1945858, at \*2 (E.D.N.Y. May 11, 2010) ("the procedures set forth under New York law are sufficient to protect any property interest that a person might have in the receipt of FOIL documents"). A prisoner may make a FOIL request for relevant records, and if a request is denied, the prisoner may appeal this decision. After exhausting all administrative remedies, a prisoner may challenge the denial in a state-court action for judicial review under Article 78 of the CPLR. *See* N.Y. Pub. Off. L. § 89(4) (b). The sufficiency of Article 78 proceedings to satisfy due process requirements is well-established. See *Hellenic Am. Neighborhood Action Comm. v. City of New York,* 101 F.3d 877, 880–81 (2d Cir.1996) ("An Article 78 proceeding is adequate for due process purposes even though the petitioner may not be able to recover the same relief that he could in a § 1983 suit."); *see also Papay v. Haselhuhn,* No. 07 Civ. 3858, 2010 WL 4140430, at \*9–10 (S.D.N.Y. Oct. 21, 2010) (availability of Article 78 proceeding defeats claim that denial of FOIL request violates due process); *Getso v. CUNY,* No. 08 Civ. 7469, 2009 WL 4042848, at \*4 (S.D.N.Y. Nov. 18, 2009) (same). Accordingly,

the availability of an Article 78 proceeding satisfies any procedural due process right of the plaintiff to avail himself of the state law rights in question.

 **\*5** Additionally, the plaintiff has failed to use fully the state process. Like the state prisoner in *Osborne,* this leaves the petitioner, "in a very awkward position." *Osborne,* 129 S.Ct. 2321. While there is no requirement to exhaust state-law remedies, *see Patsy v. Board of Regents of Fla.,* 457 U.S. 496, 500–1 (1982), it is the plaintiff's burden to show the inadequacy of the state law procedures available to him in state post-conviction relief. *Osborne,* 129 S.Ct. at 2321. There is no indication that the petitioner followed up on his Article 78 petition after the Supreme Court refused to dismiss it. There is also no indication that the petitioner sought Article 78 relief from the May 16, 2008 decision of the RAO or the April 25, 2008 decision of the RAAO. As in *Osborne,* the procedures are adequate on their face, and without pursuing them, the plaintiff cannot argue that they do not work in practice. *Id.*

To the extent the plaintiff alleges that the inability to obtain the actual fingerprint and ballistic evidence makes these procedures inadequate, the plaintiff does not have a state-created right to this evidence and therefore has no recognizable claim under § 1983. Under FOIL, physical evidence is exempted from disclosure because physical evidence does not fit within the statutory definition of "record." *See Sideri v. Office of Dist. Atty.,* 663 N.Y.S.2d 206, 206 (App.Div.1997); *see also* N.Y. Pub. Off. Law § 86(4). Moreover, there is no state-created right to post-conviction access to such evidence. *See Nwobi v. Kelly,* No. 06 Civ. 4848, 2006 WL 2882572, at \*3 (E.D.N.Y. Oct. 6, 2006). [1]

**B.**

The plaintiff also alleges an equal protection violation on the ground that he is being treated differently from others who are similarly situated.

"The Equal Protection Clause requires that the Government treat all similarly situated people alike." *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001). "[T]he prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class ...." *Id.*

Courts also recognize equal protection claims by individuals "who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Id.* The Supreme Court has instructed that "[o]ur cases have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam).

Here, the plaintiff has not set forth an equal protection claim on either ground. First, the plaintiff had not claimed class membership because prisoners who seek evidence are not members of a protected class. *See Lee v. Governor of N.Y.,* 87 F.3d 55, 60 (2d Cir.1996) (noting that "prisoners ... are not a suspect class"); *see also McLean,* 2010 WL 2509341, at \*8 n. 7. Second, the plaintiff has not alleged that he is being treated differently from any similarly situated individuals. The plaintiff appears to argue that seekers of DNA evidence and seekers of other types of evidence should have the equal access to evidence. However, the plaintiff is not similarly situated to those seeking DNA evidence. The difference in treatment of the two types of claimants has a rational basis, in that DNA evidence may have a greater capacity to exonerate individuals, and therefore, the New York legislature chose to afford greater protections to post-conviction defendants who seek DNA evidence than those who seek, for example, ballistic or fingerprint evidence.

 **\*6** The plaintiff cites *Frails v. City of New York,* 236 F.R.D. 116 (E.D.N.Y.2006), as evidence that he is being treated differently from others who are similarly situated. In *Frails,* the court provided the plaintiff with access to evidence of an officer's prior misconduct. *Id.* at 117–18. However, *Frails* is inapposite because the plaintiff in *Frails* and the plaintiff in this case are not similarly situated. The plaintiff in *Frails* brought an excessive force claims against the police officer whereas the plaintiff in this case seeks evidence to challenge his conviction.

Therefore, the plaintiff's equal protection claim fails as a matter of law.

**C.**

The plaintiff also brings an access to courts claim. The plaintiff contends that the defendant's failure to provide him with his requested evidence has "hampered his ability to prove his innocence," and that this has "denied him meaningful access to the courts."

In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a non-frivolous claim. *Lewis v. Casey,* 518 U.S. 343, 352–53 (1996).

Here, the plaintiff was not denied access to the courts for any non-frivolous claim. He repeatedly presented his arguments to the state courts with respect to the purported evidence and they were rejected. He specifically argued to Judge Marrero that fingerprint evidence would be exculpatory, and Judge Marrero denied that claim on the merits. *Mallet* 432 F.Supp.2d at 377. Accordingly, the plaintiff has failed to show that he has any plausible claim for denial of access to the courts.

### D.

The plaintiff has also failed to allege District Attorney Johnson's personal involvement in the events at issue in this case. Johnson's involvement is pleaded in the conclusory terms that "[t]he Office of The Bronx Country District Attorney, Robert T. Johnson, violated plaintiff's rights under the United States Constitution...." (Compl. at 7.) Because there are no allegations of the personal involvement of Johnson, the claims against him must be dismissed. *See, e.g., Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006) (Sotomayor, J); *Haygood v. City of New York,* 64 F.Supp.2d 275, 279–80 (S.D.N.Y.1999). Moreover, District Attorney Johnson is also entitled to absolute prosecutorial immunity. *See, e.g., Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993); *Day v. Morgenthau,* 909 F.2d 75, 77 (2d Cir.1990).

### E.

In light of the dismissal of the plaintiff's complaint, the plaintiff's requests for the appointment of counsel and the production of a portion of a hearing transcript in *McKithen* are denied as moot.

### CONCLUSION

**\*7** The Court has carefully considered all of the arguments raised by the parties. To the extent not specifically discussed above, they are either moot or without merit.[2] For the reasons explained above, the defendants' motion to dismiss is granted. The plaintiff's requests for appointment of counsel and production of a hearing transcript are denied as moot. The Clerk is directed to enter judgment dismissing the complaint and closing this case. The Clerk is also directed to close all pending motions.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.2d, 2011 WL 2652570

---

Footnotes

1　In an effort to narrow the issues in this case, the Court urged counsel for the defendant to determine what additional documents could be produced. The defendant's counsel, without waiving any rights, produced color photographs of the crime scene. The plaintiff rejected these documents as inadequate.

2　It is unnecessary to reach the remaining arguments raised by the defendant for dismissal including the statute of limitations and collateral estoppel.

**End of Document**　　　　© 2017 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2609341
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

United States District Court,
E.D. New York.

Alvin McLEAN, Plaintiff,

v.

Richard BROWN, the City of New York, the
Queens County District Attorney's Office, Kevin
Fogarty, Gregory Pavlides, John Castellano,
Mark Katz, Steven Chananie, Linda Cantoni, Al
Garcia, Cheryl Hone, Lisa Drury, Robin Forshaw,
Young C. Lee, William R. Horwitz, George Freed,
Josette Simmons–McGhee, Gary Fidel, Merri
Turk Lasky, John Does, Jane Does, Defendants.

No. 08–CV–5200 (JG).
|
June 25, 2010.

**Attorneys and Law Firms**

Alvin McLean, Wallkill, NY, pro se.

Michael Cardozo, Corporation Counsel for the City of
New York, by: Shlomit Aroubas, New York, NY, for
Defendants.

*MEMORANDUM AND ORDER*

JOHN GLEESON, District Judge.

**\*1** Alvin McLean brings this action under 42 U.S.C.
§ 1983, contending that the Queens County District
Attorney's Office ("the D.A.'s Office") has violated and
continues to violate his constitutional rights by failing to
give him certain documents relevant to his 1993 state-
court criminal trial. The defendants, who include the City
of New York, the D.A.'s Office, and various Assistant
District Attorneys who worked on McLean's case over
the years, have moved to dismiss the action for failure
to state a claim upon which relief may be granted. After
the motion to dismiss was filed, McLean sought leave
to amend the complaint to include additional allegations

against the defendants. For the reasons stated below, I
grant the defendants' motion to dismiss the complaint in
its entirety, and deny McLean's cross-motion to amend the
complaint.

BACKGROUND

This action is the latest move in McLean's campaign
to challenge convictions arising from a Queens jury's
determination that he participated in a 1987 murder.
McLean's efforts have produced two prior opinions of this
Court; those opinions contain more detailed histories of
the underlying proceedings. *See McLean v. McGinnis,* No.
97–CV–3593, 2008 WL 312765 (E.D.N.Y. Feb. 4.2008);
*McLean v. McGinnis,* 29 F.Supp.2d 83 (E.D.N.Y.1998).
Here, I set forth the facts relevant to McLean's latest
action.

A. *The Shootings of Andrew Garret and James Garcia*
In August 1987, fifteen-year-old James Garcia was staying
with his friend Andrew Garret in the basement of a
house in Queens, New York. Garret and Garcia formerly
worked for a marijuana distribution gang named "Slice,"
but had switched their allegiances to a rival organization
called "Pillow." On the night of August 3, 1987, two other
men entered the basement. One of these men was Garfield
Wright, a member of Slice. The two men shot Garret and
Garcia, and took money from Garret's pocket. Garret
died, and Garcia was seriously injured.

B. *McLean's Trial, Conviction, and Direct Appeal*
The authorities soon suspected that McLean was the
second shooter. McLean was arrested and charged with
the shootings, but he escaped from custody while awaiting
trial. More than four years later, he was apprehended by
the FBI after a high-speed car chase through the streets of
Miami.

At the trial, Garcia testified that McLean was the second
shooter. In addition, NYPD Detective Robert Cianfrone
testified that Garcia had identified McLean from a photo-
array while recovering from the shooting in the hospital.

The defense's theory of the case was that the second
shooter was not McLean but Peter Young, a leader of Slice
who was also known as "Mack." By the time of McLean's
trial, Mack had died in prison. In support of the defense

theory, McLean's counsel offered the testimony of Mack's younger brother, Jeffrey Young, as well as the testimony of Wright and of Tyrone Lawrence (known as "Tee"), who stated that McLean was not a member of Slice and that Mack was responsible for the murder. As part of its challenge to the government's case, the defense contended that Garcia himself had initially identified Mack from a photo-array, before being persuaded by the police to implicate McLean. Tee testified that he was present at the disputed identification in his capacity as a government informant. The defense attorney sought to elicit testimony from Tee that Garcia initially selected a picture of Mack, rather than one of McLean. The trial court, however, ruled that Tee's testimony concerning the photo-array was inadmissible hearsay.

**\*2** On November 19, 1993, the jury convicted McLean of second-degree murder, attempted murder, first-degree robbery, assault, and criminal possession of a weapon. McLean was sentenced principally to a prison term of twenty-five years to life for murder and to a consecutive term of eight-and-one-third years to twenty-five years for attempted murder.

McLean appealed to the Appellate Division, Second Department, which affirmed the convictions. *People v. McLean,* 640 N.Y.S.2d 265 (2d Dep't 1996). On June 20, 1996, a Judge of the New York Court of Appeals denied McLean's application for leave to appeal. *People v. McLean,* 88 N.Y.2d 938 (1996) (Levine, J.). [1]

### C. *McLean's Habeas Petition*
On June 19, 1997, McLean filed a petition in this Court under 28 U.S.C. § 2254, challenging his convictions by claiming that various evidentiary rulings deprived him of his constitutional right to present a defense. On October 21, 1998, I denied the petition. *McLean v. McGinnis,* 29 F.Supp.2d 83, 90–100 (E.D.N.Y.1998). Though I agreed that the trial court had erred in one respect—namely, by refusing to admit Tee's hearsay testimony for the purpose of impeaching Garcia's claim that he identified McLean in the hospital—I concluded that this evidentiary mistake did not rise to the level of a constitutional violation. Limiting Tee's testimony did not deprive McLean of a fundamentally fair trial, because the defense had ample opportunity to impeach Garcia's testimony in numerous other ways. In any event, the error was harmless because

"the evidence of [McLean's] guilt was overwhelming ." *Id.* at 99.

I granted McLean a certificate of appealability on the issue of whether limiting Tee's testimony deprived him of a fair trial. The Second Circuit concluded that it did not, and affirmed my denial of the habeas petition. *McLean v. McGinnis,* No. 98–3753, 1999 WL 642925 (2d Cir. Aug. 20, 1999) (summary order). The appellate court agreed that any error was harmless, given that Tee's testimony would have been largely cumulative of other evidence upon which the defense was able to rely at trial. *Id.* at \*1– 2. McLean's petition for a writ of certiorari to the United States Supreme Court was denied on December 6, 1999. *McLean v. McGinnis,* 528 U.S. 1050 (1999).

### D. *McLean's Efforts to Gain Disclosure of Documents under the Freedom of Information Law*
One week after his conviction, McLean filed a Freedom of Information Law ("FOIL") request with the Records Access Officer of the D.A.'s Office for access to documents from his criminal file. Over a period of more than three years, McLean repeated his request on several occasions; the D.A.'s Office stated that it was attempting to locate the file. In February 1997, the D.A.'s Office notified McLean that his FOIL request was denied because the trial folder for the case was lost. After an unsuccessful appeal to the FOIL Appeals Officer, McLean filed an Article 78 proceeding in an attempt to compel the D.A.'s Office to locate the trial folder; that proceeding was terminated, apparently for want of prosecution.

**\*3** On March 7, 2000, McLean made another FOIL request. In December of that year, the D.A.'s Office sent a list of discloseable documents, but stated that the Office did not possess any documents relating to payment or compensation of witnesses. On January 5, 2006, however, the D.A.'s Office released two further documents to McLean, both of which were letters written by Assistant District Attorney Steve Zissou to City officials ("the Zissou letters"). The Zissou letters were written while McLean was a fugitive from justice; the first, dated April 11, 1988, noted that McLean was an "ever present threat to [Garcia's] safety and well being." This letter was written to the Welfare Department, and confirmed that the Department was helping Garcia's mother—who received public assistance—by housing her in temporary accommodation to protect her from McLean. The other letter, dated October 11, 1988, urged the Housing

Department to give the Garcia family's application for housing "as much priority as possible." According to McLean, the Zissou letters were not disclosed before or at trial.

### E. *McLean's Section 440.10 Motion*

On May 2, 2006, McLean moved in the Supreme Court, Queens County, to vacate his judgment of conviction under New York Criminal Procedure Law § 440.10. He contended, among other things, that the D.A.'s Office had failed to disclose assistance it had given to Garcia, thereby violating its obligations under *Brady v. Maryland,* 373 U.S. 83 (1963), and *People v. Rosario,* 9 N.Y.2d 286 (1961). McLean claimed that the prosecutors' failure to disclose the Zissou letters required vacatur of the judgment of conviction. McLean also requested disclosure of unredacted versions of documents originating in the D.A.'s Office and disclosed to McLean in redacted form by the F.B.I. According to McLean, these documents substantiated his claims that Garcia and his mother were given undisclosed assistance in exchange for helpful testimony, and that Mack was a government informant.

The Supreme Court, Queens County denied McLean's § 440.10 motion on July 14, 2006. *People v. McLean,* No. 5389/87 (N.Y.Sup.Ct. July 14, 2006), *leave to appeal denied,* No.2006–08497 (2d Dep't Oct. 24, 2006). With respect to the Zissou letters, Justice Grosso determined that those documents "do not contradict any representations made at trial with respect to possible inducements for Garcia's testimony." *Id.* at 9. In addition, the court concluded that, even if the prosecution was under a legal obligation to disclose the Zissou letters, "there is no reasonable possibility that the failure to disclose them contributed to defendant's conviction." *Id.* at 10. Indeed, the court found that the letters—which suggest that Garcia and his mother had reason to fear violence from McLean while he was on the run—would have been more prejudicial to McLean than helpful if disclosed to the jury. *Id.*

### F. *McLean's Attempt to Resuscitate His Habeas Petition in this Court*

**\*4** In 2006, McLean returned to this Court, seeking relief under Federal Rule of Civil Procedure 60(b) from my 1998 decision denying the habeas petition. He also filed a renewed petition asserting new challenges to the conviction. Among other new arguments, McLean

contended that he was denied due process at trial when the prosecution failed to disclose the assistance to Garcia and his mother, as evidenced in the Zissou letters.

Because McLean's submissions sought to attack the integrity of the judgment underlying his conviction, rather than the integrity of my earlier decision to deny the initial habeas petition, I denied the Rule 60(b) motion, and transferred McLean's submissions to the Second Circuit so that they could be considered as a successive habeas petition. *See* 28 U.S.C. § 2244(b)(3)(a). The Second Circuit affirmed the denial of motion to reopen the initial petition, and denied leave for McLean to file another habeas petition, concluding that McLean "ha[d] not presented any new law or evidence within the meaning of § 2244(b) in support of his claims ." *McLean v. McGinnis,* Nos. 08–cr–0606, 08–cr–0608, 06–cr–0863 (2d Cir. Apr. 24, 2008).

### G. *This Action*

On December 9, 2008, McLean filed this action under 42 U.S.C. § 1983 against the City of New York, the D.A.'s Office, and several Assistant District Attorneys who worked on McLean's case through its various stages. McLean asserts that the defendants engaged in bad faith non-disclosure of relevant material, and that the defendants' failure to disclose evidence led to his conviction. He also alleges that, after he was convicted, defendants' continued failure to disclose material evidence caused him to lose his appeal from, and his post-conviction challenges to, the judgment of conviction. [2]

McLean seeks declaratory relief stating that the defendants have violated his constitutional rights by refusing to disclose exculpatory evidence. Additionally, he seeks a "substitute but equivalent remedy for the consequences Plaintiff suffered as a result of defendant's action which denied him meaningful access to the courts during both his direct appeal and his one opportunity for federal habeas review under AEDPA," and damages to compensate him for the attorney's fees he paid to bring his initial habeas petition. *Id.* Moreover, McLean asks the Court to issue an injunction ordering the defendants to disclose all documents within their possession related to McLean's criminal case, or, alternatively, to disclose all documents to which McLean was entitled to prior to or at trial. *Id.*

Defendants now move to dismiss the complaint for failure to state a claim upon which relief may be granted. McLean opposes the motion to dismiss, and also seeks leave to amend his complaint by adding allegations that the defendants conspired to single him out for arbitrary and unfair treatment.

## DISCUSSION

### A. *The Standard for Rule 12(b)(6) Motions*

Motions to dismiss under Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz,* 230 F.3d 14, 20 (2d Cir.2000) ("At the Rule 12(b) (6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus,* 551 U.S. 89, 93–94 (2007) (per curiam), and "draw all reasonable inferences in favor of the plaintiff." *Bolt Elec., Inc. v. City of New York,* 53 F.3d 465, 469 (2d Cir.1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).

**\*5** In reviewing the complaint, I am mindful that "a *pro se* complaint ... must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson,* 551 U.S at 94 (internal quotation marks omitted). If a liberal reading of the complaint gives any indication that a valid claim might be stated, this Court must grant leave to amend it. *See Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000).

### B. *The Scope of § 1983 in the Post–Conviction Context*

As an initial matter, much of the relief that McLean requests is not properly cognizable in a claim under § 1983. Habeas corpus provides the exclusive federal remedy for a state prisoner who wishes to challenge the fact of his conviction. Accordingly, to the extent that McLean's complaint is construed to seek release from custody, the action must be dismissed for failure to state a claim. *See Preiser v. Rodriguez,* 411 U.S. 475, 488–90 (1973) (a § 1983 action will not lie when a state prisoner challenges the fact of his confinement, and seeks immediate release from prison). The same is true of McLean's request for a

declaratory judgment stating that the defendants violated his constitutional rights at trial by depriving him of access to exculpatory evidence. *See Edwards v. Balisok,* 520 U.S. 641, 648 (1997) (a state prisoner proceeding under § 1983 may not seek declaratory relief that entails the conclusion that his imprisonment is unconstitutional).

By contrast, McLean's claim to an injunction requiring the D.A.'s Office to turn over all documents in its possession pertaining to his case does not appear to run afoul of the habeas-corpus-inspired limitation on § 1983 actions, at least as that limitation has been interpreted by the Second Circuit. [3] *See McKithen v. Brown,* 481 F.3d 89, 103 (2d Cir.2007), *abrogated on other grounds by Dist. Attorney's Office for Third Jud. Dist. v. Osborne,* 129 S.Ct. 2308 (2009). In essence, the requested injunctive relief is a discovery order to the D.A.'s Office requiring it to disclose material that may call into question the credibility of one the trial witnesses. Though such an order might conceivably assist McLean's efforts to gain release, it would not "necessarily demonstrate" the invalidity of his conviction. *Id.* at 102. "[T]hat a prisoner's success might be merely helpful or *potentially* demonstrative of illegal confinement is ... irrelevant" to the scope of the *Preiser– Heck* limitation on § 1983 claims. *Id.* Therefore, this claim is properly brought under § 1983, and I will proceed to consider the merits of McLean's contention that he is constitutionally entitled to a prospective order requiring post-conviction disclosure of evidence.

McLean's backward-looking claim for relief with respect to the D.A.'s Office's post-conviction failure to turn over the Zissou letters presents a more difficult question concerning the relationship between § 1983 and habeas corpus. McLean seeks a declaratory judgment stating that the D.A.'s Office failed to meet a post-conviction constitutional obligation to turn over relevant documents. McLean also requests money damages to reimburse him for the cost of his unsuccessful initial habeas petition. A § 1983 plaintiff may not "recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," unless the judgment of conviction has been reversed or vacated in some other forum. *Heck v. Humphrey,* 512 U.S. 477, 486–87 (1994). An award of damages against the D.A.'s Office for failing to disclose material evidence *prior to trial* would necessarily call into question the validity of the underlying conviction, and would hence be barred in the absence

of a determination that the conviction was invalid. But McLean's claims with respect to the Zissou letters are based, at least in part, on the theory that the D .A.'s Office should have disclosed the letters *after the trial.* As explained below, I find that these claims fail on the merits, so I assume, without deciding, that they may be brought under § 1983.

C. *The Merits of McLean's Constitutional Claims* [4]

**\*6** Section 1983 gives a cause of action to those who challenge a State's "deprivation of any rights ... secured by the Constitution." 42 U.S.C. § 1983. McLean's constitutional claims are premised on the Fourteenth Amendment's guarantees of liberty and equality: the Due Process Clause and the Equal Protection Clause.

### 1. *The Due Process Clause*

The Due Process Clause of the Fourteenth Amendment prohibits a state from depriving a person of a protected liberty interest without providing adequate procedural protections. As the United States Supreme Court has recently explained, a state prisoner has a liberty interest in demonstrating his innocence with new evidence under state law. *Dist. Attorney's Office for Third Jud. Dist. v. Osborne,* 129 S.Ct. 2308, 2319 (2009). The question in this case is therefore whether the state has afforded McLean sufficient process in his efforts to demonstrate his innocence.

When a court performs the constitutional calculus, the degree of procedural protection to which a plaintiff is entitled depends in large part on the strength of the plaintiff's liberty interest. In this respect, McLean's state-court conviction puts him at a disadvantage. Courts recognize that a prisoner's post-conviction liberty interest is considerably less powerful than a defendant's pre-conviction liberty interest. A valid conviction ends the defendant's entitlement to crucial protections like the presumption of innocence and the requirement of proof beyond a reasonable doubt. *See, e.g., Herrera v. Collins,* 506 U.S. 390, 399 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he was charged, the presumption of innocence disappears."). Though McLean continues to assert that the conviction was procured by unconstitutional means, that assertion can be considered only in a habeas petition, not in a § 1983 claim. [5] McLean thus stands in the same

position as a prisoner who concedes that his conviction was the result of a constitutionally valid trial, but seeks evidence to establish his innocence as a means to state-court post-conviction relief, clemency proceedings, or relief from conviction via prosecutorial consent.

Facing a conviction determined to be constitutionally valid by state and federal courts, McLean has no general right to material exculpatory evidence. Prior to trial, a defendant has a general right to material exculpatory evidence in the government's possession, *see Brady v. Maryland,* 373 U.S. 83 (1963), but after a conviction "*Brady* is the wrong framework." *Osborne,* 129 S.Ct. at 2320; *see also Nwobi v. Kelly,* No. 06–CV–4848 (JG), 2006 WL 2882572 (E.D.N.Y. Oct. 5, 2006) (the Due Process Clause confers no post-trial right to inspect ballistics evidence). In *Osborne,* the Supreme Court rejected a freestanding substantive due process right to DNA evidence. Similarly, McLean lacks a general right to documents in the government's possession that could be germane to the question of his guilt or innocence.

**\*7** A prisoner's post-conviction due process right to evidence is limited; it extends only to the proper application of a state-created right to such evidence. McLean can prevail on a due process claim only if the state's procedures are "fundamentally inadequate to vindicate the substantive rights provided." *Dist. Attorney's Office for Third Jud. Dist. v. Osborne,* 129 S.Ct. 2308, 2320 (2009). The issue is "whether consideration of [McLean's] claim within the framework of the State's procedures for postconviction relief 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.' " *Id.* (quoting *Medina v. California,* 505 U.S. 437, 446, 448 (1992) (internal quotation marks omitted)).

New York's Freedom of Information Law ("FOIL") provides the only state-created right to documentary evidence for a New York prisoner. [6] *See* N.Y. Pub. Off. Law §§ 84, *et. seq.* Under FOIL, all government records are presumptively open to the public, and the New York Court of Appeals has held that criminal defendants seeking information about their own cases qualify as members of the public for this purpose. *Gould v. New York City Police Dep't,* 89 N.Y.2d 267, 274 (1996). A prisoner may make a FOIL request for records to the relevant agency—here, the D.A.'s Office. If the

FOIL request is denied, the prisoner may resort to the agency's appeals body, if any—in this instance, the D.A.'s Office's FOIL Appeals Officer. After exhausting his administrative remedies, the prisoner may challenge the denial in a state-court action for judicial review under Article 78 of the CPLR. *See Schuloff v. Fields,* 950 F.Supp. 66, 67–68 (E.D.N.Y.1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information law is a state court proceeding pursuant to N .Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies.").

The allegations in McLean's complaint fall short of establishing that New York's post-conviction procedures for accessing documentary evidence are fundamentally unfair. On their face, FOIL's procedures provide an adequate means of protecting the prisoner's interests, including access to judicial review in state Supreme Court in the event of an adverse administrative determination. And McLean does not identify any violation of fundamental fairness in the way that FOIL's procedures operated in his case. The allegations in the complaint, if true, establish that McLean was subjected to unfortunate delays in the production of relevant documents. McLean reacted to those delays by invoking FOIL's procedures. Probably as a result of those procedures, McLean's trial folder has long since been unearthed, and the D.A.'s Office has disclosed the Zissou letters. To the extent that McLean asks this Court to order the D.A .'s Office to produce all documents in the possession of the Office pertaining to his case, he asks too much. Section 1983 provides a remedy for specified unconstitutional conduct; it should not be used as a general discovery tool in aid of state law proceedings.

 **\*8** McLean was afforded access to state law procedures that cannot be characterized as "fundamentally unfair," and the Fourteenth Amendment's Due Process Clause entitles him to nothing more. Accordingly, McLean fails as a matter of law to state a due process claim.

### 2. *The Equal Protection Clause*
As for his claim under the Fourteenth Amendment's Equal Protection Clause, McLean does not contend that the defendants have discriminated against him on the basis of membership of any protected class. [7] Rather, he seeks to assert a "class-of-one" claim, alleging that the defendants have singled him out for mistreatment by depriving him of access to exculpatory evidence.

To satisfy the stringent standard for a class-of-one claim, McLean must establish that he was treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech,* 528 U .S. 562 (2000). To succeed on this kind of claim, a plaintiff must establish that "(i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." *Neilson v. D'Angelis,* 409 F.3d 100, 105 (2d Cir.2005), *abrogated on other grounds by Engquist v. Oregon Dep't of Agriculture,* 128 S.Ct. 2146, 2155–57 (2008). In this case, McLean does not even seek to identify any materially-identically-situated comparator who has been treated differently from him, and cannot plausibly allege that the circumstances of his treatment exclude the possibility of a mistake. Accordingly, the equal protection claim fails as a matter of law.

After receiving the defendants' motion to dismiss, McLean moved to amend the complaint in an attempt to bolster his equal protection claim, and submitted a proposed amended complaint. While leave to amend is granted liberally, leave may be refused where amending the complaint would be futile. *See Min Jin v. Metro Life Ins. Co.,* 310 F.3d 84, 101 (2d Cir.2002). A proposed amendment is futile when it fails to state a claim. *Health–Chem Corp. v. Baker,* 915 F.2d 805, 810 (2d Cir.1990). Here, amending the complaint would serve no purpose; even with the additional allegation that McLean was singled out for adverse treatment by the defendants, McLean still fails to state a plausible "class of one" equal protection claim for the reasons stated above.

### D. *Unserved Defendants*
In addition to the defendants who have moved to dismiss the action, McLean has named as defendants several former Assistant District Attorneys who no longer work at the D.A.'s Office. It appears from the docket sheet that these additional defendants have not been served with the complaint. Because McLean is proceeding *in forma pauperis,* however, I am required to dismiss the action, *mea sponte,* if at any time I determine that the action fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(b)(ii). Because McLean's claims

against the unserved defendants necessarily fail for the same reasons that the complaint fails to state a claim against the served defendants, I exercise my authority to dismiss the complaint as it pertains to the unserved defendants.

**\*9** For the reasons stated above, the motion to dismiss the complaint is granted, and McLean's motion to amend the complaint is denied.

So ordered.

## CONCLUSION

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 2609341

Footnotes

1    In addition, McLean twice sought a writ of error *coram nobis* in the Appellate Division, claiming that he was denied the right to effective assistance of appellate counsel. Each of these applications was unsuccessful. *See People v. McLean,* 800 N.Y.S.2d 647 (2d Dep't 2005), *leave to appeal denied,* 6 N.Y.3d 778 (2006) (Levine, J.); *People v. McLean,* 782 N.Y.S.2d 653 (2d Dep't 2004), *leave to appeal denied,* 4 N.Y.3d 746 (2004) (Graffeo, J.).

2    On August 31, 2009, McLean wrote to the Court complaining that staff members at Shawangunk Correctional Facility were hindering his efforts to litigate his case, and alleging that the defendants had instigated a campaign of harassment against him. I directed the defendants to show cause why McLean's letter should not be construed as amending the complaint to allege a retaliation claim. In his opposition to defendants' motion to dismiss, however, McLean now states that he does not wish to allege a retaliation claim in this case.

3    During the October 2009 Term, the Supreme Court issued a writ of certiorari to consider whether a post-conviction claim to access evidence is cognizable under § 1983, but the Court ultimately resolved the case before it without deciding that issue. *Dist. Attorney's Office for Third Jud. Dist. v. Osborne,* 129 S.Ct. 2308, 2319 (2009).

4    In addition to the arguments discussed in the text, the defendants assert that McLean's claims are barred, in part, by the applicable statute of limitations and by the operation of the doctrine of collateral estoppel. Furthermore, the Assistant District Attorney defendants argue that absolute immunity bars any claim against them, and the City of New York contends that McLean has not sufficiently alleged that any constitutional violation was the result of a City custom or policy. Because I conclude that, to the extent they are cognizable in a § 1983 action, McLean's claims lack merit, I need not consider the defendants' additional objections to the complaint.

5    A habeas petitioner seeking to establish that his conviction was procured by unconstitutional conduct may seek discovery in connection with that claim. *See* Rules Governing § 2254 Cases in the United States District Courts 6(a) ("A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure").

6    A prisoner seeking post-conviction relief in the New York state courts pursuant to New York Criminal Procedure Law § 440.10 generally has no right to discovery in connection with that proceeding. Section 440.30(1–a) provides an exception to that rule for movants requesting a DNA test who establish a reasonable probability that such a test would have produced a more favorable verdict at trial. *See also Newton v. City of New York,* No. 07 Civ. 6211(SAS), 2010 WL 323050 (S.D.N.Y. Jan. 27 2010) (allowing a § 1983 claim to proceed to trial based on evidence of fundamental unfairness in the administration of New York's DNA testing procedures).

7    To the extent that McLean claims membership in the class of "accused" or "convicted" persons, his membership in those classes does not give rise to an equal protection claim. *See, e.g ., Lee v. Governor of N.Y.,* 87 F.3d 55, 60 (2d Cir.1996).

2010 WL 4140430
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Donald PAPAY, Plaintiff,

v.

Virginia HASELHUHN as Assistant Executive
Director, American Registry of Radiologic
Technologists, Richard F. Daines as Commissioner,
State of New York Department of Health,
Adela Salame–Alfie as Director, State of
New York Department of Health—Bureau
of Environmental Radiation Protection
(in His Official Capacity), Defendants.

No. 07 Civ. 3858(LAP).
|
Oct. 21, 2010.

West KeySummary

**1**    **Records**

   👉 Agencies or Custodians Affected

Radiography test taker failed to state a claim
on which relief could be granted under New
York's Freedom of Information Law (FOIL),
alleging that he was unlawfully denied access
to copies of his tests, their results, and the
answer keys used to grade the tests. Because
the entity that administered the test was not
an agency under FOIL, it had no obligation to
disclose its records to test taker. Furthermore,
even if it was an agency, it would not have
been bound to disclose, because there was no
evidence that the test questions and answers
had been administered for the last time, and
therefore the tests would have satisfied FOIL's
record-access exemption. McKinney's Public
Officers Law §§ 87(2), 86(3), 87(2)(h).

Cases that cite this headnote

OPINION AND ORDER

LORETTA A. PRESKA, Chief Judge.

  **\*1**   Donald Plaintiff commenced this action against
the American Registry of Radiologic
Technologists (ARRT) and Virginia Haselhuhn (collectively, the
"ARRT Defendants") and against Richard F. Daines as
Commissioner of the State of New York Department
of Health and Adela Salame–Alfie as Director of the
State of New York Department of Health, Bureau of
Environmental Radiation Protection (collectively, the
"State Defendants"). In his Amended Complaint, Plaintiff
seeks redress for violations of federal and state antitrust
laws, due process and equal protection violations under
the U.S. Constitution, and violations of New York's
Freedom of Information Law ("FOIL"). The ARRT
Defendants and the State Defendants have each filed,
pursuant to Rule 12(b)(6) of the Federal Rules of Civil
Procedure, a motion to dismiss the Amended Complaint.

For the reasons set forth in this opinion, both motions
[dkt. nos. 12 & 14] are granted.

### I. BACKGROUND

This case is at the motion to dismiss stage, and
therefore the Court assumes all material and well-pleaded
factual allegations contained in the Amended Complaint.
*Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949–50,
173 L.Ed.2d 868 (2009).

Plaintiff Donald Papay is a resident of New City,
New York. (Am.Compl.¶ 3.) The State of New York
Department of Health licenses radiologists to practice in
New York and has assigned the American Registry of
Radiologic Technologists ("ARRT") to administer tests
to license Radiologic Technologists in New York State.
(Am.Compl.¶ 9.) As assigned, the ARRT administers the
Examination in Radiography. (Am.Compl.¶ 10.)

Plaintiff attended a two-year Radiological program
at Harlem Hospital from October 1995 to October
1997 to prepare for the Examination in Radiography.
(Am.Compl.¶ 12.) Between October 1997 and April 2004,
Plaintiff took the exam seven times. (Am.Compl.¶¶ 13–
16, 31.) Plaintiff needed special permission to take the
examination because of a prior conviction, which was

reported to the ARRT Ethics Committee. (Am.Compl.¶ 18.) The Ethics Investigations Coordinator of the ARRT Ethics Committee then informed Plaintiff "that all conditions regarding [his] alleged violations have been met." (Am.Compl.¶ 20.) Plaintiff was informed that he failed each of the seven exams by only one or two points. (Am.Compl.¶ 23.)

Plaintiff believes that his test scores were skewed due to the fact that he had a prior criminal history. (Am.Compl.¶ 24.) There are twenty questions on the exam that Plaintiff claims should have been taken into consideration when grading his exam and were not. (Am.Compl.¶ 25.) He requested copies of the exams, test results, and answer keys used to grade these examinations from the ARRT to determine the cause of his seven failures, but the ARRT denied these requests, informing Plaintiff and his attorneys that the ARRT does not release previous forms of examinations or allow individuals to review previous forms of examinations. One of these letters stated in part, "The ARRT does not release previous forms of an examination because doing so would compromise the security of the test questions ... the ARRT reuses test questions." (Am.Compl.¶¶ 26–30.)

*2 The ARRT website states that "new items are continuously added to the pool" of multiple choice questions to ensure that exams are up-to-date and that the quality of items is continuously improving, (Am.Compl.¶ 32.) The website also states: "For primary exami nations (Radiography, Nuclear Medicine Technology, Radiation Therapy), the content specifications are currently revised every five years." (Am.Compl.¶ 33.)

## II. ARRT DEFENDANTS' MOTION TO DISMISS

### A. Standard of Review
In order to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face," *Iqbal,* 129 S.Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. "The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In evaluating a motion to dismiss, a court must "view all allegations

raised in the complaint in the light most favorable to the non-moving party ... and 'must accept as true all factual allegations in the complaint.' " *Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,* 102 F.3d 660, 662 (2d Cir.1996) (quoting *Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 164, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993)) (citation omitted).

The Court is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). Because the complaint must allege facts which confer a cognizable right of action, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *York v. Ass'n of the Bar of City of New York,* 286 F.3d 122, 125 (2d Cir.2002) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal,* 129 S.Ct. at 1950. Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action" do not suffice to state a claim, as "Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 1949–50.

### B. Antitrust Claims
Plaintiff alleges violations of 15 U.S.C. § 1 ["The Sherman Act"] and New York's General Business Law, § 340(1) ["The Donnelly Act"]. The Sherman Act provides, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Under the Donnelly Act, "[e]very contract, agreement, arrangement or combination whereby a monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby competition or the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state is or may be restrained ... is hereby declared to be against public policy, illegal and void." N.Y. Gen. Bus. Law § 340(1). The Donnelly Act is "modeled on the Sherman Act and should be construed in light of federal precedent." *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.,* 17 F.Supp.2d 275, 298, (S.D.N.Y.1998); *see also Anheuser–Busch, Inc.*

*v. Abrams,* 71 N.Y.2d 327, 335, 525 N.Y.S.2d 816, 520 N.E.2d 535 (N.Y.1988).

**\*3** Plaintiff alleges that the antitrust violation consists of New York State's designation of the ARRT as its sole agent in administering the exam that is used to determine whether a license to practice radiology should be granted to an individual. (Pl.'s Mem. in Opp'n at 19–20.) Both motions to dismiss argue that Plaintiff does not have standing to bring either a Sherman or Donnelly Act claim because he has not alleged an antitrust injury. *See Volvo N. Am. Corp. v. Men's Int'l Prof'l Tennis Council,* 857 F.2d 55, 66 (2d Cir.1988).

To have standing under the federal antitrust laws, a plaintiff "must show more than simply an injury causally linked to an antitrust violation; instead, plaintiffs must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *See Volvo N. Am. Corp.,* 857 F.2d at 66 (quoting *Cargill, Inc. v. Monfort of Colo., Inc.,* 479 U.S. 104, 109, 107 S.Ct. 484, 93 L.Ed.2d 427 (1986)) (internal quotation marks omitted); *see also Balaklaw v. Lovell,* 14 F.3d 793, 796 (2d. Cir.1994) ("It is now well settled in order to have standing to prosecute private antitrust claims, plaintiffs must show more than that the defendants' conduct caused them injury."). "The antitrust injury requirement obligates a plaintiff to demonstrate, as a threshold matter, that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice." *Bologna v. Allstate Ins. Co.,* 138 F.Supp.2d 310, 319 (E.D.N.Y.2001) (quoting *George Haug Co., Inc. v. Rolls Royce Motor Cars, Inc.,* 148 F.3d 136, 139 (2d Cir.1998)) (internal quotation marks omitted). "Indeed, the antitrust laws ... were enacted for the protection of competition, not competitors." *Id.* (quoting *Brunswick Corp. v. Pueblo Bowl–O–Mat,* 429 U.S. 477, 488, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)) (internal quotation marks omitted).

Here, Plaintiff alleges that he "was unable to utilize his education, expertise and qualifications he toiled to achieve, with any employer, any legal position whatsoever in New York State since the industry is 'Monopolized' by Defendants State of New York Department of Health, Bureau of Environmental Radiation Protection and ARRT and their unlawful policies and procedures."

(Am.Compl.¶ 53.) He claims that as a result, he has suffered "emotional distress, pain and suffering, delay in certification and advancement in career, loss of potential higher wages, embarrassment, inconvenience, lost economic opportunity, an enormous amount of financial and emotional distress, and loss of quality of life." (*Id.* ¶ 61.)

Professionals who are excluded from obtaining a certain credential and allege a consequential economic injury are considered "competitors" in that professional market, rather than consumers. *See Daniel v. Am. Bd. of Emergency Med.,* 269 F.Supp.2d 159, 176 (W.D.N.Y.2003) (holding emergency room physicians who were denied the opportunity to take the examination for certification in emergency room medicine, which prevented them from obtaining higher salaries, failed to show "an injury the antitrust laws were intended to prevent"); *Sanjuan v. American Bd. of Psychiatry & Neurology, Inc.,* 40 F.3d 247, 251 (7th Cir.1994) (holding plaintiff-psychiatrists' inability to charge higher fees because they failed an oral examination for board certification did not constitute an antitrust injury). "The claim that a practice reduces (particular) producers' incomes has nothing to do with the antitrust laws, which were designed to drive producers' prices down rather than up .... Indeed, it does not even state an antitrust injury." *Id.* at 251.

**\*4** Plaintiff's objectives in this litigation do not align with the purpose of the antitrust laws. *See id.* at 252 ("[T]he Sherman Act is not a precursor to the Civil Rights Act of 1964. It is aimed at protecting consumers from high prices. Plaintiffs, who want to obtain a credential that will help them charge higher prices, have pleaded themselves out of court on the antitrust claim."); *see also Todorov v. DCH Healthcare Auth.,* 921 F.2d 1438 (11th Cir.1991) (finding neurologist who sought radiology department privileges to administer and read CT head scans to share in the supercompetitive profits of the radiologists who retained those privileges did not have standing to seek damages or injunctive relief). Plaintiff does not specify which consumers were injured by Defendants' practices or allege any adverse effect on competition as a whole in any market and offers no case law to support his proposition that designating one agency to administer an exam used to grant a professional license on behalf of the state impedes competition in the relevant market.

Rather, Plaintiff's injury appears to be a purely personal one in that Plaintiff is now deprived of the opportunity to benefit economically from a license to practice radiology. His alleged damages are a direct result of his "inability to earn and benefit from a professional credential ... with which [he] expect[s] to obtain greater compensation at a level resulting from the anticompetitive conduct [he] seek[s] to condemn." *Daniel,* 269 F.Supp.2d at 175 (citations omitted). The requirement of antitrust injury and standing "has been extended to plaintiffs who, as competitors in the market, seek a professional credential that will enable them to charge higher prices for their services in that market, and a request for such relief in a federal antitrust complaint negates the existence of an antitrust injury and standing requiring dismissal of the complaint." *Id.* at 174. [1]

Thus, Plaintiff has alleged no cognizable injury under the antitrust laws.

### C. FOIL Claim
Under FOIL, "[e]ach agency shall, in accordance with its published rules, make available for public inspection and copying all records, except that such agency may deny access to records or portions thereof [that fall within one of the statutory exemptions]." N.Y. Pub. Off. Law § 87(2). The Act defines "agency" as "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature." N.Y. Pub. Off. Law § 86(3).

The definition of "agency" should be given its "natural and obvious" meaning, *see Capital Newspapers, Div. of Heart Corp. v. Whalen,* 69 N.Y.2d 246, 513 N.Y.S.2d 367, 505 N.E.2d 932, 936 (N.Y.1987), and "FOIL is to be liberally construed and its exemptions narrowly interpreted so that the public is granted maximum access to the records of government[.]" *Buffalo News, Inc. v. Buffalo Enter. Dev. Corp.,* 84 N.Y.2d 488, 619 N.Y.S.2d 695, 644 N.E.2d 277, 278–79 (N.Y.1994) (internal citations omitted) (holding a not-for-profit corporation that administered loan programs and encouraged community development, though not subject to substantial governmental control over its daily operations, was still a "government entity" performing a governmental function and thus an "agency" subject to FOIL).

**\*5** The only evidence offered by Plaintiff that the ARRT is an "agency" is that (1) the Department of Health for the State of New York has designated the ARRT to administer the Examination in Radiography and (2) that the ARRT administers the test to license radiologic technologists in New York State. Am. Compl. ¶¶ 9–10. It is unlikely that these two allegations would satisfy the standard of "agency." Nonetheless, the Court need not decide the issue because, even if the ARRT were an agency subject to FOIL requests, an exemption to FOIL'S record-access provision would prevent Plaintiff from viewing his exams. *See* N.Y. Pub. Off. Law § 87(2).

The ARRT Defendants argue that they are entitled to deny Plaintiff's inspection request because the materials at issue "are examination questions or answers which are requested prior to the final administration of such questions." N.Y. Pub. Off. Law § 87(2)(h). In *Social Service Employees Union, Local 371 v. Cunningham,* the court addressed whether Civil Service examination questions and answers are "finally administered" following their initial use and thus available for inspection and copying by the public under FOIL. The court held that the determination as to when examination questions or answers have been finally administered lies within the discretion of the Department of Personnel of the City of New York. 109 Misc.2d 331, 437 N.Y.S.2d 1005, 1009 (N.Y.Sup.Ct.1981). "[T]he intent of [Section 87(2)(h) ] is clear in that it seeks to protect against the disclosure of examination questions or answers sought before the questions are finally administered." *Id.* at 1009–1010.

Plaintiff alleges that the ARRT website states that "new items are continuously added to the pool" of multiple choice questions "to ensure that exams are up-to-date and that the quality of items is continuously improving." (Am.Compl.¶ 32.) The website continues: "For primary examinations (Radiography, Nuclear Medicine Technology, Radiation Therapy), the content specifications are currently revised every five years." (Am.Compl.¶ 33.) Plaintiff believes the ARRT contradicted its website in a letter stating, "The ARRT does not release previous forms of an examination because doing so would compromise the security of the test questions ... the ARRT reuses test questions." (Am.

Compl. ¶¶ 30 (omission in original).) Plaintiff argues that this Court must accept as true the allegation that the ARRT revises its exam questions every five years and that, as a result, his requested documents are out-of-date because they are more than five years old and § 87(2)(h) is inapplicable.

However, even if it were true that the ARRT revises its exam questions every five years, this does not reflect a policy not to reuse exam questions. The ARRT can revise its exam questions and add new ones to stay current while still recycling old questions, and the ARRT informed Plaintiff upon his request for his exams and test results that it does in fact reuse test questions. Because the agency administering the exam has made a determination that these questions have not been finally administered and that releasing past examinations would compromise the security and integrity of the test questions, this Court finds that the examinations at issue are subject to the statutory exemption and protected from release.

### D. Section 1983 Claim

**\*6** To state a claim under 42 U.S.C. § 1983, the plaintiff must establish that he was "deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." 42 U.S.C. § 1983. "Like the state-action requirement of the Fourteenth Amendment, the state-action element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.' " *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n,* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999)). Because this Court finds that there was no deprivation of a federal right in this case and dismisses the § 1983 claim on that ground, it need not reach the question of whether the ARRT is a state actor under the statute.

### 1. Equal Protection Claim

As Plaintiff is not a member of a protected class and does not allege discrimination on that ground, his equal protection claim is governed by the Supreme Court's holding in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam). In that case, the Court held that a successful equal protection claim may be "brought by a 'class of one,' where the plaintiff alleges that [he] has been intentionally treated differently from others similarly situated and that there is

no rational basis for the difference in treatment." *Ruston v. Town Bd. For Town of Skaneateles,* 610 F.3d 55, 59 (2d Cir.2010) (quoting *Olech,* 528 U.S. at 564). As "a class of one," a plaintiff must show either that "there was no rational basis for the unequal treatment received ... or that the [unequal treatment] was motivated by animus." *O'Bradovich v. Vill. of Tuckahoe,* 325 F.Supp.2d 413, 431 (S.D.N.Y.2004) (quoting *Harlen Assocs. v. Inc. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001).

Plaintiff alleges that his test scores were skewed due to the fact that he had a prior criminal history; that there are twenty additional exam questions that should have been taken into account in grading and were not; that he took and failed the exam seven times over the course of seven years; and that his "reasonable" requests to view copies of his examinations were all denied. (Am Compl. ¶¶ 24, 25, 31.) However, Plaintiff does not allege differential treatment. He does not allege that others "similarly situated" who took the Examination in Radiography were given access to their examinations or were afforded a different procedure of reviewing or rescoring their examinations. He does not allege that others without a criminal record received the same score as he did on the examination and were told they passed. He does not allege that the twenty additional questions, which he alleges should have been scored but were not taken into account, were used in grading other people's exams. While the Complaint was not required to identify others by name or allege actual instances where others have been treated differently, Plaintiff fails to make even the general allegation that similarly situated candidates were treated differently. *See Ruston,* 610 F.3d at 58. Thus, Plaintiff's allegations do not meet the pleading requirements established by *Olech* for "class of one" equal protection claims.

### 2. Due Process Claim

**\*7** In reviewing Plaintiff's § 1983 claim for violation of his Fourteenth Amendment due process rights, the Court applies a two-step inquiry: (1) whether Plaintiff possesses a liberty or property interest and, if so, (2) what process he is due before he can be deprived of that interest. *See Ciambriello v. Cnty. of Nassau,* 292 F.3d 307 (2d Cir.2002). Property interests are not created by the Constitution; rather, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law —rules or understandings that secure certain benefits and

that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A property interest can be much more than the actual ownership of real estate, chattels or money, *see Billups v. Millet,* No. 91 Civ. 6326(DAB), 1996 WL 99399, at *4 (S.D.N.Y. Mar.6, 1996), but a property interest must be more than an expectation, *id.* (citing *Roth,* 408 U.S. at 572). "A person must have more interest than an abstract need or desire for the benefit sought." *Id.* (quoting *Roth,* 408 U.S. at 577).

Plaintiff claims he has a due process right to review his test records that stems from the Family Education Rights and Privacy Act ("FERPA") and the New York State Freedom of Information Law ("FOIL"). (Am.Compl.¶ 38.)

### (i) FERPA

The records-access provision of FERPA reads: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy of denying, or which effectively prevents" the right to inspect and review education records. 20 U.S.C. § 1232g(a) (1). Plaintiff alleges that the ARRT should be considered an educational agency because it requires accredited education for eligibility to take the Examination in Radiography. (Am.Compl.¶ 38.) However, even assuming that the ARRT were an educational agency or institution covered by FERPA, the Court of Appeals has held that "FERPA's records-access provisions, § 1232(g)(a)(1), do not create a personal right enforceable under § 1983." *See Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 786 (2d Cir.2002). Accordingly, Plaintiff may not bring a § 1983 claim based on an alleged violation of FERPA.

### (ii) FOIL

The Court now turns to whether Plaintiff can establish a property interest in the requested FOIL documents. Plaintiff cannot have an entitlement to documents under FOIL because "[t]he statute does not require that documents be produced as of right, but only after request and investigation." *See Billups,* 1996 WL 99399, at *4 (FOIL documents are an expectation, even if awarded pursuant to court order."); *O'Bradovich,* 325 F.Supp.2d at 433 ("Plaintiffs could not, as a matter of law, have a property interest in the mere expectation of receiving FOIL documents."). Furthermore, the examinations Plaintiff requested were subject to one of FOIL'S specific

exemptions. N.Y. Pub. Off. Law § 87(2)(h). Accordingly, access to these documents constitutes a mere expectation of Plaintiff, not an entitlement that would establish a property interest under the Due Process Clause.

**\*8** Finally, even if all of Plaintiff's allegations are accepted as true, section 1983 is not a proper vehicle for bringing a FOIL claim. *See Pollnow v. Glennon,* 757 F.2d 496, 501 (2d Cir.1985) ("Clearly, a violation of state law is not cognizable under § 1983."). Rather, Plaintiff's remedy for an alleged violation of FOIL is to appeal in writing within thirty days to the head, chief executive, or governing body of the entity. N.Y. Pub. Off. Law § 89(4)(a). A person denied access to a record in an appeal determination may then seek review pursuant to the state procedures outlined in Article 78. *See* N.Y.C.P.L.R. § 7801 *et seq.;* N.Y. Pub. Off. Law § 89(4)(b).

Thus, Plaintiff's allegations do not give rise to a federal claim under § 1983.

### (iii) Right to Choose a Profession

Finally, Plaintiff claims that the defendants deprived him of the right to make a living in his chosen profession, causing loss of economic opportunity, financial and emotional distress, and loss of quality of life. (Am.Compl.¶ 38.) The Supreme Court has long recognized the right to earn a livelihood of one's choosing as a right protected by the Fourteenth Amendment. *See Lowe v. SEC,* 472 U.S. 181, 228, 105 S.Ct. 2557, 86 L.Ed.2d 130 (1985) ("The Court determined long ago that ... it is undoubtedly the right of every citizen of the United States to follow any lawful calling, business, or profession he may choose.") (internal quotation marks and citations omitted); *see also Damino v. O'Neill,* 702 F.Supp. 949, 952 (E.D.N.Y.1987) (citing *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) ("Plaintiff's license to practice medicine is a property right which is entitled to constitutional protection and which cannot be revoked without due process of law.")).

However, this right is not absolute. *See Conn v. Gabbert,* 526 U.S. 286, 291–92, 119 S.Ct. 1292, 143 L.Ed.2d 399 ("[T]his Court has indicated that the liberty component of the Fourteenth Amendment's Due Process Clause includes some generalized due process right to choose one's field of private employment, but a right which is nevertheless subject to reasonable government regulation."); *Dent v. W. Va.,* 129 U.S. 114, 122, 9 S.Ct. 231, 32 L.Ed. 623 (1889)

("[T]here is no arbitrary deprivation of such right where its exercise is not permitted because of a failure to comply with conditions imposed by the state for the protection of society."). In particular, courts have recognized that the right to pursue one's chosen profession is limited by the legitimate interest of the state in protecting society and ensuring public health and safety. *See Damino,* 702 F.Supp. at 953 ("The state's legitimate and important concern of public health and safety far outweigh any interest of plaintiff to continue his livelihood."). Where a profession that impacts the general welfare is at issue, the state is entitled to impose rational conditions and restrictions on admission into that profession. *See Lowe,* 472 U.S. at 228 ("Regulations on entry into a profession, as a general matter, are constitutional if they 'have a rational connection with the applicant's fitness or capacity to practice' the profession."); *Dent,* 129 U.S. at 122.

**\*9** In light of these principles, the state is entitled to regulate the practice of radiography and impose restrictions that are rationally related to applicants' fitness to practice the profession. The state has reasonably relied on the ARRT to develop and administer the examination that tests the skills and knowledge necessary to practice as a radiologic technologist in the State of New York. Plaintiff himself states that he "understand[s] the importance of the Public Health Laws governing certification and licensure and the purpose of their enactment, which is to ensure the health and safety of the public and the competence of practitioners." (Pl.'s Affirmation in Opp'n to ARRT's Mot. at ¶ 8.) Where the opportunity to practice a profession is denied because of failure to meet appropriate and reasonable conditions imposed by the state, there is no arbitrary deprivation of the right that would constitute a due process violation.

Plaintiff further alleges that his due process rights were violated when his test results were skewed and he was denied a fair review of the grading method used to score his exams. (Pl.'s Affirmation in Opp'n to ARRT's Mot. at ¶¶ 9–10.)[2] To determine whether a procedural due process violation has occurred, "it is necessary to ask what process the State provided, and whether it was constitutionally adequate. This inquiry would examine the procedural safeguards built into the statutory or administrative procedure of effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinermon v. Burch,* 4 94 U.S. 113, 126, 24 L.Ed. 77 (1990). Due Process is flexible, and "[a]ll that is

necessary is that the procedures be tailored, in light of the decision to be made, to 'the capacities and circumstances of those who are to be heard' " to ensure they have "a meaningful opportunity to present their case." *Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 333.

In this case, the ARRT policy permits candidates to request a rescore of their examination within fourteen days of the date the ARRT mails out the scores. (*See* Affidavit of Shari Jerde Ex. A (May 26, 2005 Ltr. from M. Raymond to L. Gantt)). Plaintiff alleges that he appealed with the ARRT the decision not to release his records, in accordance with FOIL'S appeal procedures. (Pl's Mem. in Opp'n at 18.) However, the FOIL statute then explicitly directs petitioners to Article 78. *See* N.Y.C.P.L.R. § 7801 *et seq.;* N.Y. Pub. Off. Law § 89(4)(b) (review of denial of access to government records under the Freedom of Information Law). Thus, Plaintiff's next step, after following the appeal procedures outlined in FOIL itself, would be to seek review pursuant to Article 78. Because there was a procedure available to Plaintiff to afford him "the opportunity to be heard at a meaningful time and in a meaningful manner," he was not deprived of his property or liberty without due process of law.

**\*10** As Plaintiff has failed to show a violation of FOIL or FERPA, a property right under either of these statutes, or a procedural due process violation, he has not alleged a deprivation of his constitutional or federal rights. As such, the Court grants the ARRT Defendants' motion to dismiss Plaintiff's claims under § 1983.

Accordingly, all of Plaintiff's claims against the ARRT Defendants are dismissed.

### III. STATE DEFENDANTS' MOTION TO DISMISS

#### A. Sovereign Immunity

The Eleventh Amendment of the Constitution bars federal actions against a state for monetary damages absent the state's waiver of its sovereign immunity or an abrogation of that immunity by Congress. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 66, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). New York State has not waived its

sovereign immunity. *See Trotman v. Palisades Interstate Park Comm'n,* 557 F.2d 35, 38–40 (2d Cir.1977). Nor has Congress abrogated the immunity of the states, including New York. *See Quern v. Jordan,* 440 U.S. 332, 345, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979).

Plaintiff has sued officers of the State of New York Department of Health in their official capacities; these are considered to be actions against the State, and therefore such actions for monetary damages are also prohibited by the Eleventh Amendment. *See Will,* 491 U.S. at 71. Furthermore, the Supreme Court has held that § 1367(a)'s grant of jurisdiction does not extend to claims against non-consenting state defendants. *See Raygor v. Regents of the Univ. of Minn.,* 534 U.S. 533, 541, 122 S.Ct. 999, 152 L.Ed.2d 27 (2002). Thus, this Court does not have jurisdiction under 28 U.S.C. § 1367 to hear Plaintiff's state law claims under New York General Business Law § 340 and New York State Freedom of Information Law.

The Eleventh Amendment, however, does not bar actions against state officers in their official capacities for injunctive relief, *see Will,* 491 U.S. at 71 n. 10, or against state officers in their individual capacities, *see Hafer v. Melo,* 502 U.S. 21, 25–27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Thus, Plaintiff's claims against State Defendants in their official capacity for monetary damages are dismissed pursuant to Rule 12(b)(1).[3] Plaintiff's claims against State Defendants in their official capacities for injunctive relief are addressed below.[4]

### B. Claims for Injunctive Relief

Plaintiff has failed adequately to allege an antitrust injury under 15 U.S.C. § 1, allege that State Defendants denied him equal protection of the laws in violation of the Fourteenth Amendment, or allege that State Defendants deprived him of the opportunity to make a living in his chosen profession by skewing his test results and denying him a hearing to prove his claim.[5] *See supra,* Part II. The Court now turns to Plaintiff's other theories to substantiate his due process claim: that he had a right to access his exam records pursuant to FOIL and FERPA and that by refusing this access, State Defendants deprived him of his property rights in violation of the Fourteenth Amendment. The Court considers each of these in turn.

**\*11** State defendants argue that FERPA is inapplicable because in granting students a right of access to their

educational records, the Act defines the term "student" as "any person with respect to whom an educational agency or institution maintains education records or personally identifiable information but does not include a person who has not been in attendance at such agency or institution." 20 U.S.C. § 1232g(a)(6). Plaintiff is suing the State Defendants in their capacity to license radiological technologists, not an educational agency or institution he attended. Thus, FERPA would not apply. Furthermore, as discussed above, FERPA does not create a private right of action that can be enforced through Section 1983. *See Taylor,* 313 F.3d at 786. Thus, Plaintiff does not have a federal right under FERPA.

In support of his FOIL claim, Plaintiff alleges that the State Defendants had the ability to retrieve the testing records for review to determine whether or not they were properly graded. (Am.Comp.¶ 49.) In response, State Defendants contend that the records Plaintiff seeks are not in its possession. Plaintiff himself states in the Complaint that DOH designated all its examination testing and record keeping of the Radiologic Technologies licensing exam to the ARRT. (Am.Compl.¶ 48.) The Committee on Open Government, which promulgates rules and regulations with respect to implementing FOIL and furnishes advisory opinions to agencies regarding the law, has stated that "the Freedom of Information Law pertains to existing records, and § 89(3) states in part that an agency is not required to create a record in response to a request. Therefore, insofar as the information ... requested does not exist in the form of a record, the Freedom of Information Law would not be applicable." Comm. on Open Gov't FOIL–A.O.–16063. Thus, State Defendants had no obligation under FOIL to create or produce records that it does not maintain. Furthermore, the examination records in question would be exempt under § 87(2)(h). *See supra,* Part II. Thus, Plaintiff has failed to show that either the ARRT defendants or the State Defendants failed to comply with FOIL.

Because Plaintiff had only a mere expectation to receive his examination records, and not an entitlement under either FERPA or FOIL, he did not have a constitutionally protected property interest in his records. *See Billups,* 1996 WL 99399, at *4; *O'Bradovich,* 325 F.Supp.2d at 433. Thus, Plaintiff cannot sustain a due process claim on this basis.

Accordingly, this Court finds that Plaintiff's Complaint fails to state a claim on which injunctive relief can be granted and grants State Defendants' motion to dismiss.[6]

### IV. CONCLUSION

For the foregoing reasons, ARRT Defendants' and State Defendants' motions to dismiss Plaintiff's Complaint [dkt. nos. 12 & 14] are granted in their entirety.

The Clerk of the Court is hereby directed to close this case.

**\*12** SO ORDERED:

**All Citations**

Not Reported in F.Supp.2d, 2010 WL 4140430

Footnotes

1    Plaintiff could argue that he is not yet in competition with radiologic technologists because he has not qualified for the necessary license. However, in *Daniel,* the court found no basis to distinguish for standing purposes between competitors who possess an income enhancing credential and litigants who seek access to that credential in order to compete with those who have it. "In either case, because their goal is to gain the credential that will cause noncompetitive prices to inure to Plaintiffs' benefit, their claim for relief falls outside the ambit of antitrust protection and they lack standing." 269 F.Supp.2d at 181.

2    Plaintiff argues that he was not required to first bring an Article 78 proceeding in state court because "state administrative remedies need not be exhausted where the federal court plaintiff states an otherwise good cause of action under 42 U.S.C. § 1983." (Pl's Mem. in Opp'n at 18). Generally, "relief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy." *McNeese v. Bd. of Educ. For Cmty Unit Sch. Dist. 187, Cahokia, Ill.,* 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L.Ed.2d 622; *see also Roach v. Morse,* 440 F.3d 53, 56 (2d Cir.2006) ("Plaintiffs suing under 42 U.S.C. § 1983 generally need not exhaust their administrative remedies ... exhaustion is necessary only where Congress specifically requires it, either explicitly or implicitly."). Though this general rule applies to two of the three kinds of § 1983 claims that may be brought against the state under the Due Process Clause of the Fourteenth Amendment, namely, those involving the incorporated protections defined in the Bill of Rights and those involving the substantive component of the clause, it does not apply in the same fashion to the Due Process Clause's third type of protection, a guarantee of fair procedure. *See Zinermon v. Burch,* 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). "A § 1983 action may be brought for a violation of procedural due process, but here the existence of state remedies *is* relevant in a special sense. In procedural due process claims, the deprivation by state action of a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law."* Id. (citing *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981)).

3    The Court lacks subject matter jurisdiction over claims barred by the Eleventh Amendment, and therefore, such claims are appropriately dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See Wake v. United States,* 89 F.3d 53, 57 (2d Cir.1996).

4    State Defendants argue that state officials are entitled to qualified immunity. However, with the exception of judicial officers, "a public official's right to immunity, whether absolute or qualified, pertain [s] only to claims for monetary damages." *Hili v. Sciarrotta,* 140 F.3d 210, 215 (2d Cir.1998); *see also Hall v. Marshall,* 479 F.Supp.2d 304, 318 (E.D.N.Y.2007) ("[N]either absolute nor qualified immunity is a defense to a claim for injunctive relief.").

5    State Defendants also argue that Plaintiff fails to adequately plead a conspiracy, a claim gleaned from the paragraphs in the Complaint stating that Defendants violated his constitutional and federal rights "[b]y conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny Plaintiff equal protection of laws" and that "as a result of their concerted unlawful denial of Plaintiff's rights, Defendants deprived Plaintiff of both his right to his liberty without due process of law and his right to equal protection of the laws, in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States and 42 U.S.C. sec.1983." (Am.Compl.¶¶ 38c, 39). Plaintiff does not actually cite 42 U.S.C. § 1985 nor appear to substantiate this conclusory allegation with any facts to support a conspiracy and make this claim plausible; thus this claim, to the extent it exists in the Complaint, is dismissed.

6    State Defendants make the additional argument that 42 U.S.C. § 1983 is not a separate source of rights and federal jurisdiction; rather it only confers remedies of enforcement of rights arising under the Constitution or federal law, and grants federal jurisdiction to hear such cases. *See Howard v. State Dep't of Highways,* 478 F.2d 581, 585 (10th Cir.1973).

They argue that "[b]ecause Plaintiff does not assert any separate federal rights or remedies, and Plaintiff's only other federal claim under 15 U.S.C. § 1 is without merit[,] ... Plaintiff's case should be dismissed for want of appropriate jurisdiction." However, Plaintiff does not allege that he has separate constitutional and federal rights under § 1983; he uses § 1983 as a mechanism to bring his due process, equal protection, and FERPA claims. The Court has jurisdiction to consider these asserted claims, in addition to Plaintiff's other federal claim under 15 U.S.C. § 1. Therefore, Plaintiff's case is not dismissed on this ground.

---

**End of Document**                                             © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2013 WL 2419142
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

Posr A. POSR, Plaintiff,

v.

The CITY OF NEW YORK; Mayor Michael
Bloomberg, in his individual and official capacity;
the New York Police Department; New York
Police Commissioner Raymond Kelly, in his
individual and official capacity; New York Police
Officer Peter Ueberacher, in his individual and
official capacity; New York Police Officer Pedro
Rivera, in his individual and official capacity;
and Police Officer Christine Pimentel, in her
individual and official capacity, Defendants.

No. 10 CIV 2551(RPP).
|
June 4, 2013.

**Attorneys and Law Firms**

Posr A. Posr, Howard Beach, NY, pro se.

Brian Jeremy Farrar, Assistant Corporation Counsel,
New York City Law Department, New York, NY, for
Defendants.

### OPINION & ORDER

ROBERT P. PATTERSON, JR., District Judge.

**\*1** Pursuant to 42 U.S.C. § 1981, § 1983, and New York
State law, *pro se* plaintiff Posr A. Posr brings this action
against the City of New York (the "City"), New York City
Mayor Michael Bloomberg, the New York City Police
Department ("NYPD"), NYPD Commissioner Raymond
Kelly, and NYPD Officers Peter Ueberacher, Pedro
Rivera, and Christine Pimentel (collectively, Defendants).
(*See* Am. Compl. at 1, April 2, 2012, ECF No. 42.)
Defendants move for dismissal of several of Plaintiff's
claims under Rule 12(c) of the Federal Rules of Civil
Procedure and for summary judgment under Rule 56 on
all of Plaintiff's remaining claims. (*See* Mot. to Dismiss
Am. Compl., ECF No. 46; *see also* Mem. in Supp. of Mot.
to Dismiss ("Dismiss Mem."), ECF No. 47 (incorporating

arguments raised in Mem. in Supp. of Mot. for Summ. J.
("Summ. J. Mem."), ECF No. 27).) For the reasons stated
below, the Court grants Defendants' motions, dismisses
Plaintiff's claims, and enters summary judgment in favor
of Defendants.

### I. FACTUAL BACKGROUND

**A. The Incident at West 123rd Street on March 9, 2009**
Describing himself as "a male of Black African
ancestry," (Am.Compl.1), Plaintiff alleges that, at
approximately 11:03 a.m. on Monday, March 9, 2009,
he emerged from the Pelham Fritz Recreation Facility
in Marcus Garvey Park, walked one block north, turned
onto 123rd Street, and started walking west, (*id.* ¶¶ 1–2);
that he then stopped walking at 10 West 123rd Street, [1]
where he put his gym bag down on "a 1.5 foot concrete
cube," which he viewed as marking "the boundary
between the public sidewalk ... and the courtyard of [a]
private property;" and that he next unzipped his gym bag,
retrieved his wallet from inside his bag, zipped the bag
closed, lifted the bag, and proceeded west towards his
residence at 136 West 123rd Street. (*Id.* ¶¶ 3, 5–7.)

In his response declaration, Officer Ueberacher stated
that, on March 9, 2009, he was on 123rd Street, driving
west in a marked patrol car, when he observed Plaintiff as
follows:

> I observed Plaintiff Posr A. Posr
> standing in the courtyard of 6
> West 123rd Street in Manhattan.
> The front door of that location
> was open and I observed Plaintiff
> placing unidentified objects into a
> red duffle bag. I had been advised
> by my command that there had
> been a recent spike in burglaries
> in that location. I was further
> advised that suspects committing
> these burglaries often strike during
> the midday hours and steal items
> that can easily be concealed in bags
> and knapsacks. (Ueberacher Decl.
> ¶ 2; *see also* Am. Compl. ¶¶ 9–
> 12.) After observing Plaintiff pick up
> his bag and start walking, Officer
> Ueberacher pulled his car over and

approached Plaintiff. (Ueberacher Decl. ¶ 3; Am. Compl. ¶¶ 12–15.)

Officer Ueberacher declared that, after he approached Plaintiff, the following interaction ensued:

> I asked Plaintiff whether he lived at 6 West 123rd Street and he informed me that he did not. I then asked Plaintiff why he was standing in front of that location and he refused to answer. I asked Plaintiff for his identification but he also refused. I explained to Plaintiff that I was asking these questions because there ha[d] been a high incidence of burglaries in that particular area.

**\*2** (Ueberacher Decl. ¶ 4.)

In his Amended Complaint, Plaintiff alleges that Officer Ueberacher observed him "put his bag down, bend over his bag, move his arms about his bag, pick up the bag, and proceed west," (Am.Compl.¶ 12); that Officer Ueberacher then approached and asked Plaintiff where he had come from, (*id.* ¶¶ 14–15); that Plaintiff did not respond to the question, and instead asked "why [Officer Ueberacher] wanted to know, or was there a problem, or some such question;" (*id.* ¶ 16); that Officer Ueberacher thereafter asked him for identification, (*id.* ¶ 20), but that, rather than turning over any identification, Plaintiff asked if a crime had been committed, (*id.* ¶ 21); that Officer Ueberacher responded to the question by stating Plaintiff had been observed putting a duffel bag down and putting something into the bag, (*id.* ¶ 22); that Plaintiff asked Officer Ueberacher if doing so was a crime, (*id.* ¶ 23); and that Officer Ueberacher replied, "it was not a crime," (*id.* ¶ 24), but that "there had been a lot of burglaries in the area," (*id.* ¶ 25).

Next, Plaintiff alleges that he inquired "if a burglary at 10 West 123rd Street had been reported," (*id.* ¶ 27); that Officer Ueberacher responded that "he was investigating a burglary." (*id.* ¶ 29); that Plaintiff queried if he "fit the description of a burglar," (*id.* ¶ 31); but that Officer

Ueberacher "did not say Plaintiff fit the description of a burglar," (*id.* ¶ 33); that he told Officer Ueberacher "if this were a white neighborhood, this wouldn't be happening," (*id.* ¶ 36); that Officer Ueberacher responded,

"Do you want me to stop a white guy?" (*id.* ¶ 37); that Plaintiff replied yes, and pointed out a white person whom he thought Officer Ueberacher should stop, (*id.* ¶¶ 3 8, 40); and that Officer Ueberacher refused to stop this white person because the person was carrying a clipboard, (*id.* ¶ 41).

Plaintiff further alleges that, after Officer Ueberacher allegedly refused to stop the white passerby, Plaintiff asked to speak with Officer Ueberacher's supervisor, (*id.* ¶ 45; *see also* Ueberacher Decl. ¶ 5); that Officer Ueberacher placed a call on the radio for his sergeant, Yolanda Cuadrado, to respond, (*id.*); that while Officer Ueberacher was on the radio, Plaintiff called 911 on his cell phone, (Am.Compl.¶ 48); that, within minutes of Plaintiff's 911 call, four uniformed police officers arrived on the scene, (*id.* ¶ 49); that these officers stood around him in a threatening semi-circle, (*id.* ¶ 51); that Sergeant Cuadrado arrived shortly thereafter and spoke with Officer Ueberacher and then with Plaintiff, (Am. Compl. ¶¶ 53–57; Ueberacher Decl. ¶¶ 5–6); and that she then spoke with Plaintiff and told him that he "was free to go;" and that, as soon as she did so, he left the scene, (Am.Compl.¶ 57).

Plaintiff alleges, however, that prior to Sergeant Cuadrado telling him that he was free to go, he twice asked Officer Ueberacher if he could go, (*id.* ¶¶ 34, 43); that he also asked the four responding 911 officers if he could go (*id.* ¶ 50); and that, each time he asked, he was told that he was not free to go. (*id.* ¶¶ 35, 44, 51). Officer Ueberacher disputed this contention, stating:

> **\*3** The entire interaction with Plaintiff lasted less than ten minutes. Plaintiff was not handcuffed during this encounter. No physical force was used on Plaintiff, no threats were made, and Plaintiff was free to leave at any time.

(Ueberacher Decl. ¶ 7.)

Following the March 9, 2009 incident on West 123rd Street, Officer Ueberacher completed a report for the NYPD Stop, Question & Frisk System (the "Stop & Frisk Report"). (*See* Letter from Defs. to the Court dated Nov. 16, 2012, Ex. B, ECF No. 62.) In the report, Officer Ueberacher wrote that he had stopped a person, whose name was listed as "Unknown," after observing that

person for two minutes. (*Id.*) The report indicated that the stop had lasted for seventeen minutes and included the following notes:

*Circumstances Leading to Stop*

— Suspects, Actions–Fits Description;

— Suspects, Actions–Other–At location putting unknown objects in duffle bag.

*Additional Factors*

— Report from Victim/Witness/Officer;

— Area has high incidence of reported offense;

— Evasive, false, or inconsistent responses to officers' questions;

-Other: Door to 6 West 123rd Street left open where subject 1st observed.

(*Id.*)

### B. Plaintiff's Freedom of Information Law Act Complaints

#### i. *March 12, 2009 Request*

On March 12, 2009, three days after the incident with Officer Ueberacher, Plaintiff submitted a request pursuant to New York State's Freedom of Information Law Act ("FOIL"). seeking: (1) the audio tape and SPRINT Report of the 911 call that he had made from his cell phone on March 10, 2009;[2] (2) information on the number of areas in Harlem that the NYPD had designated as "high burglary" between March 10, 2008 and March 10, 2009; and (3) information on the NYPD's guidelines for designating an area as "high burglary." (*See* Letter from Defs. to Court dated Feb. 23, 2012, Ex. B ("Pl.'s 2009 FOIL File") at 2–5, ECF No. 39; *see also* Am. Compl. ¶¶ 68–70, 76–77.) Plaintiff alleges that he submitted this FOIL request to Officer Rivera, and that after he did so, Officer Rivera "refused to time-stamp or otherwise render a receipt" acknowledging the submission of Plaintiff's request. (Am.Compl.¶¶ 68–72.)

On April 13, 2009, Sergeant James Russo sent Plaintiff a letter acknowledging the receipt of Plaintiff's March 12, 2009 FOIL request. (*Id.* at 10.) In the letter, Sergeant

Russo informed Plaintiff that, "[d]ue to the large volume of pending FOIL requests, which are processed in the order in which they are received, and due to the fact that NYPD records are kept in many offices located in five counties," a determination on Plaintiff's request would not be reached until July 17, 2009.(*Id.*) A few weeks later, on April 29, 2009, Sergeant Russo assigned Plaintiff's FOIL request to Officer Pimentel. (*Id.* at 6–7.) Thereafter, the Tape and Records Unit of the NYPD Communications Division searched for the record of a 911 call made from Plaintiff's cell phone on March 10, 2009–the date that Plaintiff's FOIL request had specified-but the search returned "negative results." (*Id.* at 2–5, 7–8.) On August 11, 2009, Sergeant Russo sent Plaintiff a letter stating that the NYPD FOIL Unit had been "unable to locate records responsive to [his] request based on the information provided." (*Id.* at 9.) The letter advised that, if Plaintiff desired, he could appeal the decision in writing within thirty days. (*Id.*) However, Plaintiff does not claim, nor does his FOIL file indicate, that he appealed this decision.

#### ii. *April 13, 2012 Request*

**\*4** On April 13, 2012, Plaintiff filed an additional FOIL request seeking verification that he had "signed in" to the Pelham Fritz Recreation Facility in Marcus Garvey Park on March 9, 2009. (*See* Nov. 16, 2012 Letter Ex. A ("Pl.'s 2012 FOIL File").)" In response, on June 12, 2012, a New York City Parks & Recreation Records Access Officer mailed Plaintiff a copy of his "Membership Usage Report."[3] (*Id.* at 2, 4–11.) The Membership Usage Report showed that Plaintiff had signed in to the Pelham Fritz Recreation Facility on March 9, 2009 at 9:59 a.m. (*Id.* at 5.) The report did not reflect the time when Plaintiff left the facility. (*Cf.id.*)

## II. PROCEDURAL HISTORY

### A. The Complaint

On March 4, 2010, Plaintiff filed his original Complaint against the City of New York, Mayor Bloomberg, the NYPD, Commissioner Kelly, and Officer Ueberacher.[4] (*See* Orig. Compl. at 1, ECF No. 2.) Pursuant to 42 U.S.C. § 1983, the Complaint alleged that Officer Ueberacher had violated Plaintiff's right to be free from unreasonable seizure under the Fourth Amendment, his right to equal protection under the Fourteenth Amendment, and his right to be free from an assault on his dignity under

the Ninth Amendment. (*id.* ¶¶ 52.1–57.) The Complaint further alleged that Officer Ueberacher had violated 42 U.S.C. § 1981, (*id.* ¶ 53), as well as numerous New York State laws, (*id.* ¶¶ 44–52). In addition, the Complaint alleged that the NYPD and the City of New York, with support from Mayor Bloomberg and Commissioner Kelly, had violated Plaintiff's Fourteenth and Ninth Amendment rights by "adopting, condoning, and executing a policy of seizing Blacks walking in Harlem without probable cause to believe such Blacks ha[d] committed] or [we]re about to commit a crime." (*id.* ¶¶ 50–51.)

On July 22, 2011, Defendants filed a Rule 56 motion arguing that they were entitled to summary judgment because:

> (1) Plaintiff fail[ed] to state a cognizable § 1983 claim; (2) Defendant Officer Ueberacher [wa]s entitled to qualified immunity; (3) Plaintiff fail[ed] to state a claim for racial discrimination; (4) Defendants Raymond Kelly and Michael Bloomberg had no personal involvement in the incident alleged in the Complaint; (5) Plaintiff fail[ed] to state a *Monell* claim; [and] (6) the New York City Police Department [wa]s not a suable entity.

(Summ. J. Mem. at 3). Defendants also requested that the Court decline to exercise its jurisdiction over any of Plaintiff's state law claims. (*Id.*)

### B. Plaintiff's First Motion to Compel

In response to Defendants' Rule 56 motion, Plaintiff submitted a motion to compel production of records that he considered material to his opposition to summary judgment. (Mot. to Compel, ECF No. 30.) Following briefing and letters from both parties, (see ECF Nos. 31–35), the Court issued an Order granting Plaintiff's motion to compel in its entirety, (First Compel Order at 12). The Order directed Defendants to provide Plaintiff with:

**\*5** (1) The entire SPRINT report and [the audio-taped] 911 call (or [to] provide sufficient evidence that an

appropriate search ... [was] made and that th[e records] do not exist; and

> (2) Evidentiary support for [Officer] Ueberacher's assertion that prior to March 9, 2009, he had been advised by his command "that there had been a recent spike of burglaries" in the vicinity of West 123rd Street between Marcus Garvey Park West and Malcolm X Boulevard, and that the burglaries often occurred "during the midday hours, and involved items that c[ould] easily be concealed in bags and knapsacks."

(*Id.* (citing Ueberacher Decl. ¶ 2) (alterations in original omitted).)

In accordance with the Court's Order, Defendants provided Plaintiff with: (1) a copy of his March 12, 2009 FOIL file showing that the his 911 call records had been searched for on August 11, 2009; (2) a copy of the NYPD's audio retention policy stating that the NYPD records all 911 calls and digitally stores them on a voice recording system for 180 days, at which point a computer program automatically deletes them; and (3) proof that the audio file of Plaintiff's 911 call no longer existed because the call had been recorded more than 180 days prior to the Court's Order. (*See* Feb. 23, 2012 Letter.) Additionally, Defendants provided Plaintiff with an affidavit from Sergeant Cuadrado. (*See id.* Ex. C ("Cuadrado Aff." dated Jan. 25, 2012).) In the Affidavit, Sergeant Cuadrado stated that, as the Patrol Sergeant for the NYPD's 28th Precinct from December 2008 until November 2010, she "was responsible for informing the officers under [her] command of crimes that had occurred within the confines of the precinct, and the locations of the crimes." (*id.* ¶ 3.) She explained that "[t]he purpose of informing them of such, was so that when the officers went on patrol, they would pay special attention to the areas where crimes had been occurring." (*Id.*) Sergeant Cuadrado also stated:

> From approximately March 1, 2009 to March 9, 2009, I informed the patrol officers at the start of their tours, including Police Officer Ueberacher, that there was a spike in residential burglaries within the confines of the 28th Precinct, which includes the vicinity of Marcus Garvey Park West and Malcolm X Boulevard in Manhattan. The officers, including Police Officer

Ueberacher, were informed that many of these burglaries were occurring during the daytime hours, and involved stolen items that could easily be concealed in a backpack or duffle bag.

(*id.* ¶ 4.)

### C. The Amended Complaint

On January 27, 2012, Plaintiff sought leave to amend his original Complaint so that he could add claims related to his March 12, 2009 FOIL request. (Not. of Mot. to Am. Compl. at 1, 3–4, ECF No. 37.) The Court granted Plaintiff leave to amend on March 13, 2012. (Order, Mar. 13, 2012, ECF No. 40.) On April 2, 2012, Plaintiff filed his Amended Complaint, alleging that the City of New York had violated Plaintiff's Fifth Amendment due process rights by maintaining a policy of not time-stamping any FOIL requests, (*id.* ¶ 109), and that Officer Rivera had violated Plaintiff's Fifth Amendment due process rights by refusing to time-stamp his particular FOIL request, (*id.* ¶¶ 111–14). In addition, the Amended Complaint alleged that Officer Pimentel had violated Plaintiff's Fifth Amendment rights by withholding the burglary data and the 911 call records requested by Plaintiff.[5] (*id.* ¶¶ 109.)

**\*6** On April 16, 2012, Defendants filed an Answer to Plaintiff's Amended Complaint. The Answer included a footnote, arguing that Defendants' July 22, 2011 summary judgment motion remained pending, and that Plaintiff's claims should all be dismissed for the reasons set forth in their summary judgment motion and in letters that they had sent to the Court on February 23, 2012 and March 9, 2012. (Answer at 1 n. 3.) In an Order dated April 20, 2012, the Court directed Defendants to "serve and file a separate submission stating these grounds explicitly so [that] Plaintiff [could] ha[ve] notice of Defendants' grounds." (Order, Apr. 20, 2012, ECF No. 44.) Thereafter, on May 5, 2012, Defendants filed a Rule 12(c) motion to dismiss the FOIL related claims that Plaintiff had included in his Amended Complaint. (Dismiss Mem. at 2.) As to Plaintiff's other claims arising from the March 9, 2009 incident with Officer Ueberacher, Defendants "respectfully refer[ed]" Plaintiff and the Court to the summary judgment motion that they had filed on July 22, 2011, and to the February 23, 2012 letter and March 9, 2012 letter attached to their motion to dismiss. (*Id.; see also* Dismiss Mem. Exs. C & E.)

### D. Plaintiff's Request for a Second Order to Compel

After Defendants filed their motion to dismiss, Plaintiff submitted multiple letters to the Court requesting additional discovery and seeking an extension of time in which to respond to "Defendants' summary judgment motion." (*See* Letter from Plaintiff to Court dated May 17, 2012, ECF No. 52; *see also* Order ("Second Compel Order"), Nov. 5, 2012, ECF No. 59 (summarizing letters filed by Plaintiff on May 17, July 2, and Aug. 22, 2012, as well as Defendants' Aug. 10, 2012 response letter).) In one of his letters, Plaintiff reported that Defendants had failed to provide him with (1) a copy of Officer Ueberacher's Stop & Frisk Report; (2) the burglary data that he had requested in his March 12, 2009 FOIL request and upon which Sergeant Cuadrado had relied in her Affidavit; and (3) the park attendance records that he had asked for in his April 13, 2012 FOIL request. (*See* Letter from Plaintiff to Court dated July 2, 2012, ECF No. 55.) Thus, on November 5, 2012, the Court issued an order directing Defendants to produce these records to Plaintiff. (Second Compel Order at 3–4.)

Accordingly, on November 16, 2012, Defendants submitted a copy of Officer Ueberacher's Stop & Frisk Report and a copy of Plaintiff's park attendance "Membership Usage" records. (*See* Nov. 16, 2012 Letter Exs. A & B; *see also* supra n. 4.) In the letter transmitting these materials, Defendants stated that they were "unaware of any 'data' ... relied on by Sergeant Cuadrado," but that they were "continuing to look into this matter." (*Id.* at 1.) Defendants closed their letter by requesting that their "July 2011 motion for summary judgment and [their] May 2012 motion to dismiss be granted." (*Id.* at 2.) The Court then directed Defendants to "advise [it] and Plaintiff of the result of their investigation [into the burglary data] by December 7, 2012." (*See id.* at 3 (endorsement by Court).) Thus, on December 7, 2012, Defendants submitted a letter stating that they remained unaware of any specific data relied on by Sergeant Cuadrado because "the information she [had] conveyed to the police officers under her command ... was generated by word-of-mouth, and communicated verbally among supervisors." (Letter from Defs. dated Dec. 7, 2012, ECF No. 64.) The Court issued an Order directing Plaintiff to file any further papers by February 4, 2013. (Order, Jan. 24, 2012, ECF No. 65.) Plaintiff did not submit any additional papers to the Court, and the issues are now deemed to be fully briefed.

## III. APPLICABLE LAW—42 U.S.C. § 1983

### A. Individual Liability

**\*7** Section 1983 provides a remedy to persons who, under color of state law, have been deprived of "any rights, privileges, or immunities secured by the Constitution." 42 U.S.C.

§ 1983. The Supreme Court has explained that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole,* 504 U.S. 158, 161, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). Thus, in order to be held liable under § 1983, a state actor must be, or have been, personally involved in the violation alleged. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."). When a state actor is sued under § 1983 for being personally involved in a constitutional violation, he may be granted qualified immunity from suit. *See Harlow v. Fitzgerald,* 457 U.S. 800, 814, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (explaining rationale behind offering government officials qualified immunity). To determine if a state actor is entitled to such immunity, a court must decide (1) "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right;" and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Pearson v. Callahan,* 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (internal references omitted). A court may approach this two-pronged analysis in whatever order that it deems appropriate. *Id.* at 236.

### B. Municipal Liability

Conversely, a plaintiff seeking to sue a municipality under § 1983 must show that an identified municipal "policy," "custom," or "practice" was the "moving force" behind the harm alleged. *See Monell v. New York Dep't of Soc. Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is not enough for a plaintiff to allege that a municipality's employee acted unconstitutionally in a single instance, or that a municipality's employees are guilty of some wrongdoing. *See id.* at 691 ("A

municipality cannot be held liable under § 1983 on a respondeat superior theory."). Rather, a plaintiff must prove (1) that a written discriminatory policy exists; or (2) that "the discriminatory practices of city officials are ... so permanent and well settled as to constitute a custom or usage with the force of law;" or that (3) "the actions of subordinate officers are sufficiently widespread to constitute the constructive acquiescence of senior policymakers." *Sorlucco v. New York City Police Dep't,* 971 F.2d 864, 870–71 (2d Cir.1992) (internal quotation marks omitted).

## IV. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Legal Standard [6]

Under Rule 56 of the Federal Rules of Civil Procedure, "[s]ummary judgment is proper if, viewing all facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2d Cir.1996); *see also Fincher v. Depository Trust & Clearing Corp.,* 604 F.3d 712, 720 (2d Cir.2010) (explaining that "[a]n issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party" and that "[a] fact is material if it might affect the outcome of the suit under governing law"). A party moving for summary judgment bears the burden of proving that no genuine issue of material facts exists, or that the evidence supporting the non-moving party's case is so slight that no rational jury could find in the non-moving party's favor. *See Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The party opposing summary judgment must then come forward with facts sufficient to show that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In so doing, the opposing party must show more than "[t]he mere existence of a scintilla of evidence in support of [its] position." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### B. Plaintiff's Fourth Amendment Claim

**\*8** Plaintiff's Fourth Amendment claim alleges that Officer Ueberacher stopped Plaintiff "without reasonable or probable cause to believe a crime had been, was being, or was about to be committed and without reasonable or probable cause to believe that Plaintiff had

committed, was committing, or was about to commit a crime." (Am.Compl.¶ 104.) The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. Const., amend. IV. The Supreme Court has made clear that a "seizure" occurs when a police officer, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *United States v. Terry,* 392 U.S. 1, at 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "The test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *California v. Hodari D.,* 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). Said another way, Fourth Amendment scrutiny is triggered when a reasonable person would have believed that he was not free to leave and go about his business. *See INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984).

Where an individual does not consent to a police encounter and a police officer has reasonable articulable suspicion that "criminal activity may be afoot," the Fourth Amendment permits that officer to briefly detain and question a person for investigative purposes. *See Terry,* 392 U.S. at 30. For such an investigative stop, reasonable suspicion demands that an officer be "able to articulate something more than an inchoate and unparticularized suspicion or hunch." *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). Reasonable suspicion may, however, be based on "a series of acts, each perhaps innocent in itself, but which taken together warrants further investigations." *Terry,* 392 U.S. at 22.

### i. *The encounter between Officer Ueberacher and Plaintiff constituted an investigative stop under the Fourth Amendment.*

As the party opposing summary judgment, Plaintiff is entitled to have the evidence construed in the light most favorable to him and to have all inferences drawn in his favor. *See Thomas,* 165 F.3d at 142. Thus, for the purpose of deciding Defendants' summary judgment motion, the Court assumes that, as Plaintiff asserts, Officer Ueberacher told Plaintiff that he was not free to leave the scene of his encounter with Officer Ueberacher.

(*See* Am. Compl. ¶¶ 34–35, 43–44.) The Court also assumes that, when the four unnamed responding 911 officers arrived at the scene, they stood around Plaintiff in a threatening semi-circle and at least one of these officers told Plaintiff that he was not free to leave. (*id.* ¶¶ 50–52.) Under these circumstances, a reasonable person would not have felt free to disregard the police and to go about his business. *See Hodari D.,* 499 U.S. at 628.

**\*9** In addition, the Court notes that Plaintiff reported not feeling free to leave the scene and that he did not actually leave the scene until Sergeant Cuadrado told him that he could go. (Am.Compl.¶¶ 53–57.) The Court further notes that Officer Ueberacher completed a report for the NYPD's Stop, Question & Frisk System after his encounter with Plaintiff, a fact which suggests that Officer Ueberacher also viewed the encounter to be non-consensual. (*See* Nov. 16, 2012 Letter Ex. B.) Thus, considering these factors together, it is clear that Plaintiff did not consent to the encounter with Officer Ueberacher. Fourth Amendment scrutiny is therefore required as to whether Officer Ueberacher had reasonable articulable suspicion to perform an investigative stop on Plaintiff. See *Mendenhall,* 446 U.S. at 553–54 (concluding that "foundation ... for invoking constitutional safeguards" exists "only when" an individual shows that his freedom of movement has been restrained by "means of physical force or a show of authority"); *see also* Terry, 392 U.S. at 30.

### ii. *Officer Ueberacher had reasonable articulable suspicion to perform an investigative stop on Plaintiff.*

Both Plaintiff and Officer Ueberacher agree that Officer Ueberacher approached Plaintiff only *after* observing him "put his bag down, bend over his bag, move his arms about his bag, pick up the bag, and proceed west." (Am. Comp. ¶ 12; *see also* Ueberacher Decl. ¶ 2.) Officer Ueberacher stated that he was suspicious of Plaintiff's activities at that time because the front door of a building at 6 or 10 West 123rd Street was ajar-an observation which Plaintiff has not contradicted. (*See* Ueberacher Decl. ¶ 2.) Officer Ueberacher also stated that he was particularly suspicious of Plaintiff's activities because he had previously been told by his commanding officer of "a recent spike in burglaries" in the location around where Plaintiff was observed and that the "suspects committing these burglaries often str[uck] during the midday hours and st[ole] items that c[ould be] easily be concealed in bags and knapsacks." (*Id.*) To this end, at or around the

time of the incident, Officer Ueberacher recorded in his Stop & Frisk Report that he had observed Plaintiff in an area with a "high incidence of reported offense." (Nov. 16, 2012 Letter Ex. B.) Moreover, the affidavit submitted by Sergeant Cuadrado confirms that, prior to March 9, 2009, she was also aware of, and did in fact inform, Officer Ueberacher about the burglary pattern in the area. (Cuadrado Aff. ¶ 4.)

Although Plaintiff's presence in the "high-crime area" where he was observed, is not, by itself, sufficient to justify the investigative stop at issue here, the fact that Officer Ueberacher had been told about a recent spike in midday burglaries-taken together with the undisputed facts that a front door near to Plaintiff was open and that near to this open door, Plaintiff was observed bending over his duffle bag and moving his arms about his bag-establish that Officer Ueberacher had reasonable suspicion to briefly stop and question Plaintiff. [7] (*See* Am. Compl. ¶¶ 7, 11; Ueberacher Decl. ¶ 2); *see also Illinois v. Wardlow,* 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) ("[O]fficers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."); *Floyd v. City of New York,* 813 F.Supp.2d 417, 442–43 (S.D.N.Y.2011) (concluding that officers had reasonable suspicion to stop and frisk two men whom they observed attempting to unlock front door of a house with a number of different keys in a location that had a midday burglary pattern).

**\*10** Moreover, the scope and duration of the investigative stop that Officer Ueberacher performed on Plaintiff was reasonable in light of Officer Ueberacher's articulable suspicion. *See United States v. Tehrani,* 49 F.3d 54, 58 (2d Cir.1995) ("If an investigative detention is properly premised upon articulable suspicion, the next inquiry is whether its scope and duration are reasonable."). The encounter between Plaintiff and Officer Ueberacher lasted less than twenty minutes, including the time that Plaintiff waited for the arrival of Sergeant Cuadrado, whose presence he had requested, and the officers who were responding to his 911 call. *See Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983) ("[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."). Moreover, the questions that Officer Ueberacher asked Plaintiff were appropriately tailored to his articulable suspicion about

Plaintiff's actions. *See* Terry, 392 U.S. at 20 (explaining that an investigative stop must be "reasonably related in scope to the circumstances which justified the intervention in the first place"). Finally, the investigative stop performed on Plaintiff was limited to Officer Ueberacher's questions alone, as Plaintiff was not frisked, searched, or handcuffed during the encounter. *Cf. Royer,* 460 U.S. at 500 (requiring that whatever investigative methods are employed be "the least intrusive means reasonably available to verify or dispel [an] officer's suspicion in a short period of time").

Thus, for the reasons just discussed and in light of the totality of the circumstances presented, the Court concludes that Officer Ueberacher had reasonable articulable suspicion to approach, briefly detain, and question Plaintiff. *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (A court "must look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing."). Moreover, because neither the duration nor the scope of Officer Ueberacher's investigative stop was unreasonable, summary judgment is granted to Defendants on Plaintiff's Fourth Amendment claim against Officer Ueberacher. [8]

### C. Plaintiff's Fourteenth Amendment Claims

Summary judgment is likewise granted to Defendants on Plaintiff's Fourteenth Amendment claims. (*See* Am. Compl. ¶¶ 65, 102, 106.) The Fourteenth Amendment prohibits a state from depriving any person of life, liberty, or property without due process of law and it also prohibits a state from denying any person equal protection of the law. U.S. Const., amend. XIV. Here, Plaintiff claims that the encounter with Officer Ueberacher on March 9, 2009 led to the violation of his Fourteenth Amendment rights by Officer Ueberacher, the City of New York, Mayor Bloomberg, and Commissioner Kelly. (*id* . ¶ 106.) In addition, Plaintiff claims that the NYPD, Mayor Bloomberg, and Commissioner Kelly violated his Fourteenth Amendment rights by "adopting, condoning, orchestrating, and executing a policy of seizing Blacks in Harlem and throughout the City of New York without probable or reasonable cause to believe such Blacks have committed, are committing, or are about to commit a crime." [9] (*id.* ¶¶ 65, 102.)

**\*11** As has just been shown, however, Officer Ueberacher had reasonable articuable suspicion to perform the brief investigative stop at issue here. By contrast, Plaintiff has not shown that Officer Ueberacher had reasonable suspicion to stop, but then declined to stop, the white passerby. Accordingly, Plaintiff has failed to show that Officer Ueberacher violated his

Fourteenth Amendment equal protection rights by impermissibly stopping him on the basis of his race, or on any other improper ground. *See Floyd,* 813 F.Supp.2d at 444 (dismissing equal protection claim against defendant officers where court found that officers had reasonable suspicion to perform investigative stop). Similarly, because Officer Ueberacher's investigative stop was lawful, Plaintiff has not shown that the City of New York or the NYPD [10] maintained an unlawful, racially-motivated municipal policy, custom, or practice that caused the deprivation of his Fourteenth Amendment rights. *See Vippolis v. Vill. of Haverstraw,* 768 F.2d 40, 44 (2d Cir.1985) (requiring that, if § 1983 municipal liability is to attach, a "causal connection" between a municipality's policy and the deprivation of a plaintiff's constitutional rights must be established), *cert denied,* 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987).

Nor has Plaintiff shown that Mayor Bloomberg or Commissioner Kelly adopted a racially-motivated municipal policy or were otherwise personally involved in Plaintiff's encounter with Officer Ueberacher. *See Iqbal,* 556 U.S. at 676 (requiring a plaintiff to "plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Plaintiff's Amended Complaint, for example, does not allege that either Mayor Bloomberg or Commissioner Kelly was physically present at or near the West 123rd Street location where Plaintiff's encounter with Officer Ueberacher took place; and it also fails to include any allegations that either defendant directly participated in the investigative stop that Officer Ueberacher performed on Plaintiff. *See Alfaro Motors, Inc. v. Ward,* 814 F.2d 883, 886 (2d Cir.1987) (affirming dismissal of claims against defendants where complaint failed to include allegations of personal involvement in the underlying constitutional violations).

Finally, the Court notes that the injunctive relief requested by Plaintiff on his Fourteenth Amendment claims is mooted by New York State law. Specifically, Plaintiff

requests that the Court order the City of New York, Mayor Bloomberg, and Commissioner Kelly to "purge and effect a complete erasure of the information in [a] 'profiling database' " that Plaintiff alleges the City maintains. (Am.Compl. § 103.) But Article 140.50 of New York Criminal Procedure Law already forbids a police officer from recording in a computerized or electronic database the name, address, or social security number of a person, such as Plaintiff, who has been stopped, questioned, or frisked by a police officer, but is then released without further legal action. *See* N.Y.Crim. P. Law § 140.50(4) (McKinney). Indeed, Plaintiff's own name was not even recorded by Officer Ueberacher in the Stop & Frisk Report. (*See* Nov. 16, 2012 Letter, Ex. B.)

### D. Plaintiff's Ninth Amendment Claim

**\*12** Defendants are also granted summary judgment on Plaintiff's Ninth Amendment claim, alleging that Officer Ueberacher, Mayor Bloomberg, and Commissioner Kelly, by "racially profiling and targeting Plaintiff for seizure and search, used state power to assault Plaintiff's value, esteem, worth, and nature as a human being, which assault amounted to an assault on Plaintiff's dignity." (Am.Compl.¶ 107.) Also unsuccessful is Plaintiff's separate claim against the City of New York, Mayor Bloomberg, Commissioner Kelly, and Officer Pimentel for a "declaratory judgment that the Ninth Amendment protects the individual right to dignity and that racial group profiling necessarily assaults an individual's dignity as a human being." (*id.* ¶ 108.)

The Ninth Amendment states that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. Plaintiff's claims under this amendment fail because the Ninth Amendment is "not an independent source of individual rights." *Jenkins v. C.I.R.,* 483 F.3d 90, 92 (2d Cir.2007). Rather, the amendment "provides a 'rule of construction,' " which "dictates that 'the full scope of the specific guarantees in the Constitution is not limited by the text, but embraces their purpose.' " *Id.* (quoting *United States v. Bifield,* 702 F.2d 342, 349 (2d Cir.1983)). Accordingly, the Ninth Amendment "cannot serve as the basis for a § 1983 claim," and Plaintiff's claims under this Amendment must be dismissed. *See Brown v. City of New York,* No. 11 CIV 1068, 2013 WL 491926, at \*4 (S.D.N.Y. Feb. 8, 2013) (dismissing § 1983 claim premised on violation of Ninth Amendment); *see also Subgidio v. Graiani,* No. 05 CIV

4065, 2006 WL 648229, at *7 (S.D.N.Y. Mar. 16, 2006) (holding that a Plaintiff's Ninth Amendment claim failed "because that amendment cannot be enforced by means of an action under § 1983").

**E. Plaintiff's Claim Pursuant to 42 U.S.C. § 1981**

In addition to the § 1983 claims just discussed, Defendants have also moved for summary judgment on Plaintiff's § 1981 claim against Officer Ueberacher. (Summ. J. Mem. at 12–13.) Specifically, Plaintiff alleges that Officer Ueberacher, by offering and then "refus[ing] to seize a white person as he had seized Plaintiff," denied Plaintiff "the same right to be secure in his person, papers, and effects from unreasonable seizures as is enjoyed [by] white citizens." (Am.Compl.¶ 105.)

Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens....

§ 1981(a). "The statute has long been viewed as prohibiting certain forms of discrimination based on race, and its reference to rights enjoyed by white citizens establishes the racial character of the rights being protected." *Albert v. Carovano,* 851 F.2d 561, 571 (2d Cir.1988) (internal citations and quotation marks omitted). Thus, to establish a claim under § 1981, a plaintiff must allege facts showing that: (1) the plaintiff is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute. *See Mian v. Donaldson, Lufkin, Jenrette Sec. Corp.,* 7 F.3d 1085, 1087 (2d Cir.1993).

**\*13** Here, given that Officer Ueberacher had reasonable articulable suspicion to perform a brief investigative stop on Plaintiff, Plaintiff has failed to show that Officer Ueberacher "had an intent to discriminate against him on the basis of race." *See id.* Furthermore, the fact that Officer Ueberacher did not stop the white passerby as Plaintiff requested, (*see* Am. Compl. ¶¶ 36–41), does not

give rise to the inference that Officer Ueberacher stopped Plaintiff on the basis of his race. The circumstances in which this passerby was allegedly observed were not reasonably comparable to those surrounding the investigative stop of Plaintiff. Indeed, the white passerby was not observed standing in front of an open door, nor was there reason to believer he was placing any potentially stolen items in a bag. In fact, he was reported to be carrying only a clipboard, (*id.* ¶ 41), thus making it unlikely that he was concealing stolen items. Hence, Defendants are granted summary judgment on Plaintiff's Section 1981 claim.

**V. DEFENDANTS' RULE 12(c) MOTION TO DISMISS**

**A. Legal Standard**

Rule 12(c) provides that, "[a]fter the pleadings are closed-but early enough not to delay trial-a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c); *see also Patel v. Searles,* 305 F.3d 130, 135 (2d Cir.2002). In considering a Rule 12(c) motion, a court applies "the same standard as that applicable to a motion under Rule 12(b) (6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Burnette v. Carothers,* 192 F.3d 52, 56 (2d Cir.1999). Thus, a pleading will survive a Rule 12(c) motion only if it is supported by allegations that put forth underlying facts sufficient to state a claim to relief that is "plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Iqbal,* 556 U.S. at 678. In considering a motion to dismiss, a court must disregard claims that amount only to "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," *id.,* and must confine its consideration to the pleadings and any matters that are subject to judicial notice, *see* Fed.R.Civ.P. 12(d).

**B. Plaintiff's FOIL–Related Due Process Claims**

Plaintiff claims that the City of New York violated his Fifth Amendment procedural due process rights by maintaining a policy of not time-stamping any FOIL requests, (*id.* ¶ 109), and that Officer Rivera violated his Fifth Amendment due process rights by refusing to time-stamp his particular FOIL request, (*id.* ¶¶ 111–14).

Plaintiff contends that Officer Rivera's refusal to time-stamp his FOIL submission was "for the purpose of thwarting Plaintiff's ability to obtain burglary information in relation to an instance of racial profiling." (*Id.*) In addition, Plaintiff alleges that Officer Pimentel violated his due process rights by withholding the burglary data and the 911 call records that he had requested in his FOIL request on March 12, 2009. (*id.* ¶¶ 115–16, 80–86.)

**\*14** This Court is without jurisdiction to consider Plaintiff's FOIL-related claims and thus Defendants' request to dismiss these claims will be granted. Under New York state law, if an agency or government official fails to comply with the provisions of FOIL, the person submitting the FOIL request must pursue an administrative appeal or seek remedies in state court pursuant to N.Y. C.P.L.R. Article 78. *See* N.Y. Pub. Off. Law § 89; *see also Schuloff v. Fields,* 950 F.Supp. 66, 67–68 (E.D.N.Y.1997) ("The appropriate vehicle for challenging denials of access guaranteed by [FOIL] is a state court proceeding pursuant to N.Y. C.P.L.R. Article 78 upon exhaustion of administrative remedies."); *Sonds v. Cuomo,* No. 9:11 CIV 895, 2012 WL 952540, at \*3 (N.D.N.Y. Feb.3, 2012) ("Plaintiff's state FOIL request cannot be the basis of a federal action."); *Zimmelman v. Teachers' Ret. Sys. of City of New York,* No. 08 CIV 6958, 2010 WL 1172769, at\* 14 (S.D.N.Y. Mar. 8, 2010) (ruling that where a plaintiff has not exhausted his remedies under an administrative appeal process, a federal court has no jurisdiction to consider an alleged failure to comply with city policies).

In addition, assuming *arguendo* that Plaintiff could bring his FOIL-related claims in this Court and that Plaintiff could also show that either the City maintained a policy of refusing to time-stamp FOIL requests or that Officer Rivera refused to time-stamp Plaintiff's particular FOIL submission, Plaintiff's FOIL-related claims would still fail. Plaintiff, in order to make out a due process claim for property deprivation, must show that he had a federal protectable property interest. *See Matthews v. Eldridge,* 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). But, as several courts within this Circuit have found, "a plaintiff has no property interest in obtaining FOIL documents." [11] *Blount v. Brown,* No. 10 CIV 01548, 2010 WL 1945858, at \*2 (E.D.N.Y. May 11, 2010); *see also Billups v. Millet,* No. 91 CIV 6326, 1996 WL 99399,

at \*4 (S.D.N.Y. Mar.6, 1996) ("FOIL documents are an expectation .... [and New York state law] does not require that documents be produced as of right, but only after request and investigation."); *Webb v. Ashburn,* No. 96 CIV 0325, 1997 WL 118355, at \*5–6 (S.D.N.Y. Mar. 17, 1997) (same). Likewise, Plaintiff's allegations about Officer Pimentel would also fail on the merits. Plaintiff, who acknowledges that he specified the wrong 911 call date in his FOIL request, offers no support for his conclusory allegation that Officer Pimentel failed to inform him about having located the SPRINT report and audio-taped recording of his 911 call because she "was aware of, condoned, and supported the City of New York's Stop–and–Frisk–Black–people policy." (*id.* ¶¶ 83, 85–87.)

## VI. STATE LAW CLAIMS

The Court, having dismissed or entered summary judgment on all of the federal claims alleged in Plaintiff's Amended Complaint, now dismisses all of the pendent state law claims, (*see* Am. Compl. ¶¶ 94–97), alleged therein pursuant to 28 U.S.C. § 1367(c)(3). *See Pitchell v. Callan,* 13 F.3d 545, 547 (affirming district court' dismissal of pendent state law claims on basis that "[i]t is axiomatic that when all federal claims are eliminated prior to trial, a court should decline to exercise jurisdiction over any remaining pendent state claims"); *see also Carnegie–Melon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) ("[I]n the usual case in which all federallaw claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.).

## VII. CONCLUSION

**\*15** For the reasons stated above, Defendants' motion for snmmary judgment and motion to dismiss are granted. Plaintiff's Amended Complaint is hereby dismissed with prejudice.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 2419142

Footnotes

1       Plaintiff and Defendants both agree that Plaintiff was on West 123rd Street in the vicinity of Marcus Garvey Park West and Malcolm X Boulevard at approximately 11:00 a.m. on March 9, 2009. (*See* Am. Compl. at 1; Answer to Am. Compl. ("Answer") ¶ 8, ECF No. 43.) Plaintiff asserts, however, that he stopped walking in front of 10 West 123rd Street, (Am.Compl.¶ 3), whereas Officer Ueberacher stated that he observed Plaintiff standing at 6 West 123rd Street, (Decl. of Brian J. Farrar in Supp. of Mot. for Summ. J. ("Farrar Summ. J. Decl.") Ex. C ("Ueberacher Decl.") ¶ 2, July 22, 2011, ECF No. 28). Neither Plaintiff nor Defendants discuss the discrepancy between these addresses, and so the Court finds that the difference is both immaterial to resolving the issues presented here. In addition, 10 West 123rd Street and 6 West 123rd Street are both located between Marcus Garvey Park West and Malcolm X Boulevard, which is also called Lenox Avenue. In their letters and briefings, parties refer to both of these street names, but for simplicity, the Court adopts Malcolm X Boulevard as its reference.

2       Plaintiff entered the wrong date in his FOIL request as the 911 call that Plaintiff made during his encounter with Officer Ueberacher occurred on *March 9, 2009,* not on *March 10, 2009.* (*See* Am. Compl. ¶ 77.)

3       On November 16, 2012, Defendants submitted a letter to the Court, copied to Plaintiff, stating that the "NYC Parks Department ... attempted to provide Plaintiff with copies of his attendance records, pursuant to Plaintiff's April 13, 2012 FOIL request, [but] the mailing was returned to sender when Plaintiff failed to update his current address." (Nov. 16, 2012 Letter at 1.)

4       Plaintiff's original Complaint named additional defendants, but because these parties are not relevant to the disposition of Defendants' motions, they will not be discussed herein. The Court will also not recount the full procedural history of this case as it has already been set forth in previous orders. (*See, e.g.,* Order Granting Plaintiff's First Mot. to Compel (the "First Compel Order"), Jan. 4, 2012, ECF No. 36.)

5       When filed, Plaintiff's Amended Complaint named Officer Rivera and "NYPD X" as the defendants involved in the processing of his March 12, 2009 FOIL request. (Am. Compl. at 1.) Plaintiff later requested that "NYPD X" be identified as Officer Christine Pimentel. (Pl.'s Letter to the Court, July 2, 2012, ECF No. 55.) Defendants opposed this request "because the three year statute of limitations for [Plaintiff's] claim pursuant to § 1983 against Pimentel had lapsed." (Defs.' Letter to Court at 1, Aug. 10, 2012, ECF No. 56.) By Order dated November 5, 2012, this Court granted Plaintiff's request to substitute Officer Pimentel with "NYPD X" without prejudice to Defendants' Motion to Dismiss on statute of limitation grounds. (Order at 4, Nov. 5, 2012, ECF No. 59.)

6       The Court is mindful that Plaintiff is proceeding *pro se* in this civil rights action. Plaintiff's submissions will therefore be held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *see also Graham v. Henderson,* 89 F.3d 75, 79 (2d Cir.1996) ( "[T]he pleadings of a pro se plaintiff must be read liberally and should be interpreted to raise the strongest arguments that they suggest.") (internal quotation marks omitted). The Court's liberal construction of Plaintiff's submissions does not, however, relieve Plaintiff of his burden to show that his pleadings contain factual allegations sufficient to raise a "right to relief above the speculative level." *See Bridgewater v. Taylor,* 698 F.Supp.2d 351, 357 (S.D.N.Y.2010) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Nor does a party's *pro se* status relieve him from the usual summary judgment requirements. *See Lee v. Coughlin,* 902 F.Supp. 424, 429 (S.D.N.Y.1995).

7       In arriving at this conclusion, the Court does not reach the question of whether Plaintiff was standing in the courtyard of a building at 6 or 10 West 123rd Street or on the public sidewalk in front of a building at 6 or 10 West 123rd Street.

8       Because Officer Ueberacher did not violate Plaintiff's Fourth Amendment rights, there is no need to consider if Officer Ueberacher is entitled to qualified immunity.

9       Plaintiff raises this claim without identifying a specific cause of action, but the Court construes Plaintiff's claim to be made under the Fourteenth Amendment's equal protection clause. *See Graham,* 89 F.3d at 79 (emphasizing that a *pro se* plaintiff's pleadings must be read liberally and interpreted to raise strongest arguments that they suggest).

10      In addition to failing on the merits, all of Plaintiff's claims against the NYPD must be dismissed because, pursuant to New York City's Charter, the NYPD is not a suable entity. *See* N.Y. City Charter § 396. Section 396 of the Charter specifically states that "[a]ll actions and proceedings for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." *Id.; see also Williams v. New York City Police Dep't,* 930 F.Supp. 49, 54 (S.D.N.Y.1996) ("As an agency of the City of New York, the Police Department is not a suable entity."); *East Coast Novelty Co., Inc. v. City of New York,* 781 F.Supp. 999, 1010 (S.D.N.Y.1992) (dismissing claims against NYPD because district court found that New York City Charter precluded such action against the agency).

11    Additionally, even though submissions beyond the pleadings may not be considered in deciding Defendants' motion to dismiss, the Court notes in passing that Plaintiff has also not shown any causal connection between the deprivation of his constitutional rights and the City's alleged time-stamping policy or the refusal of Officer Rivera to time-stamp his FOIL request. On April 13, 2009, the NYPD FOIL Unit sent Plaintiff a letter acknowledging the submission of his March 12, 2009 FOIL request, and on August 11, 2009, the NYPD FOIL Unit sent Plaintiff a letter stating that their search had returned negative results. (*See* Feb. 23, 2012 Letter Ex. B.) These facts show that the City responded appropriately to Plaintiff's FOIL request.

---

**End of Document**                                                    © 2017 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 952540
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Reginald SONDS, Plaintiff,

v.

Andrew M. CUOMO, et al., Defendants.

No. 9:11–CV–895 (NAM/ATB).
|
Feb. 3, 2012.

**Attorneys and Law Firms**

Reginald Sonds, pro se.

James Seaman, Asst. Attorney General for Defendants.

### REPORT–RECOMMENDATION

ANDREW T. BAXTER, United States Magistrate Judge.

 **\*1** This matter has been referred to me for Report and Recommendation by the Honorable Norman A. Mordue, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c). Plaintiff brought this action under the Freedom of Information Act [1] (FOIA), seeking "to compel disclosure ... of the names and business addresses of the employees of New York Department of Correctional Services Coxsackie Correctional Facility." (Compl.¶ 1). Plaintiff also seeks a declaratory judgment "declaring that the names and addresses of each and every employee of [the] Office of the Counsel New York State DOCS and Coxsackie Correctional Facility in any regional office or territory is nonexempt and subject to disclosure." (Compl.¶ 20B).

Presently before the court is defendants' motion for an order denying plaintiff's *in forma pauperis* (IFP) status pursuant to 28 U.S.C. § 1915(g), and to dismiss this complaint pursuant to Fed.R.Civ.P. 12(b)(1), (2), (5), and (6). (Dkt. No. 3). For the following reasons, this court agrees that plaintiff has at least three "strikes," and will recommend denying plaintiff's IFP status. In addition, because this case would fail to state a claim, this court will recommend dismissing the case in its entirety with prejudice.

## I. *"Three Strikes" Provision of the PLRA*

### A. Legal Standards

The "three strikes" section of the PLRA prohibits the filing of an action *in forma pauperis* when the plaintiff has had federal actions or appeals dismissed on at least three prior occasions, either for failure to state a claim or for frivolousness. 28 U.S.C. § 1915(g). The purpose of section 1915(g) is to "stem the tide of egregiously meritless lawsuits" by "forcing prisoners to go through the same thought process non-inmates go through before filing a suit, *i.e.* is filing this suit worth the costs?" *Tafari v. Hues,* 473 F.3d 440, 443 (2d Cir.2007) (citations omitted).

Section 1915(g) provides that:

> [i]n no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding [*in forma pauperis* ] if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

An action may be dismissed pursuant to section 1915(g), even if the court originally granted plaintiff *in forma pauperis* status. *See, e.g., Gamble v. Maynard,* 9:06–CV–1543 (DNH/DEP), 2008 WL 150364, at \*5, 2008 U.S. Dist. LEXIS 2621 (N.D.N.Y. Jan. 14, 2008) (conditionally dismissing complaint under section 1915(g) and finding that *in forma pauperis* status was improvidently granted); *Luevano v. Clinton,* 5:10–CV–754 (GTS/ATB), 2010 WL 3338704, at \*3, 2010 U.S. Dist. LEXIS 86273 (N.D.N.Y. July 1, 2010). An action is "frivolous" for purposes of the statute if it " 'lacks an arguable basis either in law or in fact.' " *Id.* at 442 (citation omitted). In determining whether a dismissal satisfies the failure to state a claim prong of the statute, courts have drawn upon the provisions of Fed.R.Civ.P. 12(b)(6) for guidance, in light of the similarity in phrasing utilized in the two provisions. *Id.* The three strikes provision applies to cases

that were dismissed for failure to state a claim or for frivolousness even prior to the 1996 enactment of section 1915(g). *Welch v. Galie,* 207 F.3d 130, 132 (2d Cir.2000).

**\*2** A dismissal cannot count as a strike until after the opportunity to appeal has been exhausted or waived. *See, e.g., Partee v. Connolly,* 08 Civ. 4007, 2009 WL 1788375, at *2, 2009 U.S. Dist. LEXIS 54645 (S.D.N.Y. June 23, 2009) (collecting cases). If a district court dismisses an action on a ground specified in section 1915(g), and an appellate court simply affirms, together the decisions constitute a single strike. *Id.; Thompson v. Drug Enforcement Admin.,* 492 F.3d 428, 436–37 (D.C.Cir.2007). However, when a district court dismisses an action for any of the reasons set forth under the three strikes statute, and if the subsequent appeal is dismissed as frivolous, then the two decisions count as separate strikes. *Chavis v. Chappius,* 618 F.3d 162, 169 (2d Cir.2010) ("sequential dismissals on strike grounds can provide separate strikes under § 1915(g)").

If plaintiff has three strikes, section 1915(g) prevents plaintiff from filing a subsequent action *in forma pauperis* unless the plaintiff is under imminent danger of serious physical injury. 28 U.S.C. § 1915(g). This exception to section 1915(g) has been interpreted to apply only if the plaintiff faces imminent danger of serious physical injury "at the time the complaint is filed." *Malik v. McGinnis,* 293 F.3d 559, 562–63 (2d Cir.2002).

### B. Application

On September 20, 2001, District Court Judge Reena Raggi dismissed an action filed by plaintiff in the Eastern District of New York. *Sonds v. Davis,* No. 01–CV–4319, 2001 WL 1328424, at *2, 2001 U.S. Dist. LEXIS 17582, at *5–7 (E.D.N.Y. Sept.20, 2001). Judge Raggi explained that she had previously dismissed three actions filed by plaintiff based on failure to exhaust administrative remedies and failure to state a claim, and these dismissals were thus "strikes" for the purposes of section 1915(g). *Id.* Judge Raggi also dismissed *Sonds v. Davis,* No. 01–CV–4319 as frivolous, for failing to state a claim, and because many of the named defendants were immune from suit. *Id.* Judge Raggi further certified, under section 1915(a)(3), that any appeal from that order would not be taken in good faith. *Id.* at *7.

On September 21, 2010, plaintiff filed an action in the Northern District of New York against various prison officials. *Sonds v. Fischer, et al.,* No. 10–CV1130

(TJM/RFT) (N.D.N.Y.) Judge McAvoy denied plaintiff's application to proceed *in forma pauperis,* holding that the three actions dismissed by Judge Raggi in the Eastern District of New York constituted strikes pursuant to section 1915(g). *Id.*

This court agrees with Judge Raggi and Judge McAvoy that plaintiff has at least three "strikes" pursuant to section 1915(g). In addition, because Judge Raggi's September 20, 2001 order also dismissed plaintiff's action as frivolous and for failing to state a claim, it counts as an additional "strike." Because plaintiff has four previous actions that were dismissed for failure to state a claim, plaintiff is thus barred from filing this action *in forma pauperis.*

**\*3** An exception to a three-strikes bar exists if plaintiff can establish that he was "under imminent danger of serious physical injury" when he commenced this action. 28 U.S.C. § 1915(g). When evaluating whether a plaintiff is under "imminent danger," courts consider "(1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is *fairly traceable* to unlawful conduct asserted in the complaint, and (2) whether a favorable judicial outcome would *redress* that injury." *Pettus v. Morgenthau,* 554 F.3d 293, 298–99 (2d Cir.2009). Plaintiff alleges no danger of physical harm, and the relief sought (names and addresses of "each and every employee of Office of the Counsel [sic], state Campus Building 2[sic], New York State DOCS, and Coxsackie [Correctional Facility] located in Albany, N.Y. and Coxsackie N.Y." (Compl.¶ 20A)) would redress no physical injury. Accordingly, the imminent danger exception does not apply, and plaintiff's application to proceed *in forma pauperis* should be denied.

Generally, a dismissal based upon the three strikes provision of the PLRA involves denying or revoking IFP, but giving plaintiff the opportunity to pay the $350.00 filing fee prior to dismissal of the action. *See Ortiz v. McBride,* 380 F.3d 649, 659 n. 7 (2d Cir.2004). However, a review of the merits shows that the court need not give plaintiff this option, because the action would be dismissed for failure to state a claim, even if plaintiff paid the filing fee.

### II. *FOIA Request*
FOIA empowers district courts to enjoin an agency from withholding agency records that have been

improperly withheld. 5 U.S.C. § 552(a)(4)(B). "Agency" is been defined as "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency." 5 U.S.C. § 552(f)(1). In addition, for the purposes of the FOIA, "agency" is defined to refer to only *federal* agencies. 5 U.S.C. § 551(1). Plaintiff is seeking materials from *state* agencies, not federal agencies, and thus cannot state a viable FOIA claim.

It appears that the state agencies treated plaintiff's request as one brought under the New York State Freedom of Information Law (FOIL), which is the appropriate method for requesting material from *state* agencies. (Pl.'s Ex. B; *see also* N.Y. Pub. Off. Law § 89. The New York FOIL specifies that when an administrative appeal is denied by a state agency, the plaintiff may challenge that denial by bringing a proceeding pursuant to Article 78 of the New York Civil Practice Law and Rules. N.Y. Pub. Off. Law § 89(4)(b); *see also Schuloff v. Fields,* 950 F.Supp. 66, 67–68 (E.D.N.Y.1997) ("The appropriate vehicle for challenging denials of access guaranteed by the New York Freedom of Information Law is a state court proceeding pursuant to N.Y. C.P.L.R. Article 78 upon exhaustion of administrative remedies."). Plaintiff's state FOIL request cannot be the basis of a federal action. *Id.* (a federal district court "does not have jurisdiction to decide whether defendant violated a state law granting the public access to official records").

**\*4** Normally, when a plaintiff fails to state a claim, the court would allow plaintiff the opportunity to amend the complaint prior to dismissing the case. *See Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) ("A *pro se* complaint 'should not [be] dismiss[ed] without [the Court] granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991))). However, a " 'district court

need not grant a *pro se* plaintiff leave to amend if it can rule out any possibility, however unlikely it might be, that an amended complaint would succeed.' " *Lesch v. United States,* 372 F. App'x 182, 183 (2d Cir.2010) (citing *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000)). Nothing in plaintiff's complaint gives any indication that it could be amended to state a viable federal claim. [2] Accordingly, plaintiff's complaint should be dismissed with prejudice without leave to amend.

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that plaintiff's motion to proceed IFP (Dkt. No. 2) be **DENIED** based on 28 U.S.C. § 1915(g), and it is further

**RECOMMENDED,** that defendants' Motion to Dismiss (Dkt. No. 3) be GRANTED, and that plaintiff's complaint be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** pursuant to Fed.R.Civ.P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B)(i)-(ii) and it is further

**RECOMMENDED,** that if the District Court approves this recommendation, the court certify that any appeal from this matter would not be taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec. of Health & Human Servs.,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), 6(e), 72.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 952540

### Footnotes

1    5 U.S.C. § 552(a)(4)(B).

2    Even if plaintiff were to attempt to recast his claims in constitutional terms under 42 U.S.C. § 1983, "defendants' failure to provide ... requested documents [would] not amount to a constitutional violation." *See, e.g., Blount v. Brown,* No. 10–CV–1548, 2010 WL 1945858, at \*2, 2010 U.S. Dist. LEXIS 47406, at \*6 (E.D.N.Y. May 11, 2010) (the alleged failure to provide documents requested under FOIL failed to state a due process claim cognizable under Section 1983); *Lawrence*

*v. Antonucci,* No. 04–CV–356, 2005 WL 643457, at \*3–4, 2005 U.S. Dist. LEXIS 38777, at \*8–13 (W.D.N.Y. Mar. 16, 2005).

---

**End of Document**                                      © 2017 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Report and Recommendation Adopted as Modified by Whitfield v. Imperatrice, E.D.N.Y., March 9, 2011

2010 WL 6032636
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

John WHITFIELD, Plaintiff,

v.

Chief Clerk James F. IMPERATRICE,
Chief Clerk Edward J. Volpe, Ellen Neri,
Barbara Zahler–Gringer, Sherrill Spatz,
Donna Johnson, James Russo, Jonathan

David, John/Jane Does, Defendants. [1]

No. 08 CV 3395(CBA)(LB).
|
Sept. 17, 2010.

**Attorneys and Law Firms**

John Whitfield, Woodbourne, NY, pro se.

Roberta Lynne Martin, New York State Office of the Attorney General, Jeffrey S. Dantowitz, the City of New York Law Department, New York, NY, for Defendants.

## REPORT & RECOMMENDATION

BLOOM, United States Magistrate Judge.

 **\*1** Plaintiff brings this *pro se* action pursuant to 42 U.S.C. § 1983. The allegations in the amended complaint [2] arise from requests that plaintiff made to defendants in April and August of 2008 for the case file, sentencing minutes and criminal records of Richard Doyle, who was convicted for assault and criminal use of a firearm in 1982. (*See* Amended Complaint ("Am.Compl.") document 8.) Plaintiff alleges that his requests were "completely ignored" by defendants, and as a result, he was unconstitutionally denied access to the courts. Plaintiff further claims that defendants retaliated against him in violation of his rights under the First and Fourteenth Amendments, conspired to deny him access to the courts, and violated State Judiciary Law §§ 255, 301 by failing to process his requests. Defendants James

Imperatrice, Edward Volpe, Ellen Neri, Barbara Zahler–Gringer, Sherrill Spate, Donna Johnson, and John/Jane Does (collectively "State defendants") move for summary judgment [3] (document 68); defendants James Russo and Jonathon David (collectively "City defendants") move to dismiss (document 76); and plaintiff cross moves for summary judgment (document 61). Plaintiff also moves: to amend the complaint for a second time (document 43); for contempt (document 87); and to compel discovery (document 94). The motions have been referred to me for Report and Recommendation in accordance with 28 U.S.C. § 636(b). It is respectfully recommended that defendants' motions should be granted and that plaintiff's motions should be denied for the following reasons.

## BACKGROUND

Unless otherwise stated, the facts are taken from plaintiff's amended complaint. (Document 8.)

**Plaintiff's Requests to the State Defendants**
In April and May of 2008, plaintiff filed a request with Kings County Supreme Court for the criminal case file of Richard Doyle, who was convicted in 1982 for assault and criminal use of a firearm, as well as for a certificate of disposition for that case. (Am.Compl.¶¶ 19, 22). Plaintiff also requested a transcript of Mr. Doyle's sentencing hearing from 1983 from the court reporter's office. (*Id.* ¶ 23.) Plaintiff sought these materials to support his New York Criminal Procedure Law ("NYCPL") § 440.10 motion, filed on June 6, 2008 in Kings County Supreme Court, to vacate his 1989 conviction for murder. (Plaintiff's Memorandum of Law in Support of his Opposition to City Defendants' Motion to Dismiss ("P's City Opp.").)

Plaintiff waited approximately one month for a response to each of his requests. After no response was received, plaintiff submitted the following: (1) a complaint to Chief Administrative Judge Pfau dated May 6, 2008 regarding his request to the court reporter's office; (2) a May 19, 2008 letter to the court's "Criminal Term Correspondence Unit"; (3) a June 3, 2008 Article 78 petition seeking to compel the court's principal court reporter, Ellen Neri, to produce the sentencing minutes; (4) letters dated June 22, 2008 to the Chief Clerks of King's County Supreme Court's Criminal and Civil Terms; and (5) a complaint

to Sherrill Spatz, Inspector General of the Office of Court Administration, dated July 15, 2008 requesting an investigation into the matter. (Am.Compl.¶¶ 20–26.)

**\*2** On June 19, 2008, defendant Barbara Zahler–Gringer, Counsel for Administration and Operations for the New York State Office of Court Administration, responded to plaintiff's requests stating, "Kings County Supreme Court received your request, and is still reviewing its records to determine how it has been processed." (*Id.* ¶ 20.) On August 5, 2008, the clerk's office sent plaintiff's Article 78 petition back to him with the following notation: "we are returning your papers. As a defendant in a criminal case, Mr. Richard Doyle will have to request and pay for his own stenographic minutes." (*Id.* ¶ 28.) Ms. Spatz's office informed plaintiff on August 10, 2008 that they had received his grievance letter and that they were forwarding the matter to the Kings County Supreme Court Chief Clerk, James Imperatrice, for review. (*Id.* ¶ 26.) That same day, defendant Senior Court Clerk, Donna Johnson, sent plaintiff a letter, which he excerpts as follows: "[The court has received] your letter addressed to Sherrill Spatz [ ] as well as [other letters addressed to the court] ... the cost for photocopying of all documents relating to Richard Doyle, indictment number 1883–1982 is $22.75." (*Id.* ¶ 30.) Plaintiff sent the court a check for that amount on August 18, 2008. [4] (*Id.*) Plaintiff alleges that at the time he filed his amended complaint herein, his requests, the follow-up inquiries regarding those requests, and his Article 78 petition remained "unresolved." (*Id.* ¶ 33.)

**Plaintiff's Requests to the City Defendants**

On August 5, 2008, plaintiff filed a Freedom of Information Law ("FOIL") request with defendant James Russo, a record access officer with the New York City Police Department's FOIL Unit, seeking "to purchase all records involving Richard Doyle's arrest and conviction...." (*Id.* ¶¶ 9, 29.) On August 25, 2008, plaintiff filed an appeal of what he describes as an "apparent constructive denial" of his FOIL request to defendant Jonathon David, the Record Access Appeal Officer of NYPD's FOIL Unit. (*Id.* ¶ 32.) According to plaintiff, the City defendants had not responded to either of these submissions by the time he filed his amended complaint. (*Id.*)

**Plaintiff's Claims for Relief**

Plaintiff claims that by failing to comply with his requests for records and transcripts pertaining to Mr. Doyle's criminal case, and by failing to file his Article 78 petition, defendants denied him meaningful access to the courts in violation of the First and Fourteenth Amendments.

Plaintiff further claims that defendants retaliated against him in violation of the First and Fourteenth Amendments, conspired to deny him access to the courts, and violated State Judiciary Law §§ 255, 301 by failing to process his requests. Plaintiff seeks injunctive relief in the form of an order compelling defendants to (1) produce the requested documents, (2) process his Article 78 petition, (3) "create and enforce a policy that will prevent court clerk employees from returning litigants' moving papers in retaliation for filing complaints with high ranking court officials of the Office of Court Administration," and (4) "institute a policy that safeguards litigants from conspiratorial efforts of court clerk and court reporter employees seeking to deny citizens access to court documents [ ]." Plaintiff further seeks an injunction compelling the United States Attorney's Office [5] to investigate the Kings County Supreme Court, the NYPD FOIL Unit, and the Kings County District Attorney's Office for denying plaintiff his "constitutional right not to be retaliated against for filing grievances to high-ranking judicial officials...." Plaintiff seeks $1,336,000 in compensatory damages and $3,340,000 in punitive damages. [6]

**Procedural History**

**\*3** The Court held an initial telephonic conference in this action on January 14, 2009. [7] The Court set the deadline for the parties to complete all discovery, granted the state defendants' request for permission to move for summary judgment, and scheduled the motion. (Document 28.) Following the initial conference, the Court directed the United States Marshals to serve the City defendants, who were not named as defendants until the amended complaint. (*See* document 27.)

On March 24, 2009, plaintiff moved to amend his complaint for a second time. (Document 43.) All defendants requested that the Court stay any decision on plaintiff's motion to amend pending their motions to dismiss and for summary judgment. (Documents 50– 51.) The Court granted the requests, but directed the City defendants to address both the amended complaint

and plaintiff's motion for leave to file a second amended complaint in their motion to dismiss. (Document 53.) The Court ordered the State defendants to oppose the motion to amend in a separate filing. (*Id.*)

State defendants now move for summary judgment (document 68); City defendants move to dismiss pursuant to Fed.R.Civ.P. 12(b) (1) and 12(b)(6) (document 76); and plaintiff cross moves for partial summary judgment (document 61). The parties have opposed each other's motions, and filed replies.

## DISCUSSION

### I. CITY DEFENDANTS' MOTION TO DISMISS

#### *a.* **Standards of Review**

The standards of review for a motion to dismiss under Rule 12(b) (1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim are "substantively identical." *Lerner v. Fleet Bank. N.A.,* 318 F.3d 113, 128 (2d Cir.2003). On a motion to dismiss under 12(b)(1), however, the party invoking the court's jurisdiction bears the burden of proof to show that subject matter jurisdiction exists, while the movant bears the burden of proof on a motion to dismiss under Rule 12(b) (6). *Id.* A court, reviewing a motion to dismiss must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)); *Koppel v. 4987 Corp.,* 167 F.3d 125, 130 (2d Cir.1999). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* ––– U.S. ––––, ––––, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). To survive a motion to dismiss, plaintiff must do more than allege facts that are "merely consistent with a defendant's liability," *Iqbal,* 129 S.Ct. at 1949, or "speculative," *Twombl y,* 550 U.S. at 555, he must allege facts that "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (quoting *Twombly,* 550 U.S. at 556)). If a plaintiff does not "nudge [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly,* 550 U.S. at 569. Nonetheless, "[a] document filed pro se is 'to be liberally

construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." ' *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)); *see also Bertin v. United States,* 478 F.3d 489, 491 (2d Cir.2007) ("We liberally construe pleadings and briefs submitted by pro se litigants, reading such submissions 'to raise the strongest arguments they suggest.' ") (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994)) (other citations omitted).

**\*4** Furthermore, "[a] court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first," *Amidax Trading Group v. S.W.I.F.T. SCRL,* 607 F .Supp.2d 500, 503 (S.D.N.Y.2009) (citing *Adamu v. Pfizer. Inc.,* 399 F.Supp.2d 495, 500 (S.D.N.Y.2005) (internal quotation omitted), "because dismissal under Rule 12(b)(6), i.e., for failure to state a claim, is an adjudication on the merits with preclusive effect," *id.* (citing *Alliance for Envtl. Renewal. Inc. v. Pyramid Crossgates Co.,* 436 F.3d 82, 88 n. 6 (2d Cir.2006)); *see also Wynn v. AC Rochester.* 273 F.3d 153, 157 (2d Cir.2001) (the Court must first decide that it has subject matter jurisdiction before adjudicating any matter in the case). In considering a motion to dismiss, the Court may consider documents attached to the pleadings or documents incorporated by reference therein. *Gregory v. Daly,* 243 F.3d 687, 691 (2d Cir.2001).

#### *b.* **Plaintiff's Claims Against the City Defendants**

Plaintiff alleges that on August 5, 2008, he filed a request pursuant to New York's Freedom of Information Law [8] with defendant James Russo, a Records Access Officer with the NYPD, seeking "all records involving Richard Doyle's arrest and conviction under indictment # 01883–82." (Am.Compl.¶ 29.) Twenty days later, when plaintiff had not received the 26–year–old records that he had requested, he filed an appeal to defendant Jonathon David, Record Access Appeal Officer with the NYPD's FOIL Unit, challenging what plaintiff characterizes as "the apparent constructive denial of his August 5, 2008 FOIL request." (*Id.* ¶ 32.) Plaintiff claims that at the time he filed his Amended Complaint, he had not received an answer to this appeal. Plaintiff alleges that by failing to timely act, the City defendants denied him access to the courts in violation of the First and Fourteenth Amendments, and conspired with members of the Kings

County District Attorney's Office to deny him this access. (*Id.* ¶ 44, 65, 74.)

Plaintiff further alleges that on June 6, 2008, he filed a motion to vacate his 1989 murder conviction, pursuant to New York Criminal Procedure Law § 440.10 ("440 Motion"). (*Id.* ¶ 24.) Respondents opposed that motion on August 5, 2010, the same day that plaintiff filed his FOIL request with defendant Russo. (*Id.* ¶ 29.) Plaintiff opposes the City's motion and argues that the documents he sought in his FOIL request, the criminal records involving Doyle, were exculpatory and would have allowed him to prevail on his 440 motion.[9] Plaintiff alleges that Doyle, not plaintiff, shot and killed the victim. (P's City Opp. at 6.) Plaintiff called Doyle at his 1989 murder trial to testify regarding, among other things, Doyle's involvement in an earlier shooting in 1982 in which the murder victim allegedly identified Doyle as one of the four individuals who shot him. (*Id.*) Plaintiff argues the criminal records will show that Doyle lied on the stand when he stated that he did not shoot anyone during the 1982 incident, and that the prosecution knew he lied, but did not correct his false testimony. (Affidavit in Support of Plaintiff's Opposition to City Defendants' Motion to Dismiss ("P's City Aff.") ¶ 21.) Therefore, plaintiff argues, by denying him "prompt access" (*id.* ¶ 22) to Doyle's records, the City defendants "thwarted vindication of plaintiff's prosecutorial misconduct claims" and denied him meaningful access to the courts. (P's City Opp. at 7.)

### c. Access to the Courts

**\*5** The Constitution guarantees individuals meaningful access to the courts, a right that extends to state prisoners under the First and Fourteenth Amendments. *Lewis v. Casey,* 518 U.S. 343, 354, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996) (recognizing a particular application to those prisoners who are defending themselves against criminal charges, attacking their convictions or sentences, or alleging civil rights violations pertaining to the conditions of their confinement); *Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

In *Christopher v. Harbury,* 536 U.S. 403, 122 S.Ct. 2179, 153 L.Ed.2d 413 (2002), the Supreme Court identified two categories of claims regarding access to the courts. The first category applies to claims where "systematic official action" prevents an individual from preparing or filing suit at that time, but does not necessarily preclude future

access to litigate the claim. *Id.* at 413. The most common example of this first category is where a prisoner is denied access to a law library. The remedy for systematic action is to improve the condition which has frustrated the litigant's access. *Id.* The second category applies to claims, such as plaintiff's claim here, where individual cases can no longer be heard because the official action or condition caused the "loss or inadequate settlement of a meritorious case ... or the loss of an opportunity to seek some particular order of relief." *Id.* at 414. The typical remedy in this latter "backward-looking" claim is to award relief for the denial of access where the underlying claim has otherwise been foreclosed. *Id.*

To bring a denial-of-access claim, a plaintiff must allege that he suffered actual injury by being blocked from the courts. *Id.* at 415. Therefore, plaintiff's complaint must identify a separate, "ancillary" legal claim that has been thwarted or prejudiced by the alleged denial, and that is "non-frivolous" and "arguable" in nature. *Id.* The plaintiff must set forth ample facts in the pleadings to suggest that success in the underlying claim is founded on more than mere "hope," *id.,* and point to deliberate and malicious acts by the defendants that frustrated his efforts to commence or prosecute that case. *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir.2003). Moreover, the Court will not recognize an access claim where the same remedy sought in the underlying claim could otherwise be obtained in another suit. *Christopher,* 536 U.S. at 415 ("There is, after all no point in spending the time and money to establish the facts constituting denial of access when a plaintiff would end up just as well off after litigating a simpler case without the denial-of-access element.").

The City defendants move pursuant to Fed.R.Civ.P. 12(b)(1) to dismiss plaintiff's denial-of-access claim for lack of subject-matter jurisdiction. They argue that plaintiff is simply "federalizing" a "garden-variety claim that the City Defendants wrongfully denied his FOIL request" and that the Court lacks jurisdiction to hear what is essentially a purely state law claim. (City Defendants' Memorandum of Law in Support of Motion to Dismiss ("City Motion") at 5.) The City defendants assert that plaintiff fails to state how their conduct prevented him from "appearing in criminal court and seeking appropriate relief there" and that a failure to comply with FOIL procedures alone does not give rise to a First Amendment claim. (*Id.* at 6.)

**\*6** Although plaintiff's memorandum in opposition to the City's motion fully explains the theory behind his denial-of-access claim (see discussion of the underlying 440 motion *supra* ), the allegations in his amended complaint are relatively sparse. The amended complaint alleges that plaintiff filed the 440 motion on August 5, 2008, but makes no further mention of this motion until section VII where he alleges that the City defendants "conspired with the Kings County District Attorney's Office to prevent plaintiff from getting access to court documents and criminal records that would bolster the egregious prosecutorial misconduct claim raised in plaintiff's post conviction motion, thereby obstructing and wholly preventing plaintiff's unlawful conviction from being vacated ... and injuring plaintiff in the exercise of his right to access the court and to petition the government for the redress of grievances...." (Am.Compl.¶ 59.) In contrast, section VI, where plaintiff alleges he was denied access to the courts, makes no mention of the 440 motion, and bases the denial-of-access claim solely on defendants' failure to produce the requested records. In fact, paragraph 38 enumerates the specific "underlying" causes of action that plaintiff claims have been thwarted, but fails to cite the 440 motion at all. (*See* Am. Compl. ¶ 38 ("[P]laintiff has lost several remedies (i.e. access to Doyle's criminal conviction records and the right to compel the defendants [ ] to disclose these court records and stenographic sentencing minutes pursuant to CPLR Article 78.)").) [10]

Even though affording the complaint the liberal construction it is due because of plaintiff's *pro se* status, it fails to state a claim for denial of access. Plaintiff must allege actual injury separate and apart from the claim that he was refused access to court records. *See Christopher,* 536 U.S. at 414–15 ("[T]he very point of recognizing any access claims is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong ... our cases rest on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."); *see also Rodriguez v. Diaz,* No. 05 Civ. 1831, 2010 U.S. Dist. LEXIS 45044 (S.D.N.Y. May 5, 2010) (denying plaintiff's motion to supplement the complaint, as the new allegations "refer not to the filing or maintaining of a lawsuit, but rather to the plaintiff's efforts to obtain certain documents"). Plaintiff's allegations incorrectly claim that the City defendants' failure to comply with his FOIL request, in and of itself, denied him access to

the courts. Plaintiff's amended complaint fails to allege that denial of the FOIL material prejudiced his 440 motion; he first alleges this in his opposition brief. The City defendants' motion to dismiss plaintiff's access-to-the-courts claim should therefore be granted as plaintiff's complaint fails to state a claim. [11]

### d. Retaliation Claim

**\*7** Plaintiff's second cause of action alleges that defendants retaliated against him in violation of the First and Fourteenth Amendments. (Compl.§ VII.) Plaintiff claims that defendants failed to process his Article 78 petition (*id.* ¶ 50), and refused to send plaintiff "copies of the 91 court documents plaintiff purchased for $22.75," (*id.* ¶ 53), in retaliation for his "filing complaints with the Office of Court Administration ..." (*id.* ¶ 50). However, this retaliation claim identifies acts which allegedly occurred in State court, and which could only have been committed by the State defendants. Further, although plaintiff alleges that the "above named defendants" committed unlawful retaliatory acts, plaintiff's allegations specifically name defendants Volpe, Johnson, and the John/Jane Does of the Kings County Supreme Court Civil Term Unit—all of which are State, not City, defendants. (*Id.* ¶¶ 50–55.) Therefore, the Court construes plaintiff's retaliation claim against only the State defendants, not the City defendants. Accordingly, plaintiff's retaliation claim against the City defendants should be dismissed.

### e. Conspiracy Claim

Plaintiff alleges that the defendants and the Kings County District Attorney's Office ("DA") conspired to deny him access to court documents and criminal records in order to prevent him from prevailing in his 440 motion, and to cover up the "wrongdoings" of the District Attorney's Office. (*Id.* ¶ 59.) Plaintiff claims that the City defendants agreed with the DA to "suppress" the records of Mr. Doyle's 1982 criminal conviction, as sought by plaintiff in his August 5, 2008 FOIL request, but disclosed the criminal records of Mr. Doyle's 1989 criminal matter, which was the subject of a separate FOIL request filed on May 20, 2008. (*Id.* ¶ 65.) The first of these FOIL requests was processed within two months time; while the second was not.

Plaintiff maintains that the timing and treatment of the two requests, one submitted before and one submitted

after his 440 motion was filed, create an inference of conspiracy.

In order for plaintiff's § 1983 conspiracy claim to survive a motion to dismiss, "a plaintiff must allege (1) an agreement between two or more state actors [or between a state actor and a private entity][12] (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Hernandez v. Goord,* 312 F.Supp.2d 537, 545–46 (S.D.N.Y.2004) (citing *Ciambriello v. County of Nassau,* 292 F.3d 307, 324–25 (2d Cir.2002)). However, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Dwares v. City of N.Y.,* 985 F.2d 94, 100 (2d Cir.1993) (citations, internal quotation marks, and internal alterations omitted).

**\*8** Plaintiff's conspiracy claim is highly speculative, particularly his allegation that defendants acted or failed to act on his two FOIL requests because he filed his 440 motion. However, "conspiracies are by their very nature secretive operations, and may have to be proven by circumstantial, rather than direct, evidence." *Pangburn,* 200 F.3d at 72 (citing *Rounseville v. Zahl,* 13 F.3d 625, 632 (2d Cir.1994)). Even if plaintiff's complaint sufficiently alleges a conspiracy, which it does not, plaintiff's conspiracy claim should be dismissed because it fails to state a claim that he was denied access to the courts. The actual violation of one's constitutional right is a "natural prerequisite to a claim of conspiracy to violate such right." *Romer v. Morgenthau,* 119 F.Supp.2d 346, 363 (S.D.N.Y.2000). "Thus, if a plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." *Id.* As plaintiff's complaint fails to state a claim that he was denied access to the courts, plaintiff's conspiracy claim regarding denial of access should be dismissed.

### f. Motion to Amend and Leave to Replead

On March 24, 2009, plaintiff moved to amend his complaint for a second time. (Document 43.) However, in his affidavit in opposition to City defendants' motion (document 77), plaintiff states: "I respectfully request to withdraw my pending proposed second amended

complaint (see Docket Entry # 43), and be permitted to replace it with an amended complaint that includes the above noted overt acts demonstrating that the city defendants violated my constitutional rights." Plaintiff's request to withdraw his proposed second amended complaint is granted, and the motion to amend should be terminated as withdrawn. (Document 43.)

Generally, "when addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter,* 284 F.3d 411, 416 (2d Cir.2002) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). However, the Court may deny leave to amend where the amendment would be futile. *Lucente v. IBM,* 310 F.3d 243, 258 (2d Cir.2002) ("Where it appears that granting leave to amend is unlikely to be productive, however, it is not an abuse of discretion to deny leave to amend.") (quoting *Ruffolo v. Oppenheimer & Co.,* 987 F.2d 129, 131 (2d Cir.1993) (per curiam)). Furthermore, the Court need not grant a motion to amend the complaint where the claim would "immediately be subject to dismissal on a motion for summary judgment." *Stoner v. N. Y. City Ballet Co.,* No. 99 Civ. 0196, 2002 U.S. Dist. LEXIS 5921 (S.D.N.Y. Apr. 8, 2002). As discussed below, any attempt to replead plaintiff's complaint to include the "overt acts" plaintiff alludes to in his affidavit (see P's City Aff. ¶ 35) would be futile, and therefore the Court should deny leave to amend.

**\*9** An action for denial of access to the courts requires the plaintiff to show that a defendant's conduct "materially prejudiced a legal action he sought to pursue." *Smith v. O'Connor,* 901 F.Supp. 644, 649 (S.D.N.Y.1995). "Mere delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Ahlers v. Grygo,* No. 02–CV–3256, 2009 U.S. Dist. LEXIS 20317 (E.D.N.Y. Mar. 13, 2009) (quoting *Davis v. Goord,* 320 F.3d 346, 352 (2d Cir.2003)). It is evident from material submitted by both plaintiff and the City defendants that any alleged failure by the City defendants to "promptly" respond to plaintiff's FOIL request did not materially prejudice his 440 motion, it merely caused delay.

According to plaintiff, he received an initial response to his FOIL request on October 6, 2008, stating that due to the large volume of FOIL requests, a determination of his

request would not be made until December 8, 2008. (Letter from defendant James Russo, dated 10/6/08, attached to P's City Opp. as Exhibit 26.) Plaintiff further states that the material sought in his FOIL request was eventually made available on February 19, 2009. (P's Aff. ¶ 14.) Although plaintiff clearly sought a prompter response to his FOIL request, he was eventually provided the materials that he sought. Plaintiff claims that his FOIL request "was not [timely] answered in compliance with Public Officers Law § 89." However, even if this is true, this does not establish a constitutional violation.

Moreover, the trial court ultimately denied plaintiff's 440 motion not because plaintiff failed to produce the "new evidence" sought from defendants herein, but because the issues raised in the motion should have been decided on direct appeal. (Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 ("P's 56.1 Response") ¶ 43.) The Honorable Deborah A. Dowling, Kings County Supreme Court, denied the motion and stated:

> "While the defendant raises numerous issues concerning the trial tactics employed by the prosecution, there exists nothing in the moving papers to suggest any unethical conduct occurred .... the issues proffered by the defendant as new evidence relate to the credibility of a trial witness. However, the trial transcripts reveal that the witness' credibility was the subject of significant scrutiny during the trial and *this Court is not convinced that the purported new evidence would have had any impact in favor of the defendant* with respect to the jury's verdict."

*People of the State of New York v. John Whitfield,* Ind. No. 2132/89 (Kings Cty. Sup.Ct. Oct. 21, 2008) ("440 Decision") (emphasis added) (attached to Plaintiff's Cross Motion for Partial Summary Judgment, document 61, as Exhibit 20). [13]

Plaintiff argues that Justice Dowling's decision is of no consequence because, "the determination was contrary to, and involved an unreasonable application of, clearly

established Federal law ..." (Plaintiff's Memorandum of Law in Support of his Opposition to Defendants' Motion for Summary Judgment at 12, n. 2.) However, plaintiff's recitation of the standard of review for habeas corpus relief under 28 U.S.C. 2254(d)(1) is inapposite here. Plaintiff argues that the City defendants prejudiced his 440 motion by not promptly producing the records sought in his FOIL request. However, the 440 decision makes clear that even if he had submitted all of the requested FOIL documents with his 440 motion, the motion would have likely been denied. Plaintiff's denial-of-access claim would therefore fail, even if he was afforded leave to amend, because he cannot demonstrate that the underlying claim is "arguable" in nature. *See Christopher,* 536 U.S. at 415. Accordingly, the City defendants' motion to dismiss should be granted, plaintiff's motion to amend should be terminated as withdrawn, and plaintiff should be denied leave to replead his complaint.

## II. THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT

### a. Standard of Review

**\*10** Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the non-moving party.' " *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 202 (2d Cir.2007) (quoting *Anderson,* 477 U.S. at 248); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.,* 221 F.3d 394, 398 (2d Cir.2000); *see also Baker v. The Home Depot,* 445 F.3d 541, 543 (2d Cir.2006) (resolving all ambiguities and drawing all inferences in favor of the nonmoving party on summary judgment).

However, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." *Fed.R.Civ.P. 56(e)(2).* In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. *Anderson,* 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Niagra Mohawk Power Corp. v. Jones Chem., Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagra,* 315 F.3d at 175 (quoting *Anderson,* 477 U.S. at 252). Here, because plaintiff is proceeding pro se, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." *Brownell v. Krom,* 446 F.3d 305, 310 (2d Cir.2006) (quoting *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 50 (2d Cir.2003) (internal quotations omitted)).

### b. Denial–of–Access and Conspiracy Claims

Plaintiff's denial-of-access and conspiracy claims against the State defendants should be dismissed largely for the same reasons plaintiff's claims against the City defendants should be dismissed. As plaintiff admits, he has received all of the materials that he requested from the State defendants, except for the stenographic minutes from Mr. Doyle's sentencing.[14] (*See* Plaintiff's Response to Defendants' Statement of Material Facts Pursuant to Local Civil Rule 56.1 (document 62) at ¶ 1 (no-fee certificate of disposition), ¶¶ 40, 41 (a copy of Mr. Doyle's court file).) Furthermore, as discussed above, plaintiff cannot show that his 440 motion would have been successful had he received the records he requested from State defendants. (*See* 440 Decision at 2–3.) Therefore, plaintiff fails to demonstrate that the underlying claim— the claim presented in his 440 motion—is "arguable" in nature. *See Christopher,* 536 U.S. at 415.

**\*11** Plaintiff alleges that a number of other causes of action, besides the 440 motion, were thwarted by defendants' failure to provide the requested documents in a timely manner. Specifically, he claims that he was unable to "compel the defendants[ ] to disclose these court records and stenographic sentencing minutes pursuant to CPLR Article 78." (Am.Compl. § 38.) However, these causes of

action are simply potential appeals from any denial of his requests for court records. Plaintiff must show that there is a "separate and distinct right to seek judicial relief for some wrong," *Christopher,* 536 U.S. at 415. These claims by plaintiff are derivative of his underlying requests, not "separate and distinct." The State defendants' motion for summary judgment on plaintiff's denial-of-access claim should therefore be granted.

Finally, as with plaintiff's conspiracy claims against the City defendants, plaintiff's conspiracy claims against the State defendants should also be dismissed because plaintiff fails to demonstrate any agreement, or that defendants violated his constitutional right of access to the courts. See discussion *supra* at page 13–14 (citing *Romer,* 119 F.Supp.2d at 363).

### c. Retaliation Claims[15]

Plaintiff claims that the State defendants retaliated against him by failing to process his Article 78 petition (Am.Compl.¶ 50), and by refusing to send plaintiff "copies of the 91 court documents plaintiff purchased for $22.75," (*id.* ¶ 53). On June 3, 2008, plaintiff filed an Article 78 petition with the Kings County Supreme Court seeking to compel Principal Court Reporter Ellen Neri to produce the sentencing minutes related to Mr. Doyle's 1983 conviction. (*Id.* ¶ 23.) The petition was returned to plaintiff on August 5, 2008 with a memo stating, "we are returning your papers. As a defendant in a criminal case, Mr. Richard Doyle will have to request and pay for his own stenographic minutes." (*Id.* ¶ 28.) Plaintiff alleges that defendants refused to send him the documents he paid for and returned his Article 78 petition in retaliation for his filing complaints with the Office of Court Administration on May 6 and July 15, 2008.[16] Plaintiff adds that defendants returned his Article 78 petition to him "immediately after high ranking judicial officials intervened on or about June 19, 2008 and July 22, 2008...."[17] (*Id.* ¶ 50.)

In order to establish a First Amendment retaliation claim, a plaintiff must demonstrate that (1) the conduct was protected by the First Amendment, and (2) "such conduct prompted or substantially caused defendant's action." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 91 (2d Cir.2002). Here, plaintiff's complaints to the Office of Court Administration were clearly protected. However, plaintiff fails to establish that

the State defendants' failure to provide the requested court records was "prompted or substantially caused" by his complaints to the Office of Court Administration. There is nothing in the record, other than plaintiff's bare conclusions, that the State defendants acted, or failed to act, in retaliation.

**\*12** Plaintiff produces a letter written by Donna Johnson to plaintiff which states that she had received a copy of his letter to Ms. Spatz complaining about Ms. Johnson's failure to send him the 91 documents he had paid for. (Letter from defendant Johnson, dated August 14, 2008, attached to Plaintiff's Notice of Cross Motion for Partial Summary Judgment at Exhibit 15.) However, far from acting in a retaliatory manner, Ms. Johnson's letter reflects that she took action to fulfill plaintiff's record request. The August 14, 2008 letter states that the records had been located and instructs plaintiff to provide the court with $22.75 to cover the cost of copying and producing the records. (*Id.*) Plaintiff mailed the money to the court on August 18, 2008 (*see* Exhibit 16), which the court processed on October 17, 2008. Although this is admittedly a long period of time to process plaintiff's request, there is no evidence that this delay was intentional, malicious, or prompted by plaintiff filing a complaint with Ms. Spatz. In fact, Ms. Johnson's letter to plaintiff suggests that she acted to fulfill his record request *as a result* of his complaint to Ms. Spatz, not that she failed to process the request in retaliation for the complaint.

As to plaintiff's claim that defendants retaliated against him by failing to process his Article 78 petition, plaintiff argues that "[t]he short time frame between [his] grievance and the unlawful rejection of my CPLR Article 78 petition ..., creates a substantial inference ... [of a] retaliatory motive." (Affidavit in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Partial Summary Judgment ("P's State Aff.") ¶ 53.) However, plaintiff must do more than allege a series of events from which a retaliation claim can be "gleaned," (*see id.*) to overcome defendants' motion for summary judgment. Plaintiff fails to "set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

Plaintiff fails to demonstrate that the defendants with knowledge of his complaints to the Office of Court Administration had any personal involvement in handling

his Article 78 petition, or that those who were personally involved in returning his Article 78 petition were aware of plaintiff's complaints. [18] Specifically, plaintiff alleges the personal involvement of two (sets of) defendants: Edward Volpe and unidentified John/Jane Does of the Kings County Supreme Court Civil Term Unit. (Am.Compl.¶¶ 51–52.) However, plaintiff provides no evidence that these individuals were aware of his complaints to the Office of Court Administration. Without such knowledge, they could not possibly have been "prompted" or motivated to act in retaliation for plaintiff's complaints. According to the record, the only individuals with any knowledge of his grievances were defendants Donna Johnson (see above) and Chief Clerk James Imperatrice. Mr. Imperatrice was forwarded a copy of plaintiff's July 15, 2008 complaint to Sherrill Spate on July 22, 2008. (P's State Aff. Exhibit 12.) However, plaintiff fails to demonstrate that these two defendants were personally involved in returning his Article 78 petition.

**\*13** To the extent that plaintiff claims that Ms. Johnson and Mr. Imperatrice were personally involved by virtue of their supervisory roles as Senior Court Clerk and Chief Court Clerk respectively, this too fails as "[s]ection 1983 will not support a claim based on a respondeat superior theory of liability." *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). In this Circuit, a supervisor may be "personally involved" for purposes of § 1983 if that supervisor: (1) participated directly in the alleged constitutional violation, (2) failed to remedy the wrong after being informed of the violation through a report or appeal, (3) created a policy or custom under which unconstitutional practices occurred, or allowed it to continue, (4) was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995). Plaintiff fails to demonstrate that Ms. Johnson or Mr. Imperatrice were personally involved in the violations he alleges. Plaintiff argues that Mr. Imperatrice was involved "by the fact that my numerous letters were personally addressed to him." (P's State Aff. ¶ 13 (citing Exhibits 1 and 5).) However, these letters relate solely to plaintiff's initial requests for the records and sentencing minutes, not to the Article 78 petition. The State defendants' motion for summary judgment on plaintiff's retaliation claim should therefore be granted.

### d. Plaintiff's Request Pursuant to Rule 56(f)

By affidavit dated May 19, 2009, plaintiff requests that the Court deny the State defendants' motion for summary judgment and reopen discovery, pursuant to Fed. R. Civ. P 56(f). (Document 63.) Under Rule 56(f), "[i]f a party opposing the motion [for summary judgment] shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order. Fed.R.Civ.P. 56(f).

Plaintiff argues that he is unable to oppose defendants' motion because he has been denied adequate discovery. (Affidavit in Support of Request to Complete Discovery in Aid of Opposition to Motion for Summary Judgment Pursuant to Fed.R.Civ.P. 56(f) ("P's 56(f) Aff.") ¶ 4.) Plaintiff alleges he was thwarted in his efforts to obtain the necessary evidence during discovery because the defendants "suppress[ed] and conceal[ed] this evidence" (*id.* ¶ 27), and because he filed motions to compel discovery which the Court failed to answer (*id.* ¶ 4). Specifically, plaintiff claims that the Court ignored his motions under docket entries 37, 38, 39, and 57. (*Id.* ¶¶ 5, 7.) This is simply untrue. The Court's May 22, 2009 Order addressed plaintiff's motions under docket entries 37 through 39. (Document 58.) Plaintiff appealed these rulings to Judge Amon on June 1, 2009 (document 60), who upheld my rulings on March 26, 2010 (document 98). Plaintiff's motion under docket number 57 was denied on May 26, 2009. (Document 59.)

**\*14** Nevertheless, plaintiff argues that if he was permitted to continue with discovery he would seek to obtain the following evidence: (1) the identity and employment history of the John Doe defendants who allegedly "mishandled" his Article 78 petition, (2) defendants' "office operating procedures," (3) information confirming that the defendants took "tests and exams" prior to starting their positions with the court, (4) records of complaints to the court regarding the processing of Article 78 petitions to demonstrate that such complaints are rare, and that he was singled out by defendants, and (5) unspecified "facts" that that will show that the DA's Office communicated with court personnel regarding his request for Mr. Doyle's court file. (P's 56(f) Aff. ¶ 9.)

Plaintiff's 56(f) request is denied as without basis. Plaintiff fails to demonstrate that further discovery would have justify his opposition to the State defendants' motion. See *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.,* 769 F.2d 919, 926 (2d Cir.1985) (The movant "must explain [the] inability to obtain facts and demonstrate how postponement will correct problem [and] cannot rely on vague assertions regarding nature of facts to be discovered.") (citation omitted).

### e. Plaintiff's Cross Motion for Summary Judgment

Plaintiff's opposition to the State defendants' motion for summary judgment includes his own cross motion for summary judgment. (Document 61.) Plaintiff's cross motion largely restates his arguments in opposition to defendants' motion. The Court has fully reviewed plaintiff's cross motion for summary judgment and recommends that it should be denied.

### III. OUTSTANDING MOTIONS

Plaintiff has filed two additional motions, which have not been addressed by the Court: (1) a motion for contempt (document 87) against the DA's Office for failing to fully comply with the Court's April 17, 2009 Order (document 48) which granted in part and denied in part the DA's motion to quash plaintiff's subpoena; and (2) a motion to compel the DA's Office to produce grand jury minutes (document 94). Plaintiff's motions (documents 87 and 94) are hereby denied as moot.

### IV. STATE LAW CLAIMS

As the Court recommends that the defendants' motions to dismiss and for summary judgment as to all federal claims should be granted, the Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims against defendants. See *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir.2003) (citing 28 U.S.C. § 1367(c) (3)).

### CONCLUSION

Accordingly, it is respectfully recommended that the City's motion to dismiss and the State's motion for summary judgment should be granted. Plaintiff's motion for partial summary judgment should be denied. Plaintiff's federal

claims should be dismissed, and the Court should decline to exercise jurisdiction over plaintiff's state law claims.

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

**\*15** Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. *Marcella v. Capital Dist. Physician's Health Plan, Inc.,* 293 F.3d 42 (2d Cir.2002); *Small v. Sec'y of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); *see Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

### All Citations

Not Reported in F.Supp.2d, 2010 WL 6032636

---

### Footnotes

1    The docket sheet reflects "Civil Correspondence Unit" and "Criminal Correspondence Unit" as defendants in this action. However, section II of the amended complaint, clarifies that these "units" are not named as defendants, rather the John/ Jane Doe defendants work in these units.

2    Plaintiff filed an amended complaint as a matter of right on October 9, 2008, before defendants filed an answer. Plaintiff later moved to amend for a

3    Defendants have served plaintiff with the requisite notice to *pro se* litigants opposing a motion for summary judgment, pursuant to Local Civil Rule 56.2. (Document 72.)

4    Plaintiff also mailed the court a separate check for $10 for the cost of the requested certificate of disposition.

5    The United States Attorney's Office is not a party to this action.

6    Defendants argue that plaintiff's claims are barred by the Eleventh Amendment. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *See Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (citing *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985)). The State is immune from suit under the Eleventh Amendment absent a clear waiver of immunity, or Congressional abrogation of its immunity by a valid exercise of its power. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) ("[I]n the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). The State has neither consented to suit in federal court nor waived its immunity. Congress has not abrogated the State's immunity from suits pursuant to § 1983. *See Quern v. Jordan,* 440 U.S. 332, 342–43, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). However, the state is not shielded by the Eleventh Amendment suits against state officers in their individual capacities for money damages, *see, e.g., Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), or where plaintiff sues state officers in their official capacity for prospective injunctive relief, *Deposit Ins. Agency v. Superintendent of Banks,* 482 F.3d 612, 617 (2d Cir.2007) (citing *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). The injunctive exception to state sovereign immunity is permitted where plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Dairy Mart Convenience Stores. Inc. v. Nickel,* 411 F.3d 367, 372 (2d Cir.2005). Here, plaintiff's claim for money damages against defendants in their individual capacities, as well as his claim for prospective injunctive relief against defendants in their official capacities are not barred by the Eleventh Amendment.

7    The City defendants had not yet been served in the action and thus did not appear at the initial conference.

8    City defendants cite the relevant statue as New York Public Officers Law §§ 89, et seq. (Declaration in Support of City Defendant's Motion to Dismiss, ¶ 2.)

9    Plaintiff argues throughout his submissions that the Doyle information he requested is "Brady material." (*See, e.g.,* Plaintiff's Cross Motion for Partial Summary Judgment ¶ 26.) *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is inapposite here. As correctly stated by the City defendants, "[t]he obligation not to withhold exculpatory evidence is one which attaches to the prosecution prior to trial, not to anyone to whom a request for such information is subsequently made." (City Defendants' Reply Memorandum of Law in Further Support of Motion to Dismiss, at 7); *see also United States v. Douglas,* 525 F.3d 225, 244 (2d Cir.2008) ("[T]he suppression by the *prosecution* of evidence

favorable to an accused ... violates due process where the evidence is material to the accused's guilt or punishment.") (quoting *Brady,* 373 U.S. at 91) (emphasis added).

10  These causes of action relate to the documents plaintiff requested from the State defendants, not the City defendants, and therefore will be addressed below.

11  Although the City defendants move to dismiss plaintiff's access claim under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, the Court should grant the City defendants' motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). Plaintiff clearly identifies this cause of action as a denial of his constitutional right of access to the courts. Because the Court reviews this motion under Fed.R.Civ.P. 12(b)(6), it does not consider the affidavit attached to the City defendants' motion to dismiss.

12  City defendants incorrectly argue that plaintiff must allege that a public entity conspired with a private entity, and that plaintiff's conspiracy claim should be dismissed for failing to do so. (*See* City Motion at 8.) A conspiracy claim under § 1983 must plead an agreement between a state and private actor only where the plaintiff brings a conspiracy claim against a *private* defendant. *See Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir.1999) (Plaintiff must show "an agreement between two or more state actors or between a state actor and a private entity.") (emphasis added).

13  Moreover, by Order dated July 17, 2009, Justice Dowling stated: "This case is marked by a tortured history of motion practice. The defendant's motions all center on his contention that there exist[s] proof that Richard Doyle [who testified and was cross examined at plaintiff's trial] somehow committed the crime for which he stands convicted by a jury of his peers." *People of the State of New York v. John Whitfield,* Ind. No. 2132/89 (Kings Cty. Sup.Ct. Jul. 21, 2008) (attached to Plaintiff's Motion to Compel Disclosure of Grand Jury Minutes, document 94, as Exhibit A).

14  Defendant Ellen Neri, Principal Court Reporter for the Kings County Supreme Court, states in her affidavit that a search for the stenographer's notes from the January 11, 1983 sentencing hearing was conducted at the archive facility in Rochester, New York, but the notes could not be found. (Affidavit of Ellen Neri ("Neri Aff."), dated October 30, 2008, attached to State defendants' motion for summary judgment.) Plaintiff makes much of this affidavit by alleging that the State has admitted that Pat Verdon, the court reporter at Doyle's sentencing, destroyed the stenographic minutes. (P's State Aff. ¶ 44.) However, all that Neri's affidavit establishes is that Verdon is the court reporter who took the notes and that the notes could not be located at the storage facility. (Neri Aff. ¶ 4.)

15  Regrettably, the State defendants did not to brief this issue in their memorandum of law, and only address the claim in a cursory manner in their reply. (*See* State Defendants' Reply at 9–10.)

16  On May 6, 2008, plaintiff filed a complaint with Chief Administrative Judge Ann Pfau regarding the "tardiness" of the Kings County Court Reporter's Office in responding to his April 14 letter. (Am.Compl.¶ 20.) Plaintiff filed a separate complaint with the Office of Court Administration's Inspector General, Sherrill Spatz, on July 15, 2008, requesting an investigation "to determine why he is apparently being denied access to the Kings County Courts." (*Id.* ¶ 26.)

17  Although unclear, "high ranking judicial officials" apparently refers to defendant Barbara Zahler–Gringer, Counsel for Administration and Operations at the Office of Court Administration, and Sherri Spatz. (*See* Am. Compl. ¶¶ 20, 26, 50.)

18  Plaintiff must demonstrate each defendant's personal involvement in a constitutional violation. *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir.2006). second time. (Document 43.) Plaintiff's motion to amend is addressed herein.

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.